IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ELWOOD JONES, JR.,

        Petitioner,

v.

MARGARET BAGLEY, WARDEN,

        Respondent.

Case No. C-1-01-564

JUDGE THOMAS M. ROSE

MAGISTRATE JUDGE MERZ

**PETITIONER'S COUNSEL'S POSITION REGARDING HOW THIS COURT SHOULD RESPOND TO PETITIONER'S PRO SE AFFIDAVIT**

If Mr. Jones really wants to waive habeas review of his capital conviction, and if he is competent to do so, he has the right to drop his case over his counsel's or anyone else's objections – despite the fact that he has viable habeas claims before this Court.

Many capital petitioners in Mr. Jones' position carry into court mental health records that create clear questions about their competence to waive rights to judicial review and "volunteer" to be executed. Mr. Jones' case is not like that. Nonetheless, his decision is clouded by deeply troubling variables that must block a dismissal of his case absent a mental health evaluation of his competency to waive his legal rights, and further judicial review on several fronts.

## A.

### 1.

In the affidavit by which Mr. Jones says he wants to waive further review, he passionately maintains his innocence. This creates a tension that, at minimum, requires further judicial review into the question whether he is rationally and competently considering his options. Although it is true that a competent person can make what to others seem irrational legal decisions, it is also true that objectively irrational or contradictory positions implicate the question of competence.

### 2.

Mr. Jones apparently wants an evidentiary hearing. During a recent phone call, undersigned counsel asked Mr. Jones to explain why he wants this hearing. Mr. Jones would not answer except to say it should already be clear to counsel. It is not clear to undersigned counsel.

It seems Mr. Jones wants to produce witnesses in support of his innocence claim, which, by definition, would equal evidence in support of the core claims in his habeas petition. It is not clear to counsel whether Mr. Jones' goal is to prevail on his habeas claims, or to shame the capital justice system by proving that it will execute an innocent man once he drops his habeas case. Either reason (and others counsel may have missed) argues in favor of a competency review since neither reason seems logically related to an unclouded decision to waive further habeas review.

### 3.

Tied up with both the first and second factors, it may well be that Mr. Jones' now says he want to drop his case because he has come to so deeply dislike and distrust his counsel that he has lost all hope of having his issues advanced and reviewed in way that is meaningful to him. Over the years Mr. Jones' case has been in federal habeas litigation, he has on several occasions

expressed deep frustration with his current counsel. Until recently, those frustrations have receded for various reasons, and counsel continued to represent Mr. Jones.

Things are categorically different now. Starting late last year, Mr. Jones' frustrations grew into deep distrust, antipathy, and anger the caliber of which now makes it impossible for undersigned counsel to have confidence in his ability to maintain any semblance of an attorney-client relationship, much less the type of relationship required for capital habeas work. It seems to undersigned counsel that this debilitating dynamic accounts for why Mr. Jones executed his 2-6-04 affidavit. No matter whether counsel can point to misperceptions that animate Mr. Jones' antipathy and distrust, the fact is those are Mr. Jones' passionate sentiments.

If Mr. Jones' disdain for his current counsel accounts in significant part for his decision to "volunteer," then this Court should bring Mr. Jones to a hearing, inquire on this topic, and determine whether Mr. Jones' merits the appointment of new counsel.

No court lightly changes counsel in a case like this. Among other significant factors (like the fact that no court has yet recognized a constitutional right to effective assistance of capital habeas counsel, or recognized an indigent's right to counsel of choice even when he has a clear constitutional right to counsel), courts realize that changing counsel causes some delay for new counsel to get up to speed. But changing capital habeas counsel is neither prohibited by law nor unheard of. Mr. Jones' case is one of the rare few where changing counsel is merited.

More to the point, perhaps Mr. Jones' decision to waive further review would change were he given new counsel. If so, that exposes a flaw in Mr. Jones' "final" decision to drop habeas case, and it further supports the appointment of mental health experts if not the appointment of new counsel. If nothing else, this Court should give Mr. Jones new counsel to

3

represent him on the question of whether he is competent to waive further review and thereby choose death by execution without a full, federal court adjudication of his habeas claims.

**4.**

It seems to undersigned counsel that Mr. Jones has descended into a depression that currently deprives him of the ability to make a competent decision about dropping his habeas case. It seems this depressions emanates from the fact he has been imprisoned for so long in miserable conditions for a crime he says he did not commit; and from the fact that he sees little hope of ever being declared innocent and set free. Mr. Jones has maintained his innocence from the outset. He knew he was a suspect shortly after the crime; yet he stayed in town for a year until he was arrested. Once convicted at trial, he ordered his lawyers to rely only on residual doubt during the mitigation phase. After trial, he resisted and resented any attempts by his lawyers to challenge only his death sentence. He wanted nothing to do with "delay," insisting upon an expeditious review to prove his innocence – and now, he has apparently grown weary and depressed due in part to how long his post-trial litigation has gone on.

It seems that Mr. Jones' depression and frustration have blinded him to the fact that his counsel have developed viable issues that ought to give him a rational basis to believe he has a real, non-frivolous chance at prevailing. He does not see it that way. This raises yet another reason why this Court should question his competence to rationally comprehend the choice between fully litigating his habeas claims or allowing Ohio to execute him.

