H-1

Mr. E.H. Jones Jr.
# 339-441 #2-Hse-2050
P.O. Box 788
Mansfield, Ohio
 44901

12-16-2003

H-1

Mr. James D. Owen
Attorney at law
Columbus, Ohio  43214

Dear Mr. Owen;

   I have tried for several months now to get in touch with you concerning a few questions I have with respect to my case. After diligently reviewing materials uncovered in the Prosecutions files, and never turned over, especially statements of "Employee's", for inconsistencies given to the Police.

   Mr. Owen.... I have just discovered... a 9 Page typed Interview of Henry Williams on 9-14-94. This was "originally" Tape Recorded and then "transcribed"... with a number of blank lines... which only happen to appear in Henry Williams answers.!

   Mr. Owen, Several statements are clear "FROM" this interview of henry Williams on 9-14-94... even with the "blanks" in his answers... He told Officer J. Boyatt that I was "working comp breakfast that morning with them"... He also told Officer Boyatt that "He was working with ME" on the floor of the dining room before going on break. He also told Officer Boyatt that "He believes I DID injure my hand at work that morning.   These THREE ANSWERS... substantiate my where abouts the morning in question.

   I would Highly Appreciate it if you would set up a Conference call, so that I might be able to discuss a few things with you.

   After you have reviewed the "attached interview" of Henry Williams, PLEASE RETURN IT, so that I can have it for my files. Interview date of 9-14-94.  I have marked 78.

Sincerely -

_Edward H. Jones_
Mr. Elwood H. Jones Jr.

Mr. E.H. Jones Jr.
#339-441 #2-Hse 2050
P.O. Box 788
Mansfield, Ohio
    44901

H-2

11-21-2003

Dear Mr. Owen, Mr. Meyers;

    First, let me wish the both of you and your families, a Happy Thanksgiving!

    Now I have been sitting here waiting on some kind of answer back from either one of you. Concerning our conversation of october 7th 2003 & the materials I've mailed off for the both of your review & opinion. As well, has a date been set for taking and re-taking Depostions of prosecutor Seth Tieger & Mark Pipmeyer?

    I have been sitting for day's now going back and forward over a few employee's statements, as to when each of these Employee's were first interviewed & made a statement, to the next time they were interviewed and made "another" statement. From the files of the Blue Ash Police department & Hamilton County Prosecutor's Office files turn over. Upon a Discovery granted by Federal Magistrate Merze.

    Please let me bring to the both of your attention something I found concerning Employee's Statements and missing statements of Employee's with-in these files. Each Embassy Suites Employee that worked the morning of Sept 3, 94 was required to give a voluntary hand written statement to the Police & before leaving work that day. Sharon Mobley, Henry Williams, Angela early, Velena Taylor, Alica Ackerman, Susan Friend, Norris Mc Williams, Brenda Wallace, Charles O banion, Marvin Ferguson, Art Armacost, Greg Henry, Michael Hajjalie, Dorothy Reynolds, Each one of these Employee's Voluntary statement given to the police on Sept 3, 94 are missing from the files turned over, & can not be compared to other statements found in the files of that employee's for inconsistencies.

    I ask that the both of you please review the following statements I have attached to this letter for a better understanding - As to when the statement was taken of that employee & to what that employee had to say, to the next time that employee was interviewed by the police's and prosecutor they are given a little help. What I found so amazing about each of these statement's. The Prosecutions claim I made a number of inconsistencies statements, as to my where about the morning in question &Ect. Which was not substantiated by other employee's who were at work that morning.

    In fact these statements found, clearly show I was Seen by a number of employee's during the time frame of the Homicide on the first floor in the kitchen & Comp Breakfast Area or in the Breakroom. A couple of these statements put me in 2 places at the same time. One statement put me with a employee who did not work on 9-3-94.

T-2   H-2

Demetrius Williams on 5-13-95 was Re-Interviewed by Officer J. Boyatt, concerning the events that occurred on 9-3-94.
"First let me say that I've found it's strangest that officer J. Boyatt "Did not" show Demetrius Williams his previous statements to Detective Ladd on Sept 3, 94 to indicate if it was accurate to what he saw and or heard that morning. Nor is there any mention or questions concerning that statement on Sept 3, 94 to Det Ladd. In Demetrius Williams Re-Interviewed by officer J. Boyatt on 5-13-95." Demetrius williams gave a voluntary hand written statement to Det. LAdd on Sept 3. 94 "He saw a Black Guy and a White Guy leaving the room upon hearing the screams. One of the guys had a walkie talkie in his hand that morning. He also gave Det. Ladd a full description of these 2 guys, what they had on Ect..

