IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON OHIO

| | |
|---|---|
| ELWOOD H. JONES, | CASE NO. 1:01-CV-564 |
| PRO SE PETITIONER, | |
| | DISTRICT JUDGE: THOMAS M. ROSE |
| VS. | |
| | CHIEF MAGISTRATE JUDGE: |
| | MICHAEL R. MERZ |
| MARGARET BAGLEY, WARDEN, | |
| RESPONDENT. | **THIS IS A DEATH PENALTY CASE** |

**PRO SE MOTION TO SUPPLEMENT THE RECORD**

NOW COMES PRO SE PETITIONER - ELWOOD H. JONES JR. RESPECTFULLY REQUESTING LEAVE OF THIS HONORABLE COURT TO SUPPLEMENT THE RECORD WITH ATTACHED PRO SE MOTION. PETITIONER ELWOOD H. JONES JR. RESPECTFULLY REQUESTS THIS HONORABLE COURT TO ACCEPT THE PRO SE MOTION TO WITHDRAW THE FOLLOWING CLAIMS FROM THE SAID TRAVERSE PETITION - [SUBMITTED] TO THIS HONORABLE COURT TO REVIEW AS VIOLATION OF MR. JONES' CONSTITUTIONAL RIGHTS TO DUE PROCESS AS PROVIDED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, BY SAID COUNSEL(S) (I.E. MR. MICHAEL L. MONTA AND MR. GARY W. CRIM.)

**A.** "FIRST GROUND FOR RELIEF: THE JURY USE OF A BIBLE VERSE IN PENALTY PHASE DELIBERATIONS OF MR. JONES' TRIAL, PAGE 31 PRO SE PETITIONER WITHDRAWALS THE ABOVE TITLED FRIVOLOUS ISSUE FROM THE TRAVERSE PETITION TO BE CONSIDERED BY THIS COURT;

**B.** SECOND GROUND FOR RELIEF: INPART PROSECUTOR'S IMPROPER CLOSING ARGUMENT DURING THE MITIGATION PHASE OF MR. JONES' TRIAL - SECTION [C], PAGE 55, PRO SE PETITIONER WITHDRAWALS THE ABOVE TITLED FRIVOLOUS ISSUE FROM THE TRAVERSE PETITION TO BE CONSIDERED BY THIS COURT;

C.  SIXTH GROUND FOR RELIEF: ELWOOD H. JONES JR. WAS DENIED THE RIGHT TO COUNSEL WHEN LEAD ATTORNEY JULIUS F. SANKS ABDICATED HIS ROLE AS DEFENSE COUNSEL IN CASE AGAINST MR. JONES PAGE 93, PRO SE PETITIONER WITHDRAWS THE ABOVE TITLED ISSUE FRO THE TRAVERSE PETITION TO BE CONSIDERED BY THIS COURT;

D.  SEVENTH GROUND FOR RELIEF: MR. JONES' CONSTITUTIONAL RIGHT TO A FAIR NON-ARBITRARY AND RELIABLE CAPITAL SENTENCING HEARING WERE VIOLATED BY HIS COUNSEL'S FAILURE TO INVESTIGATE MITIGATION EVIDENCE AND THE TRIAL COURT'S REFUSAL TO PERMIT THE PRESENTATION OF VIABLE "REASONABLE DOUBT" MITIGATION ARGUMENT, PAGES 94 AND 95, PRO SE PETITIONER WITHDRAWALS THE ABOVE TITLED FRIVOLOUS ISSUE FROM THE TRAVERSE PETITION TO BE CONSIDERED BY THIS COURT;

E.  EIGHTH GROUND FOR RELIEF: SYSTEMATIC FLAWS IN HAMILTOM COUNTY'S METHOD FOR SELECTING GRAND JURORS, GRAND JURY FOREPERSONS, AND PETIT JURY VENIRES YIELDED RACIAL, GENDER, AND SOCIO-ECONOMIC BIASES INIMICAL TO MR. JONES' CONSTITUTIONAL RIGHTS. HIS RIGHTS WERE FURTHER VIOLATED WHEN THE PROSECUTION EXCLUDED ALL AFRICAN-AMERICANS FROM HIS JURY. MR. JONES' COUNSEL FAILED TO EFFECTIVELY CHALLENGE THESE UNCONSTITUTIONAL SYSTEMATIC FACTORS; FAILED TO RAISE AN OBVIOUS CHALLENGE; FAILED TO CONDUCT AN EFFECTIVE VOIR DIRE; AND FAILED TO RAISE EFFECTIVE CHALLENGES TO VENIRE PERSONS; SECTIONS [A - PAGES] 97-99; [B - PAGES] 100-02; [C - PAGES] 103-05; [D - PAGES] 106-08; [E - PAGES] 109-12; [F - PAGES] 113-14; PRO SE PETITIONER WITHDRAWALS THE ABOVE TITLED FRIVOLOUS ISSUE FROM THE TRAVERSE PETITION TO BE CONSIDERED BY THIS COURT;

F.  NINTH GROUND FOR RELIEF: MULTIPLE ERRORS IN THE JURY INSTRUCTIONS AT BOTH PHASES OF MR. JONES' TRIAL VIOLATED HIS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL, EFFECTIVE ASSISTANCE OF COUNSEL, AND BE FREE FROM AN ARBITRARY AND COPRICIOUS DEATH SENTENCE, PAGE 115-33, PRO SE PETITIONER WITHDRAWALS THE ABOVE TITLED FRIVOLOUS ISSUE FROM THE TRAVERSE PETITION TO BE CONSIDERED BY THIS COURT;

G.  TWELFTH GROUND FOR RELIEF: THE PROPORTIONALITY REVIEW THAT THE APPELLATE COURTS MUST CONDUCT PURSUANT TO OHIO REV. CODE §2929.05 IS FATALLY FLAWED. THEREFORE, ELWOOD H. JONES JR.'S DEATH SENTENCE MUST BE VACATED PURSUANT TO THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, PAGES 151-53, PRO SE PETITIONER WITHDRAWALS THE ABOVE TITLED FRIVOLOUS ISSUE FROM THE TRAVERSE PETITION TO BE CONSIDERED BY THIS COURT;

H. THIRTEENTH GROUND FOR RELIEF: ELWOOD H. JONES' DEATH SENTENCE IS CONSTITUTIONALLY INFIRM BECAUSE OHIO'S CAPITAL PUNISHMENT SYSTEM OPERATES IN AN ARBITRARY, CAPRICIOUS, AND DISCRIMINATORY MANNER IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS, PAGES 154-58, PRO SE PETITIONER WITHDRAWALS THE ABOVE TITLED FRIVOLOUS ISSUE FROM THE TRAVERSE PETITION TO BE CONSIDERED BY THIS COURT.

