**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**ELWOOD H. JONES**

          Petitioner,                  Case No. 01-CV-564

             v.                    JUDGE ROSE

**MARGARET A. BAGLEY, Warden**      MAGISTRATE JUDGE MERZ

          Respondent.

---

**RESPONDENT'S REPLY TO PETITIONER JONES'S TRAVERSE**

---

## I.    INTRODUCTION

The overwhelming majority of Jones's Traverse is recycled verbatim from his Petition. Jones's Traverse fails to respond to Respondent's Return of Writ. *See e.g. U.S. v. Stoltz*, 325 F. Supp. 2d 982, 985 (D. Minn. 2004) ("The purpose of a traverse is to challenge factual assertions in the government's 'return' or answer to the petition.") To this extent, Respondent relies upon the arguments raised in her previously-filed Return.

What few new arguments Jones makes are either procedurally defaulted or without merit.

Respondent now addresses all of Jones's grounds for relief in turn.

**II.      ARGUMENT**

**1.      Juror Misconduct**

Abandoned

**2.      Improper Admission of Evidence and Prosecutorial Misconduct**

**A.      Improper Admission of Evidence**

**1.      Exercising right to counsel**

The first part of Jones's Merits argument is a verbatim recitation of the allegations raised in his Petition.  Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 58-59, 60-64.

Additionally, Respondent points the court to *Greer v. Miller*, 483 U.S. 756 (1987).  In *Greer*, the prosecutor cross-examined the defendant as to the defendant's silence after arrest and after receiving Miranda warnings.  The Supreme Court first found that there was no violation of *Doyle v. Ohio*, 426 U.S. 610 (1976) (the case upon which Jones relies), holding "The fact of Miller's postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case." *Id*. at 764.  Here too, the fact of Jones's postarrest invocation of counsel was not submitted to the jury as evidence from which it was allowed to draw any permissible inference.  As Jones concedes, "[T]he jury was instructed not to consider the request for counsel as proof of guilt." *Traverse*, p. 37.

The *Greer* Court went on to further find that the prosecutor's questions did not so infect the trial with unfairness as to constitute a prosecutorial-misconduct violation of due

process.  Specifically, the Court found that "The sequence of events in this case - a single question, an immediate objection, and two curative instructions – clearly indicates that the prosecutor's improper question did not violate Miller's due process rights." *Id.* at 766. Here, as in *Greer*, there was a single response by the government witness, an immediate objection by defense counsel, and two curative instructions – one immediately following the response, and one later during jury instructions. *See Return* p. 64.  As in *Greer*, there is no reason to believe that the jury in Jones's case was incapable of obeying the curative instructions – thus, no due process should be found. *See Greer*, 483 U.S. at 767.

### 2.    Indictment

In her Return, Respondent asserted that this sub-claim was procedurally defaulted. Jones attempts to respond to Respondent's argument by noting that the sub-claim was raised in his *Murnahan* application for reopening – and as a result, "this Court should review the procedural ground under the pre-AEDPA de novo standard." *Traverse* p. 41. Jones's argument fails for two reasons.  First, Jones seems to be arguing that his claim is not procedurally defaulted because he "present[ed]" it to the state courts.  Unfortunately for Jones, merely presenting a claim to the state courts is not sufficient to ensure federal habeas review.  Here, the state court of appeals (as affirmed by the Ohio Supreme Court) found that all but one of the claims alleged trial error – and thus were not properly raised in a App. R. 26(B) application for reopening.  J.A. Vol. XV, p. 191.[1]

Second, Jones attempts to argue that the pre-AEDPA standard of review should apply because the state court did not assess the merits of the sub-claims, citing to *Hill v.*

---

[1] Jones asserts that the "The Court of appeals disposed of the failings of appellate counsel by saying that the issue had been, 'raised by [direct] appellate counsel in some manner.'" *Traverse*, p. 40.  In fact, this was the argument made by the state in their brief in opposition, not by the court of appeals in its ruling. *Cf.*. J.A. Vol. XV, p. 189 *with* p. 191.  Respondent correctly cited the finding of the court of appeals above.

*Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005). However, the reason that the state courts did not assess the merits of the sub-claim is that they found that Jones was improperly attacking trial counsel's errors rather than those of appellate counsel. And with regard to *Hill*, the very language Jones cites demonstrates that the de novo standard only applies if the claim "has not been procedurally defaulted." *Id.* Jones's sub-claim is defaulted. Therefore, this court should not employ the de novo standard. As argued in Respondent's Return, the proper standard to apply is that set forth in the AEDPA. *Return*, pp. 44-49.

As to the merits of the claim, the Traverse is largely a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, p. 64.

### 3.    Prior convictions

Respondent asserted that this claim was procedurally defaulted. *Return*, p. 59. In post-conviction, the trial court found that the claim was barred by *res judicata* because it could have been raised on direct appeal. J.A. Vol. XII, p. 378. The court of appeals affirmed this finding. J.A. Vol. XIII, p. 422.