**B.**

When it comes to the question of whether a capital client should drop his habeas action, counsel must represent a competent client's wishes, not counsel's notion of what is in the client's best interests. Habeas counsel does not serve as a guardian ad litem. Counsel must honor Mr.

Jones' decision to waive further review, subject to the obligation to ask this Court to adjudicate the issue of Mr. Jones' competence to have his wish honored.

This Court can adjudicate the competence issue only upon evidence adduced from qualified mental health professionals who have examined Mr. Jones and evaluated his competency to waive further habeas review of his capital conviction. Therefore, subject to and/or in conjunction with this Court's review of the factors outline in Section A above, this Court should appoint at least two psychologists or psychiatrists to assess Mr. Jones' competence to drop his habeas action.

Obviously, if Mr. Jones drops his habeas case, the State of Ohio will execute him without any federal court every adjudicating his constitutional challenges to his capital conviction. Steps must be taken to ensure that this is what Mr. Jones really wants; and, if it is, to ensure that he is competent to make this lethal decision.

**C.**

Until this Court adjudicates Mr. Jones' competence to drop his case – which he stated in an affidavit signed 2-6-04 and filed on 5-17-04[1] – undersigned counsel can not in good conscience or in compliance with good professional ethics undertake further representation of Mr. Jones on matters other than those related to his stated desire to drop this case. As a result,

---

[1] The record will reflect that the Court and counsel for the parties were aware of Mr. Jones' affidavit before it was filed. After discussing this matter at a status conference, and because Mr. Jones' affidavit had not, at that time, been delivered to the Clerk for filing, it was decided that Mr. Jones' counsel would be given time to discuss the waiver issue with him further. The decision to give counsel time to talk with Mr. Jones was made in conjunction with this Court's decision to permit Mr. Jones' counsel to re-open discovery. Counsel discussed the waiver issue and the discovery extension with Mr. Jones, and he agreed to hold off on formally filing his affidavit if counsel deposed his trial prosecutors by April 9, 2004. Counsel met this condition. Before the renewed discovery deadline arrived on 6-30-04, and before counsel completed discovery by deposing Mr. Jones' trial counsel, Mr. Jones wrote to this Court and, pursuant to his request, this Court caused his 2-6-04 affidavit to be filed on 5-17-04.

after once deciding to go ahead with the depositions of Mr. Jones' trial counsel, undersigned counsel thought the better of it and chose not to do so in the face of Mr. Jones' stated interest and his deep antipathy towards current counsel.[2] Additionally, before Mr. Jones' affidavit was filed, counsel faced a 6-30-04 deadline for filing a motion for an evidentiary hearing, which was not filed. Counsel respectfully request that this Court recognize counsel's ethical dilemma and leave open the option of further litigation on the merits of the evidentiary hearing and all other substantive issues until the questions posed by Mr. Jones' decision to drop his case have been answered.

**D.**

For the reasons stated herein and any others deemed just and meritorious by this Court, Mr. Jones' counsel respectfully requests that this Court bring Mr. Jones and counsel for the parties to court to address the issues described herein; appoint mental health professionals to evaluate Mr. Jones' competence to waive his rights to federal habeas review of his capital conviction and death sentence; and stay and abey all other issues pertaining to the merits of Mr. Jones' habeas case, including deposing his trial counsel and propounding a motion for an evidentiary hearing, until this Court adjudicates the issues implicated by Mr. Jones' expressed wish to drop his habeas case.

---

[2] Undersigned counsel apologizes to Respondent's counsel for the fact that he changed his position without giving her the courtesy of calling her to say so. After Mr. Jones' affidavit was filed, undersigned counsel called Respondent's counsel to discuss his concern about whether he should go forward with the depositions of Mr. Jones' trial counsel in light of Mr. Jones' filed affidavit. When Respondent's counsel said she thought the depositions should go forward, undersigned counsel agreed. Later, undersigned counsel changed his mind in light of his ethical discomfort with continuing to represent Mr. Jones on the merits after Mr. Jones' affidavit was filed. A second call should have been placed to Respondent's counsel.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender


 s/ Gregory W. Meyers_____
GREGORY W. MEYERS (0014887)
Senior Assistant Public Defender
8 E. Long Street
Columbus, Ohio 43215
Phone: (614) 466-5394
Fax: (614) 728-3670
meyersg@opd.state.oh.us


JAMES D. OWEN (0003525)
CLOUD & OWEN
5354 North High St., Suite 3D
Columbus, Ohio 43214
Phone: (614) 436-3211
Fax: (614) 436-6788

COUNSEL FOR PETITIONER


## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing PETITIONER'S COUNSEL'S POSITION REGARDING HOW THIS COURT SHOULD RESPOND TO PETITIONER'S PRO SE AFFIDAVIT was served upon Respondent's counsel, Heather L. Goesselin, Deputy Attorney General, 30 E. Broad St., Columbus, Ohio 43215, by operation of this Court's electronic filing system on this 1st day of July, 2004.


 s/ Gregory W. Meyers_____
GREGORY W. MEYERS (0014887)

# 200936