Now just look at a few of Demetrius Williams words made in his Re-interview on May 13, 95, 9 months later. By Officer J. Boyatt.
# 1 Demetrius Williams stated he saw me leaving out the "back Kitchen" door around 7:00 to 7:30 A.M. after parting company with Metcalf daughter Tonya Mitchell.
# 2 Officer J. Boyatt interviewed Tonya Mitchell on May 15, 95 she stated she was not at work or working on 9-3-94. So it was impossible for Demetrius Williams to have seen me leaving out the kitchen back door the morning in question between 7:00 & 7:30 A.M. Please review Tonya Mitchell statement enclosed.
# 3 Demetrius Williams said about 6 to 6:30 A.M. he and Ryan Norman took their break and got something to eat. After break Demetrius stated he showed Ryan around the main floor "some more" and still attended to the breakfast area as needed. Demetrius said he never left the first floor area prior to hearing the screams and called for help. When the screams were heard he and Ryan were near the wooden foot bridge on the first floor.

Please review Demetrius Williams original statement to Det. Ladd on 9-3-94 and Ryan Norman statement on 9-3-94 and 5-8-95 and Tonya Mitchell statement on 5-15-95. "In comparing his statement to what he stated in his Re-Interviewed on May 13, 95 for inconsistencies. "To his whereabouts and, what his observation on that day of Sept 3, 94. For a good example in comparing Demetrius Williams Re-Interviews statement on May 13, 95 to Ryan Norman Re-Interview statement on may 8, 95.
# 4 Ryan Norman said he saw Butch earlier in the morning when they were setting up for Comp Breakfast." Butch was helping the Comp Breakfast crew with set up - Comp Breakfast was set up by 6:30 A.M. Ryan Said he does not recall seeing Butch in the Area of the dining room after Comp Breakfast was set up." Ryan said he was out on the floor of the dining room that entire morning until he heard the screams. There's no mention in his statement about him and Demetrius took a break and got something to eat about 6:30 A.M. or Demetrius was showing him around the main floor some more after eating.
# 5 Jesse Wallace original statement on 9-3-94 to Det. Ladd on pages #2 "He stated in part what he saw and heard that morning. On pages 2 of Jesse Wallace original statement he said He ran to the door from room 237 to tell Butch to call the front desk, and Butch said ok.

Now that statement found in Jesse Wallace original statement - is

clear he did see me and speak to me on the morning of Sept 3, 94. On 9-13-94 Jesse Wallace was Re-interviewed by Officer Hartinger concerning the events that occurred on 9-3-94 was he asked, did he see Butch on 9-3-94, Are shown his statement that he gave to Det. Ladd on 9-3-94 to indicate it was accurate. On 9-23-94 Jesse Wallace was Re-Interviewed by Officer stokes, Jesse wallace stated in part he did not observe Butch cleaning tables Bot... he doesn't recall seeing Butch at all on 9-3-94. Officer stokes did not show Jesse Wallace his previous statement he made to Officer Hartinger. On 11-6-96 Jesse Walace was Re-Interviewed by Prosecutor Seth Tieger and Pipmeyer concerning that events that occurred on 9-3-94. Please review the enclosed statement of that interview on 11-6-96 and 9-23-94 in comparing Jesse wallace statements to his original statement on 9-3-94 and, his statement on 9-13-94. Then ask yourself did Jesse Wallace have some help Officer stokes and, prosecutor Seth Tieger and prosecutor Mark Pipmeyer in what to say in his statement on 9-23-94 and 11-6-96??

# 6   Angela Early. Original statement given on 9-3-94 is missing from the case files turned over in the Discovery of the Blue Ash Police and Prosecutors files and cannot be compared to the next 4 statements she gave the Police and prosecutor and Hotel Attorney's.

On sept 11, 94 Angela Early was interviewed by Officer Hartinger at the Hotel. She gave officer Hartinger some names of persons present between 0700 and 0800 hrs as well as at the time woman found in 237. "Most info already known." Angie stated that"Butch" aka Elwood W. Jones Jr. has been off sick. As he cut his hand and had an infection sometimes in the middle of the week "9-5/9-9". She said he works banquet Rooms on the 2nd floor which is where she recalled seeing at one time or another on the morning of the death. She also states she saw his girlfriend Earlene Metcalf up there with him. On Sept 30, 95 1 year later Angela early was Re-Interviewed for the 3rd time by one of Blue Ash Police officer's concerning the events that occurred on Sept 3, 94 at the Embassy Suites Hotel.