PETITIONER WISHES THAT EACH OF THE ABOVE TITLED ISSUES, SUBMITTED IN SECTIONS A, B, C, D, E, F, G, AND H, OF THIS PRO SE MOTION TO BE WITHDRAWN AS CONSTITUTIONAL CLAIMS BEFORE THIS COURT IN THE SAID CAPTIONED CASE AGAINST PRO SE PETITIONER ELWOOD H. JONES JR. THE PETITIONER SUBMITS THIS MOTION OF **HIS OWN FREE WILL** AND **INTELLIGENTLY WAIVE** THE ABOVE TITLED **FRIVOLOUS CLAIMS**. PRO SE PETITIONER SAT DOWN AND DISCUSSED WITH SAID COUNSEL, MR. MICHAEL L. MONTA AND MR. GARY W. CRIM, ON SEPTEMBER 2, 2006 TO DROP THE ABOVE TITLED FRIVOLOUS CLAIMS FROM THE SAID TRAVERSE PETITION SUBMITTED ON BEHALF OF THE PETITIONER MR. JONES.

―MEMORANDUM IN SUPPORT―

PRO SE PETITIONER HEREIN, REQUESTED SUBSTITUTE ASSIGNED COUNSEL, MR. MONTA AND MR. CRIM, ON SEPTEMBER 2, 2006, TO FOCUS ON AMD ESTABLISH A RECORD OF CLARITY BEFORE THIS HONORABLE COURT IN THE SAID TRAVERSE PETITION AS FOLLOWS RAISING CONCEIVABLE ISSUES BEFORE THIS COURT:

A. MR. JONES WAS DEPRIVED OF A FAIR TRIAL THROUGH ACTS OF PROSECUTORIAL MISCONDUCT (WHICH) TOTALLY DEPRIVED MR. JONES OF HIS RIGHT OF DUE PROCESS AND TO OFFER A DEFENSE IN THE SAID CASE;

B. THE WITHHELD FACTUAL MATERIALS FOUND WITHIN THE PROESCUTION'S FILES UPON THIS HONORABLE COURT PERMITTING THE PETITIONER, MR. JONES TO EXPAND THE RECORD WITH DOCUMENTS (RECOVERED THROUGH A DISCOVERY MOTION FROM THIS COURT) CLEARLY ESTABLISH ACTS OF PROSECUTORIAL MISCONDUCT WITHHOLDING EXCULPATORY AND IMPEACHABLE EVIDENCE... THWARTING MR. JONES' ATTEMPTS TO ORGANIZE A (COHERENT - DEFENSE) AND CAUSED MR. JONES AND COUNSEL MR. JULIUS F. SANKS AND MS. CATHERINE ADAMS, TO PREPARE MR. JONES' DEFENSE **BEHIND A VEIL OF IGNORANCE.** UPON ANALYSING THE WITHHELD EXCULPATORY AND IMPEACHABEL EVIDENCE FOR A

EXAMPLE, FACTUAL MATERIALS FOUND WITHIN THE HAMILTON COUNTY PROSECUTOR'S FILES CLEARLY PRESENT AN SIGNIFICANT CHALLENGE TO THE PROSECUTION'S THEORY ON FIVE (5) DIFFERENT LEVELS. FOLLOWING DEPOSITIONS OF HAMILTON COUNTY PROSECUTORS MARK PIEPMEIR, FEBRUARY 1, 2006, AND SETH TIEGER, FEBRUARY 1, 2006, AND DEFENSE ATTORNEYS JULIUS F. SANKS, MARCH 7, 2006 AND CATHERINE ADAMS, MARCH 14, 2006, GRANTED BY THIS COURT.

PREJUDICE RESULTS FROM THE BRADY MATERIAL WITHHELD DURING MR. JONES' TRIAL. THE STATE DENIED MR. JONES HIS RIGHT TO A FAIR TRIAL, AND THEREBY OBTAINED A TAINTED VERDICT UNWORTHY OF CONFIDENCE. CERTAINLY A REASONABLE JURIST COULD SO CONCLUDE THE MATERIALITY HEREIN STATED, THUS ENTITLED MR. JONES TO A HEARING ON HIS BRADY CLAIMS (SEE BANKS, 54 F.3d 1508, AND KYLES V. WHITLEY, 514 U.S. 419 (1995)).

THE PROSECUTION MISLEAD THE JURY DURING MR. JONES' TRIAL AND SOLICITED TESTIMONY IT KNEW TO BE FALSE OR SIMPLY ALLOWED TESTIMONY TO PASS UNCORRECTED;

> 1. ACCORDING TO SGT. SCHAFFER, HAND PRINTED NOTES AND THE SUPPLEMENTARY REPORT FROM 9-15-94 UPON INTERVIEWING VALENTINE AND NATHAN, AND BY A PHONE CALL DURING THAT INTERVIEW, IRA NATHAN STATED THAT THE PENDANT HAD NOT BEEN CUSTOM CRAFTED FROM HIS MOTHER'S DIAMOND ENGAGEMENT RING.

> 2. IN FACT THE PROSECUTION WAS FULLY AWARE FROM A PHONE INTERVIEW WITH IRA NATHAN, HE WAS IN POSSESSION OF HIS MONTHER'S ENGAGEMENT RING AND THE DIAMOND IN HER RING WAS LOST SEVERAL YEARS AGO – THREE (3) YEARS AGO HE HAD THE DIAMOND REPLACED IN HIS MONTHER'S RING, HIS SISTER-IN-LAW'S PENDANT WAS NEVER MADE FROM HIS MONTHER' ENGAGEMENT RING AS ORIGINALLY THOUGHT. IT WAS NOT CUSTOM CRAFTED, THE PENDANT WAS BOUGHT FROM A STORE IN PELLAIN BAY.

> 3. THIS REPORT SHOWS THE PENDANT WAS NOT CUSTOM CRAFTED FROM MS. NATHAN HUSBAND'S MONTHER'S ENGAGEMENT RING, AND CLEARLY DEMONSTRATED THE PROSECUTION SOLICITED FALSE TESTIMONY REGARDING THE ALLEGED CUSTOM CRAFTED PENDANT SHE ALWAYS WORE AROUND HER NECK.