Jones first tries to attack the findings of the state courts by arguing that they improperly reviewed the claim "under a fundamentally unfair standard." Beyond the fact that Jones's argument is without merit (*see* Discussion in connection with fifth ground for relief, sub-claims C and E), this standard was enunciated in relation to the test for ineffective assistance of counsel. This test was never applied by the court of appeals to this sub-claim because they found that it was barred by *res judicata*.

Jones also argues that his claim is not procedurally defaulted because he "presented" it to the state courts. Unfortunately for Jones, merely presenting a claim to

the state courts is not sufficient to ensure federal habeas review. Ohio Courts have long relied upon the doctrine of *res judicata* to dismiss constitutional claims based upon the record that are raised for the first time in state post-conviction. *State v. Perry*, 10 Ohio St.2d 175 (1967). The United States Supreme Court has observed that Ohio's post-conviction statute does not allow petitioners to raise claims that could have been litigated before judgment or on direct appeal - such issues raised in post-conviction are procedurally defaulted on habeas corpus. *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982). The Sixth Circuit has recognized that the "*Perry* rule" is an independent and adequate ground upon which to procedurally bar consideration of habeas claims. *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1999), *cert. denied*, *Coyle v. Mapes*, 528 U.S. 946 (1999).

Jones also attempts to argue that the pre-AEDPA standard of review should apply because the state court did not assess the merits of the claim, citing to *Hill*. However, the reason that the state courts did not assess the merits of the claim is that they found it to be procedurally defaulted. As explained above, this finding was proper. And with regard to *Hill*, the very language Jones cites demonstrates that the de novo standard only applies if the claim "has not been procedurally defaulted." Jones's claim is defaulted. Therefore, this court should not employ a de novo standard. As argued in Respondent's Return, the proper standard to apply is that of AEDPA. *Return*, pp. 44-49.

As to the merits of Jones's argument, but for a few conclusory allegations the Traverse is a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 137-138.

### 4.    medical opinions about hand injury

Jones asserts that Respondent did not allege that Petitioner failed to present this claim to the Ohio state courts. This is incorrect. Jones cites to page 141 of Respondent's Return. Page 141 is not where Respondent addressed the procedural aspect of this claim. Respondent did assert that this claim was procedurally defaulted at pages 58-60 of her Return.

Jones attempts to evade this default by noting that the sub-claim was raised in his *Murnahan* application for reopening – and as a result, "this Court should review the procedural ground under the pre-AEDPA de novo standard." *Traverse* p. 48. Jones's argument fails for two reasons. First, Jones seems to be arguing that his claim is not procedurally defaulted because he "present[ed]" it to the state courts. Unfortunately for Jones, merely presenting a claim to the state courts is not sufficient to ensure federal habeas review. Here, the court of appeals (as affirmed by the Ohio Supreme Court) found that all but one of the claims alleged trial error – and thus was not properly raised in a App. R. 26(B) application for reopening. J.A. Vol. XV, p. 191.

Second, Jones attempts to argue that the pre-AEDPA standard of review should apply because the state court did not assess the merits of the sub-claims, citing to *Hill*. However, the reason that the state courts did not assess the merits of the sub-claim is that they found that Jones was improperly attacking trial counsel's errors rather than those of appellate counsel. And with regard to *Hill*, the very language Jones cites demonstrates that the de novo standard only applies if the claim "has not been procedurally defaulted." Jones's sub-claim is defaulted. Therefore, this court should not employ the de novo standard. As argued in Respondent's Return, the proper standard to apply is that of

AEDPA. *Return*, pp. 44-49.

As to the merits of Jones's claim, except for some general case-law citations tacked on to the end of the Merits section, Jones's Traverse is a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 65-67.

### 5.    bruises on victim's body

Respondent asserted that two parts of this sub-claim were procedurally defaulted: 1) the testimonies of Trimpe and Gerber; and 2) Detective Alderucci's testimony. *Return*, pp. 58-60, 67-68 (the merits of these claims are discussed under the page 64 heading of "The Procedurally Defaulted Arguments Also Lack Merit.")

Jones attempts to evade this default by noting that the sub-claim was raised in his *Murnahan* application for reopening – and as a result, "this Court should review the merits of the . . . second part under the pre-AEDPA de novo standard." *Traverse* p. 50. Jones's argument fails for two reasons. First, Jones seems to be arguing that his claim is not procedurally defaulted because he "present[ed]" it to the state courts. Unfortunately for Jones, merely presenting a claim to the state courts is not sufficient to ensure federal habeas review. Here, the court of appeals (as affirmed by the Ohio Supreme Court) found that all but one of the claims alleged trial error – and thus was not properly raised in a App. R. 26(B) application for reopening. J.A. Vol. XV, p. 191.

Second, Jones attempts to argue that the pre-AEDPA standard of review should apply because the state court did not assess the merits of the sub-claims, citing to *Hill*. However, the reason that the state courts did not assess the merits of the sub-claim is that they found that Jones was improperly attacking trial counsel's errors rather than those of

appellate counsel. And with regard to *Hill*, the very language Jones cites demonstrates that the de novo standard only applies if the claim "has not been procedurally defaulted." Jones's sub-claims are defaulted. Therefore, this court should not employ the de novo standard. As argued in Respondent's Return, the proper standard to apply is that of AEDPA. *Return*, pp. 44-49.