According to Angela Early statement of Sept 30, 95 , she was not shown her previous statement to the police of 9-3-94 and 9-11-94 before making another statement. Angela Early statement to the police on Sept 30, 95 is totally inconsistencies with her statement she gave officer Hartinger on Sept 11, 94. I'm surprised the police didn't arrest her for lying to officials!

On June 20, 96, Angela Early was Re-Interviewed for the 4th time by one of the Hotel Attorney's, her statement on June 20, 96 is totally inconsistent with the statement she gave on Sept 30, 95.

On November 6, 96 Angela Early was Re-Interviewed for the 5th time by prosecutor Seth Tieger - Each one of these statements listed has a number of inconsistencies in them to the other as to what Angela early said and saw. "I don't see why the prosecutor didn't have her locked up!"

Please review each of the following statements I have attached to this letter, along with the notes and underlines on the statements. Then give me your opinion on how you can or may be able to use this information, in the up-coming Depositions?

H-2

*Hope to hear from you soon,*

*Elwood H. Jones Jr.*

P.S. Susan Friend Original Statement given on 9/3/94 is missing from the case files turn over in the Discovery of the Blue Ash Police & Prosecutors files. & can not be compared to the next #2 statement she gave to the police & prosecutors concerning Sept 3, 94.

On Sept 20 94 Susan Friend was Re-interviewed for the 2nd time by Officer J. Boyatt - Susan Friends stated in-fact on Sept 3, 94 she only saw Jones one time that day & that was to get a walkie talkie. Please review the attached statement of 9/20/94.

Susan Friend was Re-interviewed for the 3rd time by Sgt Lilley on May 8, 95, # 9 months later. is totally inconsistencies with her statement she gave Officer J. Boyatt on 9/20/94 that she only saw Jones one time that day & that was to get a walkie talkie.

There's nothing mention in her statement on 5/8/95 about getting a walkie talkie from me.

In fact she said she told Jones you're not suppose to be here Jones replied to her I dropped off Earline, I'm helping out with comp Breakfast. Friend said she then went to housekeeping & got her walkie talkie. Friend said she next saw Butch Jones in the back hallway of the hotel at approximately 1:30-2:00 P.M.

It's amazing how the police & prosecutors can get people to lie don't you think !!

H-3

Mr, Elwood H. Jones Jr.
#339-441 3-Hse. #1065
P.O. Box 788
Mansfield, Ohio 44901
6/20/02

Mr, James D. Owen
Attorney At Law
5354 N. High Street
Columbus, Ohio  43214


Dear Mr, Owen Mr, Meyers
   I have written to the both of you a number of letters since 2/28/02 addressing a few concerns I had about my Federal Appeal. As to how do the both of you plan on incorporating the following materials uncovered by Mr, Determon from the Coroners files & etc, into my Habeas Petition?

#1, How do you plan on incorporating Officer Beay's personnel file into my Habeas Petition? If not why?

#A, I pointed out to the both of you a number of things I believe are helpful in my case and also show his behavior as an officer. He has expressed in his words, in a response to a reprimand on 12-/22/98, that he does not always log in evidence on time, and has kept evidence in his personnel locker that has not been tagged & turned over to the evidence room. It is enough to show it's possible that he planted that pendant in my tool box!!
#B, What other reason could he give for keeping evidence in his personnel locker that has not been tagged and turned over to the evidence room in any case "if he is not trying to hold evidence and plant if necessary to discredit & help win a conviction?

#2, How do you plan on incorporating the material about the #2, former Blue Ash Officers name Dave Hoffman, & Joe Schure. Concerning there meeting with Mr, Strigari & Mr, Determon on June 14, 2001. If not why?

#A, We have 2 former Blue Ash Officers. Who contacted Mr, Determon &, told him they had some information concerning Elwood H. Jones case maybe helpful. So a meeting was set up for the 2 former Blue Ash Officers to come into the offices on June 14, 2001.

#B, On June 14, 2001 the #2 former Blue Ash Officers name Dave Hoffman &, Joe Schure stated to Mr, Strigari & Mr, Determon while in the locker room changing cloths. A conversation arose from another officers "concerning the search and finding of the pendant". Stating Officer Stokes searched Jones car prior to getting the search warrant. He found the pendant & then drafted the search warrant. After backing away from finding the pendant for another Officers to find.

#1,

#C, This information is helpful &, is inconsistencies with Officers Stokes testimony. Which reads the following. Officer Stokes' testimony, on record at the suppression hearing & during the trial, stated he wasn't in Loveland to execute the search warrant for Jones' car. "I can't say which officer executed the warrant for Mr. Jones' car. I was only at the Blue Ash Police Station to receive the car when it came in on the wrecker. I made sure the car was locked up & turned the keys over to Sgt. Lilley that evening, 9/12/94."