THE COURT IN <u>AGURS</u> DISTINGUISHED THREE SITUATIONS INVOLVING THE DICSOVERY, AFTER TRIAL, OF INFORMATION FAVORABLE TO THE ACCUSED THAT HAD BEEN KNOWN TO THE PROSECUTION BUT UNKNOWN TO THE DEFENSE. THE FIRST SITUATION WAS THE PROSECUTOR'S KNOWING USE OF PERJURED TESTIMONY OR EQUIVALENTLY, THE PROSECUTOR'S KNOWING FAILURE TO DISCLOSE THAT TESTIMONY USED TO CONVICT THE DEFENDANT WAS FALSE. THE COURT NOTED THE WELL-ESTABLISHED RULE THAT "A CONVICTION OBTAINED BY KNOWING USE OF PERJURED TESTIMONY IS FUNDAMENTALLY UNFAIR, AND MUST BE SET ASIDE IF THERE IS ANY REASONABLE LIKIHOOD THAT THE FALSE TESTIMONY COULD HAVE AFFECTED THE JUDGEMENT OF THE JURY." 427 U.S., AT 103 (FOOTNOTE OMITTED). ALTHOUGH THIS THIS RULE IS STATED IN TERMS THAT TREAT THE NOWING USE OF PERJURED TESTIMONY AS ERROR SUBJECT WHICH THE FACT THAT TESTIMONY IS PERJURED TESTIMONY AS A MATERIALITY AS ERROR SUBJECT TO HARMLESS ERROR REVIEW, IT MAY AS EASILY BE STATED AS A MATERIALITY STANDARD UNDER WHICH THE FACT TESTIMONY IS PERJURED IS CONSIDERED MATERIAL UNLESS FAILURE TO DISCLOSE IT WOULD BE HARMLESS BEYOND A REASONABLE DOUBT. THE COURT IN <u>AGURS</u> JUSTIFIED THIS STANDARD OF MATERIALITY ON THE GROUND THAT THE NOWING USE OF PERJURED TESTIMONY INVOLVES PROSECUTORIAL MISCONDUCT AND, MORE IMPORTANTLY, INVOLVES "A CORRUPTION OF THE TRUTH-SEEKING FUNCTION OF THE TRIAL PRECOSS." <u>ID.</u> AT 104.

IN FACT, THE <u>BRADY</u> RULE HAS ITS ROOTS IN A SERIES OF CASES DEALING WITH CONVICTIONS BASED ON THE PROSECUTION'S KNOWING USE OF PERJURED TESTIMONY. IN <u>MOONEY V. HOLOHAN</u>, 294, U.S. 103 (1935), THE COURT ESTABLISHED THE RULE THAT THE KNOWING USE BY A STATE PROSECUTOR OF PERJURED TESTIMONY TO OBTAIN A CONVICTION AND THE DELIBERATE SUPPRESSION OF EVIDENCE THAT WOULD HAVE IMPEACHED AND REFUTED THE TESTIMONY CONSTITUTES A DENIAL OF DUE PROCESS. THE COURT REASONED THAT A "DELIBERATE DECEPTION OF COURT AND JURY BY THE PRESENTATION OF TESTIMONY KNOWN TO BE PERJURED" IS INCONSISTANT WITH "THE RUDIMENTARY DEMANDS OF JUSTICE." <u>ID.</u>, AT 112. THE COURT REAFFIRMED THIS PRINCIPLE IN BROADER TERMS IN <u>PYLE V. KANSAS</u>, 317 U.S. 213 (1942), WHERE IT HELD THAT ALLEGATIONS THAT THE PROSECUTOR HAD DELIBERATELY SUPPRESSED EVIDENCE FAVORABLE TO THE ACCUSED AND HAD KNOWINGLY USED PERJURED TESTIMONY WERE SUFFICIENT TO CHARGE A DUE PROCESS VIOLATION.

**A.**   THE SUPPLEMENTARY REPORT BY DET. JOHN D. LADD (ON SEPTEMBER 8, 1994)

CONCERNING AN INTERVIEW WITH ELAINE SCHUB (WHOM SHARED ROOM 237 WITH THE VICTIM) IS IMPORTANT AND RELEVANT TO MR. JONES' CLAIM OF PROSECUTORIAL MISCONDUCT, AMONG OTHER CLAIMS, AND SHOULD HAVE BEEN TURNED OVER TO MR. JONES' TRIAL COUNSEL. PER AN INTERVIEW CONDUCTED ON SEPT 3, 1994, ELAINE SCHUB PROVIDED A DESCRIPTION OF THE PENDANT STOLEN FROM MS. NATHAN (THE VICTIM IN THIS CASE); ELAINE SCHUB DESCRIBED THE PENDANT OF HER FRIEND AND ROOMMATE IN THE HOTEL AS BEING SILVER IN COLOR AND HAVING THREE (3) DIAMONDS. SUBSEQUENT TO THE DESCRIPTION PROVIDED BY ELAINE SCHUB ON SEPT. 3, 1994 (BY MEANS OF A DEPOSITION ON PP 13 AND 14), DET. JOHN D. LADD WROTE HIS SUPPLEMENTAL REPORT OF SEPT. 8, 1994, WHEREBY DET. LADD NOTED: "SHE ALSO CONFIRMED THAT THE NECKLACE THAT THE VICTIM HAD BEEN WEARING AND WAS NOW MISSING HAD THREE (3) DIAMONDS." THIS INFORMATION WAS EXTREMELY IMPORTANT, WHEREUPON A PENDANT WAS ALLEGEDLY FOUND IN A TOOLBOX IN THE TRUNK OF MR. JONES' CAR, WHICH (THE PENDANT, I.E.) SUBSQUENTLY BECAME THE PREDICATE OF MR. JONES' ALLEGED GUILT, AND WAS OFFERED AS EVIDENCE TO THE JURY. IT WAS IMPORTANT, WHEREUPON THE ALLEGED FOUND PENDANT WAS GOLD IN COLOR AND STRUCTURED FOR FIVE (5) DIAMONDS OR STONES. HAD MR. JONES BEEN PROVIDED WITH THIS INFORMATION (AS HE WAS ENTITLED), HE WOULD HAVE BEEN ABLE TO PROVIDE THE JURY WITH SUCH FACTS OPPOSED TO THE FABRICATED UNTRUTH THAT THE STATE PLACED BEFORE THE JURY. THE JURY WOULD HAVE BEEN AWARE, THAT AS STATED AND DESCRIBED BY THE VICTIM'S FRIEND AND LAST PERSON TO HAVE BEEN WITH HER AND SEEN THE PENDANT, THE PENDANT OF WHICH WAS STOLEN AND BLONGED TO THE VICTIM WAS SILVER IN COLOR, WITH THREE (3) DIAMONDS -- AND NOT GOLD IN COLOR, STRUCTURED FOR FIVE (5) STONES (AS THE ONE ALLEGEDLY FOUND IN THE TOOLBOX IN THE TRUNK OF MR. JONES' CAR).