As to the merits of these two parts, as well as to the expert testimony from Stokes and Oliver (preserved for review – *see Return* p. 59), Jones's traverse is a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 60-64, 67-68.

### 6. searches/seizures

Abandoned

## B. Prosecutorial Misconduct

### 1. culpability phase

Respondent asserted that of Jones's eleven sub-claims of prosecutorial misconduct, four were preserved for review (7-11), while six (1-6) were defaulted. *Return*, p. 69. Jones casts the Government argument as "items 1-6 should be ignored because they were not objected to at the time of trial." *Traverse*, p. 53. This was not the Respondent's argument. Respondent argued that the claims were procedurally defaulted because they were never properly raised before the state appellate courts.

Jones attempts to evade this default by noting that the sub-claims were raised in his *Murnahan* application for reopening – and as a result, "this Court should review the procedural default under the pre-AEDPA de novo standard." *Traverse*, p. 54. Jones's argument fails for two reasons. First, Jones seems to be arguing that his claims are not

procedurally defaulted because he "present[ed]" them to the state courts. Unfortunately for Jones, merely presenting a claim to the state courts is not sufficient to ensure federal habeas review. Here, the court of appeals (as affirmed by the Ohio Supreme Court) found that all but one of the claims alleged trial error – and thus were not properly raised in a App. R. 26(B) application for reopening. J.A. Vol. XV, p. 191.

Second, Jones attempts to argue that the pre-AEDPA standard of review should apply because the state court did not assess the merits of the sub-claims, citing to *Hill*. However, the reason that the state courts did not assess the merits of the sub-claims is that they found that Jones was improperly attacking trial counsel's errors rather than those of appellate counsel. And with regard to *Hill*, the very language Jones cites demonstrates that the de novo standard only applies if the claim "has not been procedurally defaulted." Jones's sub-claims are defaulted. Therefore, this court should not employ the de novo standard. As argued in Respondent's Return, the proper standard to apply is that of AEDPA. *Return*, pp. 44-49.

But for an introductory paragraph with reference to the same guiding case law that Respondent cited in her Return, and some renumbering of sub-claims, Jones's traverse is <u>almost</u> a verbatim recitation of the <u>eleven</u> allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 69-82.

There is one significant difference, however, between Jones's Traverse and his Petition – he raises an <u>additional</u> claim in his Traverse. *Cf.* Traverse pp. 55-60 (twelve total claims), *with Petition* pp. 31-34 and *Return*, p. 69 ("Jones raises eleven sub-claims"). The additional claim Jones raises is his first claim: "The Government relied on testimony about the pendant that it knew was incorrect." *Traverse*, p. 55. The Court

should not consider this claim for two reasons.  First, it was a claim of record that could have been raised on direct appeal to the Ohio state courts, as evidenced by the fact that Jones citation to the prosecutor's argument is from the trial transcript.  Jones's failure to raise the claim to the Ohio state courts bars it from current consideration.  The failure to fairly present issues on direct appeal to the Ohio Supreme Court bars habeas consideration of the claim absent a showing of cause and prejudice.  *Leroy v. Marshall*, 757 F.2d 94, 97-99 (6th Cir. 1983), *cert. denied*, 474 U.S. 831 (1985).  Jones fails to establish cause and prejudice.

Second, an argument first raised in a Traverse rather than a petition is not properly before the district court.  *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). *See also United States v. Barrett*, 178 F.3d 34, 45 (1st Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

As to the merits of this additional claim, see the discussion in connection with claim three (C, 1).

### 2.    mitigation phase

Jones's Traverse is a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ.  *Return*, pp. 82-83.

### 3.    Exculpatory and Impeachment Evidence

#### A.    Blue Ash Police Department Records

#### B.    Criminal Acts and Suspicious Employees at Hotel

As to the merits of sub-claims A & B, except for a conclusory paragraph tacked on the end of sub-claim B, the Traverse is a verbatim recitation of the allegations raised

in the Petition.  Respondent relies upon the arguments raised in her Return of Writ.

*Return*, pp. 84-92.[2]

### C.    Other Materials

As noted in the Return, a *Brady* violation is only established when the withheld

information does not "result[ ] in a verdict worthy of confidence."  *Kyles v. Whitley*, 514

U.S. 419, 434 (1995).

In this case, the prosecutor's office was aware that capital cases receive more

scrutiny at both the trial and appellate level.  *Piepmeier Deposition*, p. 54, lines 7-17.  As

a result, the prosecution erred on the side of caution and provided evidence to the defense

when there was a "close call" as to whether it should be turned over because it was

favorable.  *Id*., lines 18-25.

### 1.    pendant

Jones claims that the victim's pendant, later discovered in Jones's possession, was

initially described differently by various persons, and that these descriptions were not

turned over to the defense attorneys.   In fact, the defense attorneys were aware of the

discrepancy in the description of the pendant and the actual pendant discovered.  *Sanks*

*deposition*, p. 10, lines 7-14; pp. 50-51;  *Adams deposition*, pp. 63-64.  Also prior to trial,

defense counsel were given the conflicting descriptions of the pendant - in the affidavit

for the search warrant and the return of the search warrant - as well as access to the

pendant itself.  *Adams deposition*, pp. 64-65.  Despite knowing about the discrepancy,

counsel can't remember if they did any investigation.  Adams deposition, pp. 65-67.  This

may be due to the fact that, as lead defense counsel Sanks conceded, it was

---

[2] Unlike with his other claims throughout the Traverse, Jones does not argue that this Court should review the claim using a *de novo* pre-AEDPA standard.