#D, Mr, Owen, another thing I just realized and makes sense concerning this information from the 2 former officers is, why there are so many conflicting stories on who did what, etc. As well as, why no one knows when the search warrant was executed for my car, or the time my car came into the station on a wrecker. This is why we can't find the name of the towing company used to tow my car from Loveland to the Blue Ash Police Station on 9/12/94. We need to find the towing company and their log sheet for time movement. Because, if we can show that my car was already in the Blue Ash Police Station before judge Mallory issued the warrant at 7:56 PM on 9/12/94, this information would be very helpful in adding credibility to Mr, Hoffman & Mr, Schure's statement of what they heard in the locker room while changing cloths.

#3, How do you plan on incorporating the following materials uncovered by Mr, Determan from the Coroners files concerning Joan Dawson Burke. Officer Bray, Officer McAninch of B.A.P.D. Bill Dean, Mike Trimpe both of the Serologists Dept. Into my Habeas Petition? If not why?

#1, What I find very troubling, according to these 2 documents dated 9/14/94 & 9/16/94 that were uncovered from the coroner's files, clearly puts Officer Bray's & Mrs, Burke's testimonies in question with respect as to who really was present for the exam & search of my car on the 14th of Sept.

#A) The Vehicle Search & Evidence Collection Document, dated 9/14/94, reads: Analyst Joan Dawson Burke. Other people present during search: Officer Bray; Officer McAninch of B.A.P.D.; Bill Dean examined car- nothing useful trace evidence- wise.

#B) Now according to this trace micro worksheet document, dated 9/16/94, there's a strong possibility that Mr, Trimpe of the Serologist Dept. was also present during the search of my car on 9/14/94 and helped perform the search. According to this document on 9/16/94, prepared by Bill Dean & Mike Trimpe, that reads in part: "...we looked through 2 tool boxes from the car of the suspect in our garage but could not find anything we thought would have made the marked impressions on the body."

#C, We have 3 Coroner's Employees in my car & tool boxes on the 14th of Sept. BEFORE OFFICER BRAY CLAIMS HE SEARCHED IT HIMSELF, LOOKING FOR POSSIBLE EVIDENCE WITHIN MY CAR. Why didn't Mr, Dean or Mr, Trimpe find the pendant lying in the top hand tray of my tool box? According to these 2 documents, dated 9/14/94 & 9/16/94, it clearly says that they were in my car & tool boxes looking for evidence.

#2

#4, Now just look at what we have here concerning my car and the handling of the search warrant on Sept. 12th & 14th. As well as which coroner's employee & Blue Ash Police did what, according to the trial transcripts & their testimony. Now then, compare their testimony with the information uncovered from the Coroner's file. There's a lot of inconsistencies in their statements as to who did what and who was there. #A) Taking part in the search warrant FOR my car on Sept. 14th. This document dated 9/14/94 showing who was present during the search of my car, can only help my claim that I am innocent & was framed by one of the B.A.P.D. officers. #1 It clearly shows officer McAninch lied when he said he was not present during the search of my car. #2 It shows Officer Bray lied and gave false testimony to the court by pointing out his testimony in this order. A) Yes, Officer Bray was present, according to his testimony, when Mrs. Burke examined my car & trunk for blood & fiber evidence. B) According to Mrs. Burke's testimony, after she finished her examination of my car, she left Officer Bray there by himself to finish his examination of my car for possible evidence. C) Mrs. Burke said she was not there when Officer Bray found the pendant. She can't say where he found it, or when he found it, personally. D) Officer Bray's testimony after Mrs. Burke left, he started his examination and search of my car. There was no one there from the coroner's crime lab or Blue Ash Police Station to assist him. He did not ask for help with his examination looking for possible evidence with my car. E) <u>Officer Bray stated after he found the pendant in the top hand tray of my tool box, he did not go get any of the technicians there to witness the evidence he found.</u> Instead, he immediately called his commanding officer at the Blue Ash Police Station and was told to immediately return to the station with the pendant.