B. THE HANDWRITTEN NOTES BY SGT. J. SCHAFFER (ON SEPT. 15, 1994) CONCERNING INTERVIEW(S) WITH "VAL" AND ELKE NATHAN ARE RELEVANT TO PETITIONER'S CLAIM OF PROSECUTORIAL MISCONDUCT, AMONG OTHER CLAIMS, AND SHOULD HAVE BEEN TURNED OVER TO MR. JONES' TRIAL COUNSEL. PER THE INTERVIEW CONDUCTED WITH "VAL" AND ELKE NATHAN (I.E., THE SON AND DAUGHTER-IN-LAW OF THE VICTIM), THEY BOTH DESCRIBED THE PENDANT OF MS. NATHAN (I.E. THE VICTIM) AS BEING SILVER IN COLOR, AND HAVING THREE (3) SMALL DIAMONDS. ALSO NOTEWORTHY IS VAL'S ALMOST-CERTAINTY THAT HIS MOTHER'S PENDANT WAS NOT GOLD.

C. MR. JONES RESPECTFULLY POINTS OUT TO THIS COURT THE NOTEWORTHINESS OF THE LOWER COURT'S ABSOLUTE RELIANCE ON THE PENDANT PROFFERED AS EVIDENCE OF HIS

ALLEGED GUILT, AS THAT OF AN OVERWHELMING NATURE IN THE FACE OF HIS CLAIMS PRESENTED THEREIN. THE LOWER COURTS HAVE CONSISTENTLY AFFIRMED MR. JONES' SENTENCE AND CONVICTION BASED UPON THE SAID OVERWHELMING UNIQUENESS OF THE PENDANT ALLEGEDLY FOUND IN THE TOOLBOX IN THE TRUNK OF MR. JONES' CAR. HAVING NOT BEEN PROVIDED WITH THESE DOCUMENTS UNTIL NOW -- NOT ONLY HAS MR. JONES BEEN EFFECTIVELY PREJUDICED IN HIS ABILITY TO DEFEND HIMSELF AT TRIAL, BUT SUCH PREJUDICE HAS ALSO INFECTED HIS STATE APPELLATE PROCESS. HAD THE COURTS BEEN AWARE OF THE CONSISTENT FACTS DESCRIBING THE VICTIM'S PENDANT AS SLIVER IN COLOR WITH THREE (3) DIAMONDS, AS OPPOSED TO THAT WHICH THE PROSECUTION SUBSEQUENTLY FABRICATED, THE LOWER COURTS WOULD HAVE HAD NO STANDING ON THE OVERWHELMING UNIQUENESS... AND WOULD HAVE HAD TO DISACCORD MR. JONES RELIEF ON OTHER GROUNDS -- OR THUS GRANT HIM THE RELIEF HE IS RESPECTFULLY DUE.

PRO SE PETITIONER, REQUIRES THIS COURT TO COMPARE THE SUPPRESSED EVIDENCE LISTED IN THIS (MOTION) TO ALL THE OTHER EVIDENCE IN LINE WITH MR. JONES' REASONING, THAT THE DEFENSE AND THE TRIAL WOULD HAVE TAKEN HAD THE DEFENSE NOT BEEN MISLEAD:

A. UNCOVERED FROM THE FILES OF HAMILTON COUNTY PROSECUTOR'S OFFICE WERE QUESTIONNAIRS SENT OUT TO EACH GUEST WHO STAYED AT THE EMBASSY SUITES HOTEL SURROUNDING THE TIME OF SEPTEMBER 2ND AND 3RD 1994, OF MS. NATHAN'S MURDER;

B. THIS INFORMATION CLEARLY SHOWS THE PROSECUTION AND POLICE WERE FULLY AWARE OF THE FACT FROM FRIDAY AFTERNOON (SEPTEMBER 2, 1994 [AT 4:00 P.M.]) THROUGHOUT THE NIGHT, AND INTO SATURDAY MORNING (8:45 A.M.) SEPTEMBER 3, 1994, THROUGH THE TIME-LINE THAT MS. NATHAN'S BODY WAS FOUND ON THE FLOOR OF THE HOTEL AT 8:00 A.M. ON SEPTEMBER 3, 1994;

C. THE SUPRESSED EVIDENCE FOUND WITHIN THE PROSECUTION FILES WITH RESPECT TO THE GUEST QUESTIONNAIRS [UNDER CUTS THE STATE'S SET OF ASSUMPTIONS OFFERED INTO EVIDENCE WITHOUT ANY PROOF OF TESTIMONY] MR. JONES WORKED ON THE 2ND FLOOR ON THE 2ND OF SEPTEMBER, 1994, HE SEEN MS. SCHUB AND MR. KAPLAN CHECKED IN AND GO TO ROOM 237, ITS THE PROSECUTION'S BELIEF MR. JONES THOUGHT THEY WERE THE ONLY TWO IN ROOM 237. MR. JONES WAS OFF DUTY WHEN MS. NATHAN SHOWED UP LATER ON SEPTEMBER 2ND, 1994. HE WAS EMPLOYED AT THE HOTEL ON THE MORNING IN QUESTION. T.P. 124-210, MR. JONES' DUTIES TOOK HIM TO VARIOUS PLACES THROUGHOUT THE HOTEL. THE PROSECUTION BELIEVED MR. JONES SAW MS. SCHUB AND

MR. KAPLAN LEAVE ROOM 237 THE MORNING IN QUESTION.