11

understandable that errors were made in the description of the pendant.  *Sanks depo*sition, p. 55, lines 17-23.[3]  Regardless, the prosecution can not be faulted for any inaction on the part of Jones's counsel.

Specific to Val Nathan, while he initially did not think the recovered pendant was the one belonging to his mother, after reviewing some family photos he changed his mind – to the point that he was certain the pendant was hers.  Prosecutor's Files, Vol. III, pp. 1310-1311; *Sanks deposition*, pp. 49-50.

Finally, and most importantly, the state put into evidence at trial the pendant and pictures of the victim wearing the pendant – both an original photo and an enlargement.  *Piepmeier deposition*, pp. 20-21.[4]  Thus, the jury was able to judge for itself whether the pendant recovered from Jones's vehicle was indeed the victim's.  Tr. Vol. XIV, p. 1036-1037; XV, pp. 1219-1222.

### 2.    complaints about guests and intruders

Jones premises his suppression of exculpatory evidence claim on such things as a transient man standing outside the hotel and opening the lobby door for a guest (*Blue Ash Police Department File*, p. 1163), a person who the interviewee "assumed [ ] was a maid" opening a room with a key (*Id*. pp. 1165-1166), "out of place" persons (in the eyes of the interviewee) being spotted the night before the killing in the hotel (*Id*. pp. 1171-72, 1175), uncertainty amongst the maid staff about whether a particular room had been cleaned the day before the killing (*Id*. p. 1845), and desire amongst the guests for better security at the hotel (*Id*. p. 1853-1854).  Several of the incidents appear to involve hotel workers not adequately identifying themselves before attempting to enter to perform

---

[3] Sanks also conceded that no witness testified at trial that the "silver" pendant was in fact silver, and that white gold can actually have the appearance of silver.  *Sanks deposition*, pp.45-48.

[4] Defense counsel were given copies of the photos pretrial.  *Id*.

work in a guest room.[5]  Others may point to a poorly-run hotel (telephones in the room out of order, water being turned off, front desk workers audibly voicing a guest's room number – *Id*. p. 1846).  Still others are merely reflections of the subjective judgment of the respondent – e.g., while some guests reported seeing "out of place persons," other guests reported not seeing anyone suspicious the evening before the killing.  *Blue Ash Police Department File*, pp. 1106-1107.  Regardless, the statements taken together do not even point to "other criminal activity that night" (*Traverse*, p. 80) or "a gang operating in the hotel," (*Id*. p. 82), let alone undermine confidence in the outcome of the trial.

### 3.    potential witnesses

#### Ryan Norman

In the interview notes of Ryan Norman, it clearly states that in terms of his employment at the hotel, the day of the killing was Norman's first on the job. *Prosecutor's File*, p. 1711.  *See* also *Id*., p. 1666  ("That day was Ryan Norman's first day.")  This belies Jones's assertion that "As an employee, he (Norman) knew Petitioner and would not have confused him with someone else."  *Traverse* p. 82.  Norman's statements do not have the exculpatory value that Jones claims they do and do not undermine confidence in the outcome of the trial.

#### Demetrius Williams

Jones also asserts that Demetrius Williams "knew Petitioner and would not confuse him with someone else."  *Traverse* p. 83.  However, in his statement, Williams did not state that he knew Jones, and Jones offers no evidence of such.  Moreover, it is just as likely that due to the fact that the hotel employed many persons, Williams did not

---

[5] Though, at least one guest mistakenly tried to enter a room that was not hers. *Blue Ash Police Department File*, p. 1811.

know Jones.

Perhaps more importantly, another document in the prosecutor's files severely undercuts the claim that Williams would have provided exculpatory information for Jones. On 5/13/95, Williams was interviewed by authorities. He stated, in regard to Jones's claim that he (Jones) was working the "comp breakfast" shortly before the killing, "Butch helped out in Comp. Breakfast for about 5 min. – no longer" and he "does not know why Butch would say he was in comp. breakfast when he wasn't." *Prosecutor's File*, p. 1666. Williams's statements do not have the exculpatory value that Jones claims they do and do not undermine confidence in the outcome of the trial.

<u>Robyn Williams</u>

As to the statement from Robyn Williams, the fact that she saw another person at or near the time of the victim's death is hardly exculpatory, as the killing occurred in a hotel where there were many guests. Even assuming that the statement was not turned over to the defense, it does not undermine confidence in the outcome of the trial.

<u>Polygraph results</u>

As to the fact that hotel employees had been subjected to polygraph examinations, even assuming that this information was not turned over, it does not undermine confidence in the outcome of the trial. Jones's trial counsel may consider this information to be *Brady* material, but of course it is not for defense counsel to analyze the merits of the claim. What defense counsel fails to note is that polygraph results are inadmissible at an Ohio trial. *See State* v. *Levert* 58 Ohio St. 2d 213 (1979) (the trial court can not admit the results of a polygraph test into evidence simply at an accused's request). As such, the failure to turn them over does not constitute a *Brady* violation.