#5, This document shows Officer Bray gave false testimony according to the above testimony to the court that only he was present for the search of my car on 9/14/94 at the Hamilton County coroner's lab. <u>It clearly put Officer McAninch present during that examination along with technician Bill Dean. So why did he lie?</u> A) It put Officer Bray's testimony in conflict. #B) It shows Officer McAninch lied when he stated to Mr. Determan on the phone on 10/4/00 from Florida: "Mr. McAninch stated he never was at the lab, and never assisted in the search. He stated he could have been a transportation officer for Bray. He just couldn't recall the date and incident. He claims he doesn't really know anything about Jones case only the fact that he had overheard they were having a tough time getting a conviction. #C, Here is a good example concerning the examination of my car on 9/14/94 in the Hamilton County Coroner's Garage. "When comparing testimonies from the conflicting statement given by Officers Bray & Mrs. Burke." As to why all of the above materials uncovered by Mr. Determan should be apart of my Habeas Petition. Pointing out to the court that theres a paper trail with so much of confusion regarding the execution of the search warrant for Mr. Jones car on Sept. 12th & 14th 94. That the only way we can make sense of all of this. We

#3

need the court to allow us to go back & take depositios from the Coroner Technician & etc.

Mr, Owen, The question that keeps coming to me is, how can Mrs, Burke & Officer forget that they had co-workers of the Hamilton County Coroner's Lab & Blue Ash Police Dept. present? Not only were they present, but they also took part in the search & examination of my car in coroner's garage on 9/14/94. There's no mention in either one of their trial testimony's that <u>Officer McAninch</u> of the Blue Ash Police Dept., or <u>Mr, Bill Dean</u> & <u>Mr, Mike Trimpe,</u> both of the Serologist's Dept., were present for the search & examination of my car in the coroner's garage on 9/14/94.

Mr, Owen, Mr, Meyers, As a final note concerning the above matter I have re-address. The both of you have express to me. That Strickler V. Greene say you can raise these issues in "Federal Court" without wasting time with another tour through the State Courts with 2 additional state pleading, with A Successor Post-Conviction Petition & Motion for a New Trial with the materials uncovered from the Coroners Files & etc.

Now after reviewing the initial Writ of Habes Corpus Petition. I notice that none of the materials address in this letter was apart of that Writ of Habes Corpus Petition. So I brought this to the both of your attention. At that time I was told that this materials would be apart of a"Amended Petition" File no later then April 30th 2002. Well that never happen or an explanation why it was not. So the only question I have for the both of you is to explan to me now. How you plan on incorporating the above materials into my Habeas Petition? If not why?

As a "client" I don't ask for much, just let me know what is going on &, to answer my letters at some point nothing else!!

P.S. I would highly appreciated a written respond to this matter within the next 12 working days, If not I will bring this matter to the court attention, So please do not take this as a threat. This is the type of material Judge Merz address in the Byrd decision. Criticizing his attorneys for withholding until the last minute then asking the court to granted a hearing on.

*See attached Document marked 9/14/94 & 9/16/94*

CC
Ms, Tracey Leonard
Mr, Determan
Mr, luken
Mr, vickers
Jones Family
Mr, David P. Lyons

Sincerely
*Elwood H. Jones Jr.*
Elwood H. Jones Jr.

*Mr. P. Y Bodiker*
*Mr. Joseph Bob Dean*

#4

9/14/94

# VEHICLE SEARCH

Analyst: JDD      H-3      Date: 9-14-94      CL-4931-94

Other people present during search: Ofc. Gray  McManish

Submitting Agency: Blue Ash

Location of vehicle at time of search: Ham Co Garage

circle one: (SEARCH WARRANT) / CONSENT to SEARCH

License #: O/L JHR 349      VIN #: IGAF54T216221853      Year: ___

Color: Rust      Make: Pontiac      Model: 6000 LE

Condition of vehicle: Good

TYPE (Circle one):
- 2door
- hatch
- wagon
- MC
- ☒ 4door
- van
- truck
- trailer

## EVIDENCE COLLECTION

Type and location of evidence collected? Searched interior of car both front + back seats + trunk. No blood visible. Trunk contained many towels - items for working on cars - no blood visible.

Bill Dean examined car - nothing useful trace evidence-wise

H-3

CL-

Analyst: MAT
Date: 9/16/94

## TRACE MICRO WORKSHEET

William Schrand took photographs of 2 color slides with B+W film. 9/15/94
I printed 3 prints of left cheek shot under ear as close to 1:1 as I could — I also printed 6 prints of chest area as close to 1:1 as I could. I gave one print to Officer Bray 9/16/94 when he submitted necklace and 2 walkie talkies.

✓ Bill Dean + I told Officer Bray that it may not have been a shoe that left the marks on the body. We looked through 2 tool boxes from the car of the suspect in our garage — but could not find anything we thought would have made the marks

Pendant
— five stones
— bent back
top open holes