THE SUPPRESSED EVIDENCE FOUND WITHIN THE PROSECUTION FILES CLEARLY DEMONSTRATED:

1. SUSPICIOUS INDIVIDUALS WERE OBSERVED BY A NUMBER OF GUESTS TRYING TO GET INTO GUESTS ROOMS WITH A KEY DURING THE TIME-LINE THAT MS. NATHAN ARRIVED AT THE HOTEL ON SEPTEMBER 2, 1994, AT 4:00 P.M.;

2. THIS INFORMATION CLEARLY DEMONSTRATES NOT ONLY WAS SUSPICIOUS INDIVIDUALS WERE OBSERVED TRYING TO GAIN ENTRANCE INTO GUEST ROOMS WITH A KEY DURING THE TIME-LINE THAT MS. NATHAN ARRIVED AT THE HOTEL ON SEPTEMBER 2, 1994 AT 4:00 P.M., THIS INFORMATION CLEARLY SHOWS SUSPICIOUS INDIVIDUALS WERE OBSERVED THROUGHOUT THE NIGHT INTO THE TIME-LINE THE BODY OF MS. NATHAN WAS FOUND ON THE FLOOR OF HER HOTEL ROOM, ROOM 237, AT 8:00 A.M., SEPTEMBER 3, 1994, TRYING TO GET INTO GUEST ROOMS;

3. THIS INFORMATION CLEARLY SHOWS THE SUSPICIOUS INDIVIDUALS TRYING TO GET INTO GUEST ROOMS **DOES NOT FIT THE DESCRIPTION OF MR. JONES;**

4. THIS INFORMATION CLEARLY DOES NOT SAY SUSPICIOUS INDIVIDUALS OBSERVED BY GUESTS TRYING TO GET INTO THEIR ROOMS WITH A KEY WAS AN EMBASSY SUITES EMPLOYEE. NOR DOES THE INFORMATION REFER TO AS OBSERVED BY GUESTS SEEING SUSPICIOUS INDIVIDUALS AS ONE OF EMBASSY SUITE HOTEL EMPLOYEES;

5. NO ONE SAW MR. JONES HAVE ANY CONTACT WITH THE VICTIM, NOR DID ANYONE SEE HIM ENTER OR LEAVE THE VICTIM'S ROOM, ROOM 237. CO-WORKERS WHO OBSERVED HIM IMMEDIATELY INCIDENT SAW NO EVIDENCE OF BLOOD ON HIS CLOTHING, OR ANY SIGN OF PARTICIPATING IN A STRUGGLE. T.P. 1038-1080, 1448-1454. MR. JONES WAS ALSO INTERVIEWED BY POLICE AS PART OF THE GENERAL INVESTIGATION, AND NO SIGN OF BLOOD, STRUGGLE, OR NERVOUSNESS WAS OBSERVED. T.P. 1468-1472

AT TRIAL, THE PROSECUTION SUPPRESSED EVIDENCE REGARDING TWO (2) CREDIBLE

ALTERNATIVE SUSPECTS. THE JURY IN MR. JONES' CASE SHOULD HAVE BEEN AFFORDED THE OPPORTUNITY TO CONSIDER THIS MATERIAL AS EVIDENCE THAT SOMEONE ELSE MAY HAVE COMMITTED THE CRIME;

**A.** THE STATEMENTS OF NORMAN RYAN AND DEMETRIUS WILLIAMS GIVEN TO DETECTIVE LADD ON SEPTEMBER 3, 1994, DEMONSTRATE THAT TWO (2) INDIVIDUALS WERE OBSERVED LEAVING MS. NATHAN'S ROOM UPON HEARING SCREAMS. ONE OF THE MEN GOING LEFT AND ONE CARRYING A WALKIE-TALKIE GOING RIGHT;

**B.** THERE IS NO MISTAKING OR CONFUSING AS TO THE CONTEXT AND STATEMENTS OF EMPLOYEES, RYAN AND WILLIAMS, GIVEN TO DETECTIVE LADD ON SEPTEMBER 3, 1994, DESCRIBING A DARK COMPLECTEDMAN AND A WHITEN MAN WITH GREY HAIR, LEAVING MS. NATHAN'S ROOM UPON HEARING SCREAMS. ONE OF THE MEN HAD A WALKIE-TALKIE IN HIS HAND THAT MORNING;

**C.** DETECTIVE LADD NOTES DESCRIBE A FULL, CLEAR, DESCRIPTION OF THE TWO INDIVIDUALS WHO WERE OBSERVED LEAVING MS. NATHAN'S ROOM UPON HEARING SCREAMS. NEITHER DESCRIPTION GIVEN BY EMPLOYEES RYAN AND WILLIAMS MATCH MR. JONES. (BOTH OF THESE EMPLOYEES WORKED WITH MR. JONES THAT MORNING IN COMP BREAKFAST.)

**D.** NORMAN RYAN AND DEMETRIUS WILLIAMS CLEARLY KNEW WHO MR. JONES WAS AND WORKED WITH HIM THE MORNING OF SEPTEMBER 3, 1994. SO THE PROSECUTION CANNOT SAY THESE TWO EMPLOYEES WERE DESCRIBING MR. JONES AS ONE OF THE TWO INDIVIDUALS WHO WERE OBSERVED LEAVING THE ROOM. IN FACT, "FACTUAL MATERIALS" FOUND WITHIN THE BLUE ASK POLICE AND PROSECUTOR'S FILES SHOW NORMAN RYAN AND DEMETRIUS WILLIAMS WERE AT LEAST INTERVIEWED BY THE PROSECUTION ON TWO SEPARATE OCCASIONS. 1) AS TO WERE THEY WORKING WITH MR. JONES ON THE MORNING OF SEPTEMBER 3, 1994 IN COMP BREAKFAST; AND 2) THE TIME-LINE THEY WORKED WITH MR. JONES THAT MORNING, ETC.

**E.** HAD THE STATEMENTS OF RYAN AND WILLIAMS BEEN DISCLOSED TO MR. JONES' ATTORNEYS DURING TRIAL, MR. JONES' ATTORNEYS WOULD HAVE BEEN ABLE TO ATTACK THE MOST FUNDAMENTAL PORTION OF THE STATES ASSUMPTION THE ALLEGED MURDER WEAPON BEING A WALKIE-TALKIE, AND THE EXPERT TESTIMONY OF F.B.I. SPECIALIST WILLIAM STOKES AND DR. WILLIAM OLIVER OF THE ARMED FORCES INSTITUTE OF PATHOLOGY.