14

*See Wood v. Bartholomew*, 516 U.S. 1, 6, (1995) (the prosecution's failure to reveal the results of polygraph tests did not constitute a *Brady* violation because such evidence was not admissible under state law).

<u>Compilation</u>

The compilation was merely a summary generated from the interviews with the hotel employees. The defense was free to generate its own summary, because as the trial prosecutor made clear, there was a meeting set up where the defense counsel "could go out to the hotel . . . and then talk to anybody they wanted, and look at any records the hotel had." *Piepmeir deposition*, p. 49, lines 8-14. Defense counsel agreed that such a meeting took place. *Adams deposition*, pp. 69-70. The state did not suppress this information.

**4.    hepatitis**

As Respondent asserted in her Return, this sub-claim is defaulted because it was never presented to the state courts. *Return*, p. 84. A petitioner's failure to raise a claim in state court is a procedural default, and there can be no requirement of a "plain statement" of default by the state courts because the bypass deprives the state courts of the opportunity. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, (1991) ("This rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims. *See Harris v. Reed*, 489

U.S. 255, 269-270 (1989) (O'Connor, J., concurring); *Teague v. Lane*, 489 U.S. 288, 297-298 (1989)").

Jones tries to excuse his default on the basis that the coroner's report was "turned over only in this proceeding." *Traverse*, p. 76. Yet, prior to any discovery occurring in this case, the *Petition* was filed on 11/26/01. And in the Petition, Jones raises the same claim of error as to the withholding of the coroner's report. *Petition*, p. 44. So, in fact, Jones has not demonstrated cause for failing to raise the matter earlier.[6]

As to the merits of the sub-claim, the report from the Microbiology Reference Laboratory (MRL), does not list a patient name – so it is unclear that the sample was taken from Jones. However, even assuming that the sample was Jones's, it is not exculpatory. The murder occurred on 9/3/94 and the specimen was taken on 9/15/94. The report clearly states that hepatitis "becomes detectable after the incubation state of the virus which generally lasts 4-12 weeks after initial exposure." *Petitioner's Exhibit 2-A*. If the hepatitis was transferred from the victim to Jones on 9/3/94, the fact that Jones didn't yet test positive for hepatitis twelve days later does not prove Jones's innocence, since the incubation period had not yet ended (to allow for detection of the hepatitis).

Of course, this assumes that the hepatitis would or should have transferred from the victim to Jones. Jones offers no qualified affirmative evidence on this point. At best, trial attorney Sanks stated in his deposition that "Hepatitis is, to my knowledge, is fairly virulent. It can be transferred through bodily fluids and blood being – blood and saliva both being bodily fluids, I would have checked into that more, checked it out more."

---

[6] In his Petition, Jones asserts that he did not come into possession of the documents until the conclusion of state court litigation. Even assuming this to be true (though, Jones offers no evidence in support), Jones does not explain why he did not seek to file a successive post-conviction petition in state court. His failure of action lends further support for the position that his claim should now be held procedurally defaulted.

*Sanks Deposition*., pp. 30-31. Sanks is not an expert on this issue, and his lay opinion should not be sufficient to prove Jones's claim meritorious.

### 4.    Ineffective Assistance of Counsel – Experts

In the Procedural Default section of his brief, Jones asserts that "The Government makes no allegations of failure to present the claim in state court." *Traverse*, p. 85. This is true. However, Respondent did assert that the trial courts, in post-conviction, found the claim to be barred by *res judicata* for failing to raise the claim on direct appeal. *Return*, p. 141. Jones fails to address this argument. Though he does not expressly allege such, Respondent understands Jones's argument to be that his claim is not procedurally defaulted because he "present[ed]" it to the state courts. Unfortunately for Jones, merely presenting a claim to the state courts is not sufficient to ensure federal habeas review. Ohio Courts have long relied upon the doctrine of *res judicata* to dismiss constitutional claims based upon the record that are raised for the first time in state post-conviction. *State v. Perry*, 10 Ohio St.2d 175 (1967). The United States Supreme Court has observed that Ohio's post-conviction statute does not allow petitioners to raise claims that could have been litigated before judgment or on direct appeal - such issues raised in post-conviction are procedurally defaulted on habeas corpus. *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982). The Sixth Circuit has recognized that the "*Perry* rule" is an independent and adequate ground upon which to procedurally bar consideration of habeas claims. *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1999), *cert. denied*, *Coyle v. Mapes*, 528 U.S. 946 (1999).

Jones also attempts to argue that the pre-AEDPA standard of review should apply

because the state court did not assess the merits of the claim, citing to *Hill*.  However, the reason that the state courts did not assess the merits of the claim is that they found it to be procedurally defaulted.  As explained above, this finding was proper.  And with regard to *Hill*, the very language Jones cites demonstrates that the de novo standard only applies if the claim "has not been procedurally defaulted."  Jones's claim is defaulted.  Therefore, this court should not employ a de novo standard.  As argued in Respondent's Return, the proper standard to apply is that of AEDPA.  *Return*, pp. 44-49.