F. THE PROSECUTION'S CIRCUMSTANTIAL CHAIN OF INFERENCE FIRST DEPENDS ON THE INFERENCE THAT MR. JONES HAS A WALKIE-TALKIE LIKE THE REPLICATE ONE USED BY THE EXPERT TESTIMONY OF WILLIAM STOKES AND DR. WILLIAM OLIVER, THAT MR. JONES ATTACKED THE DECEDENT WITH IT, AND THAT AS A RESULT OF THE ATTACK, THE BRUISES LEFT ON THE BODY ARE SIMILAR IN PATTERN OF THE WALKIE-TALKIE;

G. HAD THE PROSECUTION DISCLOSED THE INFORMATION GIVEN TO DETECTIVE LADD SURROUNDING THE TIME-LINE OF MS. NATHAN'S MURDER, THAT TWO MEN WERE OBSERVED LEAVING THE VICTIM'S ROOM WITH ONE CARRYING A WALKIE-TALKIE, MR. JONES WOULD HAVE BEEN ABLE TO CHALLENGE THE OPINION RENDERED BY THE STATE'S SO-CALLED EXPERTS. NEITHER WITNESS, STOKES OR OLIVER, COULD CONCLUDE TO A REASONABLE DEGREE OF CERTAINTY THAT MS. NATHAN'S WOUNDS WERE MADE BY THE WALKIE-TALKIE;

H. THE PROBABILITY OF THE WALKIE-TALKIE SEEN IN THE HANDS OF THE ALTERNATE SUSPECTS OBSERVED LEAVING THE VICTIM'S ROOM HOLDS GREATER FACTUAL BASIS FOR IT BEING THE MURDER WEAPON BASED ON EYE-WITNESS OBSERVATION. THE OPINION BY THE STATE'S SO CALLED EXPERTS, IS BASED UPON "POSSIBILITIES" AND NOT SCIENTIFIC CERTAINTIES, BETWEEN THE BRUISE PATTERN AND WALKIE-TALKIE;

I. GIVEN THE INFORMATION CONTAINED WITHIN THE STATEMENTS OF NORMAN RYAN AND DEMETRIUS WILLIAMS, AND THE HAND WRITTEN NOTES OF DETECTIVE LADD FROM THE INTERVIEWS WITH THE TWO EMPLOYEES OF SEPTEMBER 3, 1994, WHETHER OR NOT THEY WERE EXCULPATORY, THEY WERE MOST DEFINITELY IMPEACHING AND AS SUCH, DEPRIVED OF SAID DOCUMENTS NOT ONLY VIOLATED MY CONSTITUTIONAL RIGHT TO DUE PROCESS, BUT THE VERY DEPRIVATION OF THIS IMPEACHING EVIDENCE (AS SUCH) VIOLATED MY CONSTITUTIONAL RIGHT TO CONFRONTATION AS WELL.

J. MR. JONES WAS DEPRIVED OF THE OPPORTUNITY AT THE HANDS OF THE STATE'S MISCONDUCT IN WITHHOLDING EXCULPATORY MATERIALS TO DEMONSTRATE AND ESTABLISH AN ALTERNATIVE SUSPECT THEORY BASED ON THE FACT TWO (2) SUSPICIOUS INDIVIDUALS, A WHITE MAN AND A BLACK MAN, WERE OBSERVED BY MULTIPLE GUESTS TRYING TO ENTER INTO THE GUEST ROOMS ON SEPTEMBER 2 AND 3, 1994. THIS IS IN CORRELATION WITH THE STATEMENTS OF EMBASSY SUITES EMPLOYEE'S DEMETRIUS WILLIAMS AND NORMAN RYAN OBSERVED LEAVING THE VICTIM'S ROOM UPON HEARING SCREAMING ON THE MORNING OF SEPTEMBER 3, 1994, AROUND 8:00 A.M.

IN <u>UNITED STATES V. BAGLEY</u>, 473 U.S. 667 (1985), THE COURT ANALYZED THE

ISSUE UPON A PROSECUTION THAT WITHHELD EVIDENCE HAS A DIRECT EFFECT ON THE ENTIRE COURSE OF TRIAL... WITHOUT DOUBT, "DEFENSE-COUNSEL" DEVELOPS HIS/HER TRIAL STRATEGY ON AVAILABLE EVIDENCE. A MISSING PIECE OF INFORMATION MAY WELL PRECLUDE THE ATTORNEY FROM PURSUING A STRATEGY THAT POTENTIALLY WOULD BE EFFECTIVE. HIS/HER CLIENT MIGHT CONSEQUENTLY BE CONVICTED EVEN THOUGH NONDISCLOSED INFORMATION MIGHT HAVE OFFERED AN ADDITIONAL OR ALTERNATIVE DEFENSE, IF NOT PURE EXCULPATION. UNDER SUCH CIRCUMSTANCES, A REVIEWING COURT MUST BE SURE NOT TO FOCUS ON THE AMOUNT OF EVIDENCE SUPPORTING THE VERDICT TO DETERMINE WHETHER THE TRIER OF FACT REASONABLY WOULD HAVE REACHED THE SAME CONCLUSION. INSTEAD, THE COURT MUST DECIDE WHETHER THE PROSECUTION HAS SHOWN BEYOND A REASONABLE DOUBT THAT THE NEW EVIDENCE, IF DISCLOSED AND DEVELOPED BY REASONABLY COMPETENT COUNSEL, WOULD HAVE AFFECTED THE OUTCOME OF TRIAL. MR. JONES' COUNSEL WAS DENIED THE TOOLS DURING HIS TRIAL TO PREPARE A DEFENSE. UPON ANALYZING THE WITHHELD FACTUAL MATERIALS FOUND WITHIN THE HAMILTON COUNTY PROSECUTOR'S FILES. AS SUMMARIZED IN JAMISON V. COLLIN, 100 F.SUPP 2d 647, 710-11 (S.D. OHIO 2000), THE PROCEDURE FOR FEDERAL REVIEW OF A PROSECUTORIAL MISCONDUCT CHALLENGE IS AS FOLLOWS:

> FOR PROSECUTORIAL MISCONDUCT TO RISE TO THE LEVEL OF A CONSTITUTIONAL VIOLATION, A COURT MUST DETERMINE THAT THE PROSECUTOR'S STATEMENTS "SO INFECTED THE TRIAL WITH UNFAIRNESS AS TO MAKE THE RESULTING CONVICTION A DENIAL OF DUE PROCESS." HILL V. BRIGANO, 199 F. 3d 833, 847 (6th CIR. 1999) (QUOTING DONNELLY V. DECHRISTOFORO, 416 U.S. 637, 643, 94 S. CT. 1868, 40 L.ED. 2d 431 (1974)). WHEN ANALYZING A CLAIM OF PROSECUTORIAL MISCONDUCT, THE SIXTH CIRCUIT REQUIRES A DISTRICT COURT TO INITIALLY DECIDE WHETHER THE CHALLENGED STATEMENTS WERE IMPROPER. BOYLE V. MILLION, 201 F.3d 711, 717 (6th CIR. 2000). IF IMPROPER, THE DISTRICT COURT NEXT EXAMINES WHETHER THE STATEMENTS WERE SO FLAGRANT AS TO CONSTITUTE A DENIAL OF DUE PROCESS AND THEREBY WARRANT THE GRANTING OF A WRIT. ID. FLAGRANCY IS DISCERNED BY CONSIDERING: "'1) WHETHER THE STATEMENTS TENDED TO MISLEAD THE JURY OR PREJUDICED THE DEFENDANT: 2) WHETHER THE STATEMENTS WERE ISOLATED OR AMONG A SERIES OF IMPROPER STATEMENTS: 3) WHETHER THE STATEMENTS WERE DELIBERATELY OR ACCIDENTALLY BEFORE THE JURY; AND 4) THE TOTAL STRENGTH OF THE EVIDENCE AGAINST THE ACCUSED.'" ID. (QUOTING UNITED STATES V. FRANCIS, 170 F.3d 546, 549-50 (6th CIR. 1999)).