As to the merits of the claim, the Traverse is a verbatim recitation of the allegations raised in the Petition.  Respondent relies upon the arguments raised in her Return of Writ.  *Return*, pp.141-143.  *See also discussion in connection with claim 3*.

**5.      Ineffective Assistance of Counsel – Exculpatory/Impeachment Information**

**A.      Medical testimony**

In the Procedural Default section of his brief, Jones asserts that "The Government makes no allegations of failure to present the claim in state court."  *Traverse*, p. 97.  This is true.  However, Respondent did assert that the trial courts, in post-conviction, found the claim to be barred by *res judicata* because the claim was not raised on direct appeal. *Return*, p. 141.

Jones argues that "The United States Supreme Court has held the fundamentally-unfair standard to be an unreasonable interpretation of United States Supreme Court law."  *Traverse*, pp. 96-97.  However, the court of appeals enunciated this standard in relation to the test for ineffective assistance of counsel.  This test was never applied by the court of appeals because they found that the claim was barred by *res judicata*.  J.A. Vol. XIII, p. 419.

Even if this Court finds that the court of appeals' procedural bar was improper, Jones's citation to *Williams v. Taylor*, 529 U.S. 362 (2000) does not support his argument. *Williams* did not reject the "fundamentally unfair" standard. Indeed, *Williams* cited it with approval. *See Williams*, 529 U.S. at 393 ("the 'prejudice' component of the *Strickland* test does not implicate these concerns. It focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.") (citation omitted). In *Williams*, the error lie with the fact that the Virginia Supreme Court applied the fundamental unfairness test after finding counsel to be ineffective and the outcome of the proceeding affected – i.e., the fundamental unfairness test was applied after both prongs of *Strickland* had been met. *Id*. at 393-395. Here, the court of appeals did not make this same mistake. It applied only the fundamental unfairness test – a proper analysis. *See Neumen v. Rivers*, 125 F.3d 315, 321 (6th Cir. 1997), *citing Lockhart v. Fretwell*, 506 U.S. 364, 369 ("prejudice to defendant from ineffective assistance must have made trial **fundamentally unfair** or unreliable") (emphasis added). As a result, this Court should not apply the pre-AEDPA de novo standard of review – as Jones's urges. As argued in Respondent's Return, the proper standard to apply is that of AEDPA. *Return*, pp. 44-49.

As to the merits of Jones's claim, the Traverse is a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 130-131, 141.

## B.    History of Crimes at Hotel

While the state courts in post-conviction did not impose procedural bars on sub-claim B, this Court should not review the claim using a *de novo* pre-AEDPA standard –

as Jones urges.  Jones cites *Williams* for the proposition that "The United States Supreme Court has held the fundamentally-unfair standard to be an unreasonable interpretation of United States Supreme Court law."  Beyond the fact that Jones's citation to *Williams* is without merit (*see* 5. A., above), this "fundamentally unfair" standard, taken from *State v. Combs*, 100 Ohio App. 3d 90, 101 (1995) and *Lockhart v. Fretwell*, 506 U.S. 364 (1993) was cited in connection with the ineffective assistance of counsel claims discussed at the end of the court of appeals opinion.  *See* J.A. Vol. XIII, pp. 417-429.  While sub-claim B was an ineffective assistance of counsel allegation, the court of appeals discussed it in connection with Jones's other claims of withholding exculpatory evidence.  *See* J.A. Vol. XIII,  pp. 409-411.  The court analyzed the claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and asked whether the "state's suppression of evidence 'undermines confidence in the outcome of the trial,'" (J.A. Vol. XIII, p. 411) not under the "fundamentally unfair" standard.

As to the merits of the Jones's claim, the Traverse is a verbatim recitation of the allegations raised in the Petition.  Respondent relies upon the arguments raised in her Return of Writ.  *Return*, pp. 130-131, 138.  *See also* discussion in connection with claim three (C, 2).

C.      **Pair of Shoes**

E.      **Fiber Found in Jones's Hand Wound**

While the state court of appeals did not impose procedural bars on sub-claims C and E in post-conviction, this Court should not review the claim using a *de novo* pre-AEDPA standard – as Jones urges.[7]  Jones cites *Williams* for the proposition that "The

---

[7] In her *Return*, Respondent asserted that sub-claim C was raised in Jones's post-conviction petition as his sixteenth ground for relief.  *Return*, p. 139.  Upon further review, Respondent has determined that the first

United States Supreme Court has held the fundamentally-unfair standard to be an unreasonable interpretation of United States Supreme Court law." *Williams* makes no such holding. Indeed, *Williams* cited with approval the "fundamentally unfair" standard. *See Williams*, 529 U.S. at 393 ("the 'prejudice' component of the *Strickland* test does not implicate these concerns. It focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.") (citation omitted). In *Williams*, the error lie with the fact that the Virginia Supreme Court applied the fundamental unfairness test after finding counsel to be ineffective and the outcome of the proceeding affected – i.e., the fundamental unfairness test was applied after both prongs of *Strickland* had been met. *Id*. at 393-395. Here, the court of appeals did not make this same mistake. It applied only the fundamental unfairness test – a proper analysis. *See Neumen v. Rivers*, 125 F.3d 315, 321 (6th Cir. 1997), *citing Lockhart v. Fretwell*, 506 U.S. 364, 369 ("prejudice to defendant from ineffective assistance must have made trial **fundamentally unfair** or unreliable") (emphasis added).