ADDITIONALLY, "ALLEGATIONS OF PROSECUTORIAL MISCONDUCT MUST BE CONSIDERED IN LIGHT OF THE ENTIRE TRIAL RECORD." JAMISON, 100 F.SUPP. 2d AT 711. THIS COURT WILL PROCEED BY ANALYZING EACH ALLEGED INSTANCE OF PROSECUTORIAL MISCONDUCT AND THEN CONSIDERING THEM IN CUMULATION.

HAMILTON COUNTY PROSECUTOR PIEPMEIR DEPOSITION STATEMENTS ON PAGES 38-41,

WITH RESPECT TO THE SUPPRESSED EVIDENCE FOUND IN THE HAMILTON COUNTY CORONER'S FILES FROM [MICROBIOLOGY REFERENCE LABORATORY 3645 CENTRAL PARKWAY, CINCINNATI, OHIO 45223]:

    A-1 ACCORDING TO DOCUMENT (I.D. #1229-81) AND ACCESSION (NO. H-377-94), FROM MICROBIOLOGY REFERENCE LABORATORY [DATED SEPTEMBER 8, 1994), CLEARLY SHOWN THAT MS. NATHAN TESTED POSITIVE FOR HEPATITIS B;

    A-2. (ACCORDING TO SECOND SET OF TEST RESULTS FOUND WITHIN THE FILES DATED 9/15/94, I.D. NO. 252 "NEGATIVE FOR HEPATITIS B"). MR. JONES DOES NOT HAVE HEPATITIS B;

MR PIEPMEIER STATED HAMILTON COUNTY CORONER'S OFFICE HAS IN PLACE THIS PROCEDURE FOR THE CORONER'S OFFICE'S LAB TECHNICIANS, ANYTIME THEY DREW BLOOD FOR DNA TESTING FOR DNA BEFORE THEY WOULD TEST IT, BEFORE THEY WOULD TEST IT FOR AIDS AND APPARENTLY FOR HEPATITIS. THIS WAS WHEN DNA TESTING WAS STILL KIND OF IN ITS INFANCY GOING BACK TO 1994. THIS WAS SOMETHING THE CORONER'S OFFICE DID JUST FOR THEIR INTERNAL USE SO NONE OF THE LAB TECHNICIANS WOULD CATCH AIDS AT THE CORONER'S OFFICE. MR. PIEPMEIER GOES ON TO SAY I DON'T BELIEVE THIS TYPE OF INDEPENDENT LABORATORY TEST RESULTS. THE CORONER'S OFFICE WOULD HAVE FURNISHED THE HAMILTOM COUNTY PROSECUTOR'S OFFICE A COPY [IT'S-NOT-AN-OFFICIAL-TEST-RESULT.]

    MS. NATHAN'S DEATH RECORDS AND AUTOPSY REPORT CLEARLY SHOW THAT MS. NATHAN SUFFERED FROM HEPATITIS B, YET ACCORDING TO HAMILTON COUNTY PROSECUTOR PIEPMEIER HE NEVER SAW MS, NATHAN'S DEATH RECORDS AND AUTOPSY REPORT SHOWING MS. NATHAN SUFFERED FROM HEPATITIS B.

    THE SAID TEST RESULTS COULD HAVE BEEN USED TO SHOW THAT MS. NATHAN SUFFERED FROM HEPATITIS B, AN INFECTIOUS DISEASE. RELEVANT, AND MOST NOTABLY IMPORTANT IS THAT UPON CONTACT WITH HER ASSAILANT, THEY WOULD HAVE BEEN INFECTED BY WAY OF BLOOD AND BODY FLUID TRANSFER. ONE OF THE MOST COMPELLING ASPECT OF THE STATE'S CASE WAS THE TESTIMONY OF DR. MCDONOUGH "A HAND SURGEON," DR. MCDONOUGH TESTIFIED THAT THE WOUND TO MR. JONES' LEFT FINGER WAS A CLENCHED-FIST BITE WOUND RESULTING FROM CONTACT WITH MS. NATHAN'S MOUTH.

TR. P. 1008. DR. MCDONOUGH FURTHER TESTIFIED THE PRESENCE OF EIKENALLA SP. IN MR. JONES' LEFT INDEX FINGER LED HIM TO CONCLUDE THAT THIS WOUND WAS A BITE WOUND. TR. P. 1008-9. DR. MCDONOUGH ALSO PRESENTED A SLIDE-SHOW WHICH HE TYPICALLY PRESENTED IN A LECTURE TO MEDICAL STUDENTS ABOUT HAND-MOUTH INJURIES. THE SLIDE SHOW LECTURE INCLUDED PICTURES OF A WOMAN WITH HER EAR BITTEN OFF, AND REFERENCE TO AIDS TRANSMISSION. TR. P. 992-1000.