As to the merits of Jones's claim, for sub-claim C, except for an introductory paragraph setting forth the holdings of the state courts in post-conviction, the Traverse is a verbatim recitation of the allegations raised in the Petition. For sub-claim E, the Traverse is a verbatim recitation of the allegations raised in the Petition. For both sub-claims, Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 130-131, 139-140, 142.

---

part of the claim (re: stipulation) was raised as Jones's sixteenth ground for relief, but the second part of the claim (re: investigation) was raised as Jones's thirty-second ground for relief.

### D.    Alternate Suspect Theory

### F.    Opportunity for Ongoing Investigation

Sub-claims D and F were raised as part of claim twenty (#8 and #7, respectively) in Jones's post-conviction petition.  J.A. Vol. V, p. 53.  As Jones concedes, the trial court found the claim barred by *res judicata* because it could have been raised on direct appeal. Vol. XIII, p. 381.  The court of appeals found that "the majority of the examples raised in this claim are subject to the bar of *res judicata*."  Vol. XIII, p. 426.  This Court should uphold the procedural bar applied by the Ohio state courts because these matters could have been raised on direct appeal due to the fact that they were based on a matter of record.  *See e.g. Petition*, pp. 57-58 and *Traverse* p. 104 (argument based on events that occurred at trial, *citing* Tr. p. 1684); *Petition* pp. 58-59 and *Traverse* pp. 107-108 (argument based on events that occurred at trial, *citing* Tr. pp. 871, 1006, 1042, 1056, 1071, 1112, 1151, 1321, 1361, 1407).

Jones argues that "The United States Supreme Court has held the fundamentally-unfair standard to be an unreasonable interpretation of United States Supreme Court law." *Traverse*, pp. 103, 107.  However, the court of appeals enunciated this standard in relation to the test for ineffective assistance of counsel.  This test was never applied by the court of appeals because they found that the claim was barred by *res judicata*.

Even if this Court finds that the court of appeals did not enforce a procedural bar, Jones's citation to *Williams* does not support his argument.  *Williams* did not reject the "fundamentally unfair" standard.  Indeed, *Williams* cited it with approval.  *See Williams*, 529 U.S. at 393 ("the 'prejudice' component of the *Strickland* test does not implicate these concerns. It focuses on the question whether counsel's deficient performance renders the

result of the trial unreliable or the proceeding fundamentally unfair.") (citation omitted). In *Williams*, the error lie with the fact that the Virginia Supreme Court applied the fundamental unfairness test after finding counsel to be ineffective and the outcome of the proceeding affected – i.e., the fundamental unfairness test was applied after both prongs of *Strickland* had been met. *Id*. at 393-395. Here, the court of appeals did not make this same mistake. It applied only the fundamental unfairness test – a proper analysis. *See Neumen v. Rivers*, 125 F.3d 315, 321 (6th Cir. 1997), *citing Lockhart v. Fretwell*, 506 U.S. 364, 369 ("prejudice to defendant from ineffective assistance must have made trial **fundamentally unfair** or unreliable") (emphasis added). As a result, this Court should not apply the pre-AEDPA de novo standard of review – as Jones's urges. As argued in Respondent's Return, the proper standard to apply is that of AEDPA. *Return*, pp. 44-49.

As to the merits of Jones's argument, the Traverse is a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 130-131, 138-139; 144.

**6.      Defense Counsel Abdicated Role**

Abandoned

**7.      Sentencing Hearing Violations**

**A.      Ineffective Assistance of Counsel – Failure to Investigate**

Abandoned

**B.      Court's Failure to Instruct on Residual Doubt**

But for a single-sentence case citation tacked on to the end of the claim, the Traverse is a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 101-102, 104-106.

8.    **Grand Jury Selection Flaws**

    A.    **Unconstitutional Composition of Grand Jury**

    B.    **Unconstitutional Selection of Grand Jury**

    C.    **Unconstitutional Composition of Jury (Venire and Empanelled)**

    D.    **Prosecutor's Improper Use of Preemptory Challenges**

In post-conviction, the trial court found these sub-claims barred by *res judicata* because the matters could have been raised on direct appeal. J.A. Vol. XII, p. 381. The court of appeals affirmed this finding. J.A. Vol. XIII, p. 426. In her Return of Writ, Respondent argued that these sub-claims were procedurally defaulted. *Return*, pp. 94-95.

In the "Procedural Default" sections for all of these sub-claims, Jones's notes the Government's procedural default argument, and responds that the default is "excused by the inadequacy of counsel." Jones fails to explain how this blanket assertion overcomes the default recognized by the state courts.