**MS. NATHAN WAS NEVER TESTED TO SEE IF SHE CARRIED EIKENALLA IN HER MOUTH.**

THE PROSECUTOR MADE THE POWERFUL BUT TOTALLY UNPROVEN CLAIM IN CLOSING THAT THE VICTIM HAD TESTED POSITIVE FOR THE EIKENELLA CORRODENS BACTERIUM. (TR. P. 1824). THERE WAS ABSOLUTELY NO TESTIMONY ON THIS PIVOTAL POINT. WITHOUT ANY PROOF ON THIS POINT, THE PROSECUTOR COULD NOT PROPERLY ARGUE THAT THERE WAS AN INCRIMINATING CIRCUMSTANTIAL CONNECTION BETWEEN DR. MCDONOUGH'S CLAIM THAT MR. JONES' HAND WOUND WAS INFECTED BY THIS BACTERIUM AND THAT HE CONTRACTED THIS INFECTION WHEN HE INJURED HIS HAND BY STRIKING THE VICTIM IN THE MOUTH. (TR. P. 1004-34) MR. JONES WOULD HAVE CLEARLY BEEN ABLE TO EFFECTIVELY CHALLENGED DR. MCDONOUGH'S IMPROPERLY ADMITTED TESTIMONY. IN DEFENSE TO ONE OF THE STATE'S NUMEROUS PREJUDICIAL INFERENCES, MR. JONES WOULD HAVE BEEN EQUIPPED (AS ENTITLED) TO DEMONSTRATE AND ESTABLISH THAT, HAD MR. JONES BEEN GUILTY OF STRIKING THE VICTIM IN THE MOUTH (AS MOST-CERTAINLY WAS THE STATE'S POSITION), HE WOULD HAVE CONTRACTED AND TESTED POSITIVE FOR THE HEPATITIS-B VIRUS THAT THE VICTIM IN FACT TESTED POSITIVE FOR: THIS BEING SO, THAT A SCRATCH ON JONES' HAND WAS THE RESULT OF STRIKING THE VICTIM. WHERE EVIDENCE OF THIS MAGNITUDE WAS AVAILABLE FOR MR. JONES' DEFENSE; AND THE STATE WITHHELD SUCH MATERIAL, MR. JONES CAN'T BE SAID TO HAVE RECEIVED A FAIR TRIAL IN ACCORDANCE WITH THE DUE PROCESS STANDARDS.

IN KYLES V. WHITLEY, 115 S.CT. 1555 (1995), THE SUPREME COURT DISCUSSED IN A FOOTNOTE:

> THE PROSECUTION'S AFFIRMATIVE DUTY TO DISCLOSE EVIDENCE FAVORABLE TO A DEFENDANT CAN TRACE ITS ORIGINS TO EARLY 20TH-CENTURY STRICTURES AGAINST MISREPRESENTATION AND IS OF COURSE MOST PROMINENTLY ASSOCIATED WITH THIS COURT'S DECISION IN BRADY V. MARYLAND, 373 U.S. 83, 10 L. ED. 2d 215, 83 S. CT. 1194 (1963). SEE ID. AT 86 (RELYING ON MOONEY V. HOLOHAN, 294 U.S. 103, 112, 79 L. ED. 791, 55 S. CT. 340 (1935), AND PYLE V. KANSAS, 317 U.S. 213, 215-216, 87 L. ED. 214, 63 S. CT. 177 (1942)). BRADY HELD "THAT THE SUPPRESSION BY THE PROSECUTION OF EVIDENCE FAVORABLE TO AN

-13-

ACCUSED UPON REQUEST VIOLATES DUE PROCESS WHERE THE EVIDENCE IS MATERIAL EITHER TO GUILT OR TO PUNISHMENT, IRRESPECTIVE OF THE GOOD FAITH OR BAD FAITH OF THE PROSECUTION." 373 U.S. AT 87; SEE MORRE V. ILLINOIS, 408 U.S. 786, 794-795, 33 L. ED. 2d 706, 92 S. CT. 2562. IN UNITED STATES V. AGURS, 427 U.S. 97, 49 L. ED. 2d 342, 96 S. CT. 2392 (1976), HOWEVER, IT BECAME CLEAR THAT A DEFENDANT'S FAILURE TO REQUEST FAVORABLE EVIDENCE DID NOT LEAVE THE GOVERNMENT FREE OF ALL OBLIGATION. THERE, THE COURT DISTINGUISHED THREE SITUATIONS IN WHICH BRADY CLAIM MIGHT ARISE: FIRST, WHERE PREVIOUSLY UNDISCLOSED EVIDENCE REVEALED THAT THE PROSECUTION INTRODUCED TRIAL TESTIMONY THAT IS KNEW OR SHOULD HAVE KNOWN WAS PERJURED, 427 U.S. AT 103-104; SECOND, WHERE THE GOVERNMENT FAILED TO ACCEDE TO A DEFENSE REQUEST FOR DISCLOSURE OF SOME SPECIFIC KIND OF EXCULPATORY EVIDENCE, ID. AT 104-107; AND THIRD, WHERE THE GOVERNMENT FAILED TO VOLUNTEER EXCULPATORY EVIDENCE NEVER REQUESTED, OR REQUESTED ONLY IN A GENERAL WAY. THE COURT FOUND A DUTY OF THE PART OF THE GOVERNMENT EVEN IN THIS LAST SITUATION, THOUGH ONLY WHEN SUPPRESSION OF THE EVIDENCE WOULD BE "OF SUFFICIENT SIGNIFICANCE TO RESULT IN THE DENIAL OF THE DEFENDANT'S RIGHT TO A FAIR TRIAL." ID., AT 108.

MR. JONES' MOTION HEREIN SPEAKS TO THE HEART OF WHAT THE SUPREME COURT ADDRESSED IN THE ABOVE FOOTNOTE OF KYLES. MR. JONES PRAYS THIS HONORABLE COURT WILL ACCEPT THIS SUPPLEMENTAL MOTION AS PART OF THE RECORD IN THE SAID TRAVERSE PETITION, SUBMITTED BY SAID COUNSEL MR. MICHAEL L. MONTA AND MR. GARY W. CRIM (PURSUANT TO ANY AND ALL APPLICABLE RULES) IN THE INTEREST OF JUSTICE, SO THAT THIS HONORABLE COURT MAY THEREIN BE FULLY APPRISED OF PRO SE PETITIONER, MR. JONES' CLAIMS PREDICATED ON A MOST EGREGIOUS VIOLATION OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AS PROVIDED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION TO A FAIR TRIAL AND APPELLATE REVIEW.

RESPECTFULLY SUBMITTED,

MR. ELWOOD H. JONES
A339-441   D-5-27
878 COITSVILLE-HUBBARD RD.
YOUNGSTOWN, OH 44505-4635

## CERTIFICATE OF SERVICE

A COPY OF THE FOREGOING PRO SE MOTION WAS SENT BY REGULAR U.S. MAIL TO MR. MICHAEL L. MONTA, -ATTORNEY AT LAW-, 3625 OLD SALEM ROAD, DAYTON, OH 45415-1427, MR. GARY W. CRIM, -ATTORNEY AT LAW-, 943 MANHATTEN AVE. DAYTON, OH 45406-5141, AND MS. HEATHER GOSSELIN, ATTORNEY GENERAL STATE OFFICE, CAPITAL CRIMES SECTION, 30 EAST BROAD STREET, 23RD FLOOR, COLUMBUS OH 43215, ON THIS 14TH DAY OF SEPTEMBER, 2006.

ELWOOD H. JONES