Jones also attempts to argue that the pre-AEDPA standard of review should apply because the state court did not assess the merits of the sub-claims, citing to *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005). However, the reason that the state courts did not assess the merits of the sub-claims is that they found them to be procedurally defaulted. As explained above, this finding was proper. And with regard to *Hill*, the very language Jones cites demonstrates that the de novo standard only applies if the claim "has not been procedurally defaulted." Jones's sub-claims are defaulted. Therefore, this court should not employ the de novo standard. As argued in Respondent's Return, the proper standard to apply is that of AEDPA. *Return*, pp. 44-49.

For these four sub-claims, the Merits section of the Traverse is mostly a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 95-98.

E.    **Ineffective Assistance of Counsel – Failure to Conduct Effective Voir Dire and Challenge Biased Juror**

The Merits section of Jones's Traverse is essentially a verbatim recitation of his Petition. To that end, Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 134-136.

Jones does tack on the 2004 and 1989 ABA Standards for Counsel in a Death Penalty Case as a lead-in to his argument. However, as the Sixth Circuit has recognized, the ABA guidelines place no further requirements upon defense counsel than imposed by the seminal case on ineffective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hamblin v. Mitchell*, 345 F.3d 482, 487 (6th Cir. 2006) ("New ABA Guidelines adopted in 2003 simply explain in greater detail than the 1989 Guidelines the obligations of counsel to investigate mitigating evidence. The 2003 ABA Guidelines do not depart in principle or concept from *Strickland*.")

F.    **Ineffective Assistance of Counsel – Failure to Challenge Grand Jury and Jury Matters**

In post-conviction, the trial court found the claim barred by *res judicata* because the matters could have been raised on direct appeal. J.A. Vol. XII, p. 381. The court of appeals affirmed this finding. J.A. Vol. XIII, p. 426. In her Return of Writ, Respondent argued that this claim was procedurally defaulted. *Return*, p. 136. Jones's arguments as to procedural default and standard of review suffer the same defects as noted above in connection with sub-claims A-F.

The Merits section of the Traverse is a verbatim recitation of the allegations raised in the Petition. Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 136-137.

**9.    Erroneous Jury Instructions**

    **A.    Sub-claims 1-10, 13 and 15**

Abandoned

    **B.    Sub-claims 11, 12 and 14**

Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 101-106.

**10.    Appellate Ineffective Assistance of Counsel**

    **A.    Sub-claims 10, 11, 12 and 13**

Abandoned

    **B.    Sub-claims 1-9**

Apart from a new introductory paragraph and a few stylistic changes, the Traverse is a verbatim recitation of the allegations raised in the Petition. Jones fails to address Respondent's procedural default argument that while Jones raised these claims in his *Murnahan* appeal, the court of appeals (as affirmed by the Ohio Supreme Court) found that all but one of the claims alleged trial error – and thus was not properly raised in a App. R. 26(B) application for reopening. J.A. Vol. XI, p. 191. As to the merits of the claim, Respondent relies upon the arguments raised in her Return of Writ. *Return*, pp. 148-151.

11.    **Actual Innocence**

The Traverse is a verbatim recitation of the allegations raised in the Petition. Jones wholly fails to address the procedural default asserted by Respondent in her Return of Writ. *Return* p. 116. As to the merits of the claim, Respondent primarily relies upon the arguments raised in her Return of Writ. *Return*, pp. 117-119. *See also discussion in connection with claim three*.

12.    **Proportionality Review**

Abandoned

13.    **Death Penalty Unconstitutional**

Abandoned

14.    **Cumulative Error**

Respondent primarily relies upon the argument raised in her Return of Writ that because all of Jones's underlying claims are without merit, Jones's claim of cumulative error – premised upon those same underlying claims – must also be without merit. *Return*, p. 152. Beyond this, in *Moore v. Parker*, 425 F.3d 250 (6th Cir. 2005), a capital case, the Sixth Circuit held that "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Id*. at 256 (affirming *Lorraine* and repudiating post-AEDPA cases to the contrary). *Moore* bars the granting of relief on this claim.

III.    **CONCLUSION**

For the foregoing reasons, including those set forth in the Return of Writ, Respondent respectfully requests this Court to dismiss Jones's petition for a writ of habeas corpus.

Respectfully submitted,

JIM PETRO
Ohio Attorney General

s/Matthew C. Hellman
MATTHEW C. HELLMAN* (0071628)
    *Trial Counsel*
Deputy Attorney General
HEATHER L. GOSSELIN (0072467)
Senior Deputy Attorney General

Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; Fax (614) 728-8600
Emails:  mhellman@ag.state.oh.us
        hgosselin@ag.state.oh.us

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Reply to Traverse* was delivered to counsel for petitioner this 3rd day of October 2006, via the court's electronic filing system.

David Bodiker, Esq.
Ohio Public Defender's Office
8 East Long Street, 11th Floor
Columbus, Ohio 43215
Email: bodiker@opd.state.oh.us

Michael L. Monta, Esq.
Monta & Monta
3625 Old Salem Road
Dayton, Ohio 45415
Email: Zbeard7@aol.com

Gary W. Crim
Attorney at Law
943 Manhattan Avenue
Dayton, Ohio 45406
Email: gwcrim@ameritech.net

s/Matthew C. Hellman
MATTHEW C. HELLMAN* (0071628)