# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**ELWOOD H. JONES**

        Petitioner,                         Case No. 01-CV-564

        v.                              JUDGE ROSE

**MARGARET A. BAGLEY, Warden**      MAGISTRATE JUDGE MERZ

        Respondent.

---

## RESPONDENT'S OPPOSITION TO PEITIONER'S MOTION FOR EVIDENTIARY HEARING

---

Respondent, Margaret A. Bagley, by and through counsel, respectfully requests that this Honorable Court deny Jones's motion as described above.  The reasons for this request are fully set forth in the attached memorandum.

        Respectfully submitted,

        **JIM PETRO**
        Attorney General

        MATTHEW C. HELLMAN* (0071628)
            *Trial Counsel*
        Deputy Attorney General
        HEATHER L. GOSSELIN (0072467)
        Senior Deputy Attorney General
        Capital Crimes Section
        30 East Broad Street, 23rd Floor
        Columbus, OH 43215
        (614) 728-7055; Fax (614) 728-8600
        Emails:  mhellman@ag.state.oh.us
                hgosselin@ag.state.oh.us

## STATEMENT OF THE CASE

The Petitioner, Elwood Jones (hereinafter "Jones"), is under a sentence of death adjudged by an Ohio court.  On November 26, 2001, Jones filed a petition for a writ of habeas corpus.   On January 7, 2002, Respondent Margaret Bagley (hereinafter "Respondent" or "the Warden), filer her answer (Return of Writ) to the petition.   On March 1, 2002, Jones filed a motion for discovery.  On June 24, 2002, the Magistrate Judge granted in part and denied in part Jones's motion for discovery.  On August 23, 2002, Jones filed his second motion for discovery.  On February 3, 2003 the Magistrate Judge granted in part and denied in part Jones's second motion for discovery.  On August 31, 2005, Jones filed a third motion for discovery.  On October 6, 2005, the Magistrate Judge granted the third motion for discovery.  On September 6, 2006, Jones filed a reply (Traverse) to the Warden's answer.  On October 03, 2006, the Warden filed her reply to Jones's Traverse.  On October 16, 2006, Jones filed a motion for an evidentiary hearing. The Warden now opposes Jones's motion.

## ARGUMENT

### I.    STANDARD

In *Townsend v. Sain*, 372 U.S. 293, 312, 313 (1963), the United States Supreme Court affirmed that a federal court in habeas corpus has the power to inquire into allegations of constitutional error, or alleged violations of federal law, in state court proceedings.   At issue in *Townsend* was the authority of a federal court to order an evidentiary hearing in federal habeas corpus.  The Supreme Court determined that where allegations of constitutional error have been made, and the facts underlying any particular

allegation are in dispute, the federal court has the power to order a hearing on the facts. *Id*. at 312. Further, the Court determined that exercise of such power is mandatory under six specified circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Id*. at 313.

In *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), the Supreme Court limited significantly the authority of the federal court in habeas corpus to order an evidentiary hearing on behalf of the petitioner. *Townsend* concerned the circumstances under which a federal habeas court must order an evidentiary hearing. *Keeney* concerned a circumstance under which the federal court must not order a hearing, i.e., where the habeas corpus petitioner negligently failed to develop the facts in state court. In the latter circumstance, the Supreme Court required the petitioner to satisfy the same "cause and prejudice" standard applicable to state court procedural defaults. Although framed in terms of the petitioner's dereliction, *Keeney* unquestionably turned on the basic issue of federal versus state power. Indeed, *Keeney* expressly recognized that the interests of comity and federalism which counseled against overlooking the petitioner's failure to comply with state procedural rules also counseled against overlooking the petitioner's failure to develop the factual basis of a claim. In both situations, the Supreme Court

3

recognized limitations on the authority of the federal courts in habeas corpus to overturn the findings and decisions of the state courts.

With the passage of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. Section 2254(e) Congress further restricted the authority of the federal courts in habeas corpus to overturn state court findings and judgments:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --
>
> > (A)    the claim relies on--
> >
> > > (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was presently unavailable; or,
> > >
> > > (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and,
> >
> > (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

### A.    Presupposition of Lack of Due Diligence

In *Williams v. Taylor*, 529 U.S. 420 (2000), the Supreme Court addressed the construction of 28 U.S.C. Section 2254's limitation on evidentiary hearings. The Supreme Court ultimately held that the statutory limitation presupposes a lack of due diligence on the part of the habeas corpus petitioner in failing to develop the factual basis of a claim in state court. *Id.*, at 436-437. Key to the holding is the Supreme Court's reliance on its prior decision in *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). *Keeney* held that a habeas corpus petitioner who "fails" to develop with due diligence the factual basis of a claim in state court must satisfy a "cause and prejudice" test to obtain factual development of the claim in federal habeas corpus. The Supreme Court reasoned that

Congress intended Section 2254(e)(2)'s opening clause to codify *Keeney's* due diligence standard.  *Williams v. Taylor*, 529 U.S. at 433-434.

> **B.** **Evidentiary Hearings on Procedurally Defaulted Claims are Improper**

Additionally, in *Williams v. Taylor*, the Supreme Court noted that *Keeney* is based on the recognition that there is no reason "to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim." *Williams v. Taylor, supra.*  Accordingly, the Supreme Court has required that a federal court, in adjudicating a defaulted claim and in granting relief based on "new" evidence, " must first determine whether [the petitioner's] default ... could be excused by a showing of cause and prejudice or by the need to avoid a miscarriage of justice." *Bradshaw v. Richey*, 546 U.S. 74, 126 S. Ct at 605 (2005); *Holland v. Jackson*, 542 U.S. 649, 124 S. Ct. at 2738 (2004) (lower court erred in granting relief based on new evidence, notwithstanding state court's independent ground for decision that petitioner failed to explain delay in presenting evidence to the state courts).

The Supreme Court's decisions once again are consistent with prior holdings by the circuit courts that discovery and evidentiary hearings should not be permitted to develop facts in support of procedurally defaulted claims.  *See Hutchison v. Bell*, 303 F.3d 720, 747 (6th Cir. 2002) ("Where, as here, the failure to develop the factual basis of a constitutional claim is attributable to a procedural default, the determination of whether petitioner has been diligent in developing his claim parallels the issue of whether he can show cause for his default."); *Martin v. Mitchell*, 280 F.3d 594, 615 (6th Cir. 2002) (Section 2254(e)(2) barred evidentiary hearing on defaulted ineffective assistance of counsel claim);  *Royal v. Taylor*, 188 F.3d 239, 249 (4th Cir. 1999) (district court properly

denied discovery where petitioner's claim procedurally defaulted, and petitioner failed to show "cause and prejudice" or a fundamental miscarriage of justice); *Bannister v. Delo*, 100 F.3d 610, 625, n. 15 (8th Cir. 1996).

Ohio Courts have long relied upon the doctrine of *res judicata* to dismiss constitutional claims based upon the record that are raised for the first time in state post-conviction. *State v. Perry*, 10 Ohio St.2d 175 (1967). The United States Supreme Court has observed that Ohio's post-conviction statute does not allow petitioners to raise claims that could have been litigated before judgment or on direct appeal – such issues raised in post conviction are procedural defaulted on habeas corpus. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). The Sixth Circuit has recognized that the "*Perry* rule" is an independent and adequate group upon which to procedurally bar consideration of habeas claims. *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001); *Byrd* v. *Collins*, 209 F.3d 486, 521 (6th Cir. 2000); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1999), *cert. denied*, *Coyle v. Mapes*, 528 U.S. 946 (1999).

II.     **Claims Two and Four of Jones's Motion for Evidentiary Hearing are Procedurally Defaulted and are Barred from a Hearing Under Section 2254(e)(2)(A)(ii) for Want of Due Diligence**

A.      **Claim Two**

Sub-claim Two address's Jones's contention that he is entitled to an evidentiary hearing on the grounds that his trial counsel failed to adequately prepared to confront state expert, Dr. McDonough, and prepare defense expert, Dr. Solomkin. These claims were asserted in claims four and five of Jones's petition. Jones also presented this claim in grounds seven and thirty-five in post conviction. Both the trial court and the first district court barred this claim as *res judicata*. In addressing this specific claim the first district succinctly held,

> The evidence presented [in post-conviction] either was available at the time of trial, was cumulative to what was presented at trial, failed to meet the minimum level of cogency, failed to advance his claims or failed to show that Jones could not have raised his claim on direct appeal. Thus, Jones's claims are barred by *res judicata*.

*State v. Jones*, 2000 Ohio App. LEXIS 6197 at *28 (1st Dist. Dec. 29, 2000).

As such, Jones should not be permitted to raise this claim in habeas corpus as it is procedurally defaulted. *See Engle*, 456 U.S. at 125, n.28; *Coleman*, 244 F.3d at 538; *Byrd*, 209 F.3d at 521; *Mapes*, 171 F.3d at 421. Moreover, it is well settled law that inherent in failing to present claim properly on direct appeal is Jones's failure to exercise "due diligence" as required by title 28 section 2254(A)(ii). *See*, 28 U.S.C. § 2254 (1996); *Hutchison*, 303 F.3d at 747; *Martin*, 280 F.3d at 615; *Royal*, 188 F.3d at 249; *Bannister*, 100 F.3d at 625, n. 15. Therefore, according to overwhelming jurisprudential support, Jones's motion for an evidentiary hearing on sub-claim two should be denied.

### Jones's ineffective counsel claim as it pertains to experts Dr. McDonough and Dr. Solomkin does not serve as cause and prejudice.

The benchmark for judging a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as a fair and just result. *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* affords trial counsel deference to decide trial strategy. *Strickland*, 466 U.S. 688.

A habeas petitioner, claiming ineffective counsel, must satisfy both prongs of a two-part test. In *Strickland*, the United States Supreme Court held that the petitioner must first demonstrate that counsel's representation was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687. Secondly, the petitioner

must show that such performance prejudiced the defendant. *Id*. This two-prong test applies to trial and appellate counsel.

Deficient performance occurs when counsel's representation falls below an objective standard of reasonableness. *Id*. In applying the performance prong, the Court must indulge a **strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.** *Id*. at 689 (emphasis added). That is, judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort is made to eliminate the distorting effects of hindsight and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id*. at 689.

To amount to prejudice, an error must create "a reasonable probability that the result of the proceeding would have been different," when considering the totality of the evidence. *Strickland* 466 U.S. at 694. In capital cases, the question is whether there is a reasonable probability that, absent the errors, the court "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Id*. at 695. In making this determination, the Court stated that:

> [A] court hearing an ineffective claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id*. at 695-696.

A showing by petitioner that the alleged errors had some conceivable effect on the outcome of the proceeding is insufficient to meet this standard. *Id*. at 693. If a petitioner fails to satisfy either prong of the *Strickland* test, a claim for relief must be denied.

To prevail on his claims, Jones must demonstrate that his counsel was so deficient that there is a reasonable probability that, but for the deficiencies, he would not have been convicted and sentenced to death. As set forth in Respondent's Return and Reply to Jones's Traverse, Jones is unable to make such a showing. Jones alleges that his counsel did not adequately prepare to confront Dr. McDonough and use Dr. Solomkin. R. 15, Petition, pgs. 46-53, 56. Jones' claim is without support. Dr. McDonough opinioned that Jones injured his hand by striking someone in the mouth because his hand was infected with eikenella corrodens. Tr. Vol. XIV, pg.1005. However, defense counsel presented Dr. Solomkin who rebutted Dr. McDonough's testimony. Tr. Video Deposition, Vol. XXIX, pgs. 4-16 and 24-27. Defense counsel elicited testimony from both experts that the bacteria could exist in other places besides the human mouth. Tr. Video Deposition, Vol. XXIX, pgs. 10-11; Vol. XIV, pg. 1021. Furthermore, defense counsel presented evidence that Jones, himself, could have been the source of eikenella corrodens by licking his wound. Tr. Vol. XIV, pg. 1024-1025; Tr. Video Deposition, Vol. XXIX, pgs. 21-22. Defense counsel did confront and discredit Dr. McDonough's testimony as well as elicit favorable testimony from him and Dr. Solomkin. Defense counsel's conduct was certainly not ineffective in this regard.

In sum, under well settled jurisprudence, Jones's claims of ineffective counsel are procedurally defaulted, and Jones's alleged ineffective assistance of counsel clearly does

not serve as cause and prejudice under *Strickland*.    As such, this claim should be excluded from further review in an evidentiary hearing.

###    B.    Claim Four

Sub-claim Four address's Jones's contention that he is entitled to a hearing on his claims regarding the racial discrimination on the grand jury and the petit jury selection process and attacks counsel's failure to challenge such a process.  Both the trial court and the first district court of appeals held that this claim was barred by *res judicata*.  The appellate court, summarily dismissed this claim without an evidentiary hearing as it was clearly barred by *res judicata*.  *See Jones,* 2000 Ohio App. LEXIS 6197, at *10.  As such, Jones should not be permitted to raise this claim in habeas corpus as it is procedurally defaulted. *See*, *Engle*, 456 U.S. at 125 n.28; *Coleman*, 244 F.3d at 538; *Byrd*, 209 F.3d at 521; *Mapes*, 171 F.3d at 421.  Moreover, it is well settled law that inherit in failing to present claim properly on direct appeal is Jones's failure to exercise "due diligence" as required by title 28 section 2254(A)(ii).  *See*, 28 U.S.C. § 2254 (1996); *Hutchison*, 303 F.3d at 747; *Martin*, 280 F.3d at 615; *Royal*, 188 F.3d at 249; *Bannister*, 100 F.3d at 625, n. 15.  According to overwhelming jurisprudential support, Jones's motion for an evidentiary hearing on sub-claim four should be denied.

> **Jones's ineffective counsel claim as it pertains to the grand and petit jury selection process does not serve as cause and prejudice.**

With regard to claim four it is clear that Jones's trial counsel were not ineffective. As set forth in Respondent's Return and Reply to Jones's Traverse, Hamilton County's procedure for selecting grand juries and grand jury forepersons is constitutional, the composition of the petit jury venire and empanelled jury was constitutional, and the

prosecutor did not improperly exercise his peremptory challenges. As such, Jones was not prejudiced because his counsel did not challenge the procedures.

Therefore, under well settled jurisprudence, Jones's claims of ineffective counsel are procedurally defaulted, and Jones's alleged ineffective assistance of counsel clearly does not serve as cause and prejudice under *Strickland*. As such, this claim should be excluded from further review in an evidentiary hearing.

### III.   Claim One, Part C Regarding "Other Materials" Does not Yield any Indicia of Persuasive Evidence required for an Evidentiary Hearing[1].

The circuit courts have construed Section 2254(e)(2) to govern only circumstances under which an evidentiary hearing may not be ordered, due to the petitioner's failure to exercise due diligence to develop the record in state court. Even if the petitioner can satisfy Section 2254(e)(2), the petitioner still is not necessarily entitled to an evidentiary hearing. Rather, the petitioner must nevertheless demonstrate some deficiency in the state court's fact finding procedures, or that an evidentiary hearing is necessary to resolve factual disputes relevant to adjudicating a cognizable claim for relief. *See Williams v. Coyle*, 260 F.3d 684, 698 (6th Cir. 2001), citing *McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998)( even if petitioner clears hurdle of 2254(e)(2), he must still pursued the district court that an evidentiary hearing is necessary); *Cardwell v. Green*, 152 F.3d 331, 337 (4th Cir. 1998); *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000); *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000).

Jones contends that items in part C of his petition were not made available until the discovery in this proceeding. However, discovery on claim C yielded no facts that are persuasive to the degree that an evidentiary hearing is necessary. As noted in Respondent's

---

[1] Although not addressed here, the Warden does not waive her argument that this claim is procedurally defaulted as fully set out in her Return of Writ.

Return and Reply to Jones's Traverse, a *Brady* violation is only established when the withheld information does not "result[] in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Here, the prosecution erred on the side of caution and provided evidence to the defense when there was a "close call" as to whether it should be turned over because it was favorable. *Piepmeier Deposition*, p.54, lines 18-25.

### A.    Pendant

Jones claims that the victim's pendant, later discovered in Jones's possession, was initially described differently by various persons, and that these descriptions were not turned over to the defense attorneys. In fact, the defense attorneys were aware of the discrepancy in the description of the pendant and the actual pendant discovered. *Sanks deposition*, p. 10, lines 7-14; pp. 50-51; *Adams deposition*, pp. 63-64. Also prior to trial, defense counsel were given the conflicting descriptions of the pendant - in the affidavit for the search warrant and the return of the search warrant - as well as access to the pendant itself. *Adams deposition*, pp. 64-65. Despite knowing about the discrepancy, counsel can't remember if they did any investigation. Adams deposition, pp. 65-67. This may be due to the fact that, as lead defense counsel Sanks conceded, it was understandable that errors were made in the description of the pendant. *Sanks depo*sition, p. 55, lines 17-23.[2] Regardless, the prosecution can not be faulted for any inaction on the part of Jones's counsel.

Specific to Val Nathan, while he initially did not think the recovered pendant was the one belonging to his mother, after reviewing some family photos he changed his mind – to the point that he was certain the pendant was hers. Prosecutor's Files, Vol. III, pp.

---

[2] Sanks also conceded that no witness testified at trial that the "silver" pendant was in fact silver, and that white gold can actually have the appearance of silver. *Sanks deposition*, pp.45-48.

1310-1311; *Sanks deposition*, pp. 49-50.

Finally, and most importantly, the state put into evidence at trial the pendant and pictures of the victim wearing the pendant – both an original photo and an enlargement. *Piepmeier deposition*, pp. 20-21.[3] Thus, the jury was able to judge for itself whether the pendant recovered from Jones's vehicle was indeed the victim's. Tr. Vol. XIV, p. 1036-1037; XV, pp. 1219-1222.

### B.    Complaints About Guest Intruders

Jones premises his suppression of exculpatory evidence claim on such things as a transient man standing outside the hotel and opening the lobby door for a guest (*Blue Ash Police Department File*, p. 1163), a person who the interviewee "assumed [ ] was a maid" opening a room with a key (*Id*. pp. 1165-1166), "out of place" persons (in the eyes of the interviewee) being spotted the night before the killing in the hotel (*Id*. pp. 1171-72, 1175), uncertainty amongst the maid staff about whether a particular room had been cleaned the day before the killing (*Id*. p. 1845), and desire amongst the guests for better security at the hotel (*Id*. p. 1853-1854). Several of the incidents appear to involve hotel workers not adequately identifying themselves before attempting to enter to perform work in a guest room.[4] Others may point to a poorly-run hotel (telephones in the room out of order, water being turned off, front desk workers audibly voicing a guest's room number – *Id*. p. 1846). Still others are merely reflections of the subjective judgment of the respondent – e.g., while some guests reported seeing "out of place persons," other guests reported not seeing anyone suspicious the evening before the killing. *Blue Ash Police Department File*, pp. 1106-1107. Regardless, the statements taken together do not even point to "other criminal

---

[3] Defense counsel were given copies of the photos pretrial. *Id*.

[4] Though, at least one guest mistakenly tried to enter a room that was not hers. *Blue Ash Police Department File*, p. 1811.

activity that night" (*Traverse*, p. 80) or "a gang operating in the hotel," (*Id*. p. 82), let alone undermine confidence in the outcome of the trial.

### C.    Potential Witnesses

#### 1.  Ryan Norman

In the interview notes of Ryan Norman, it clearly states that in terms of his employment at the hotel, the day of the killing was Norman's first on the job. *Prosecutor's File*, p. 1711.  *See* also *Id*., p. 1666  ("That day was Ryan Norman's first day.")  This belies Jones's assertion that "As an employee, he (Norman) knew Petitioner and would not have confused him with someone else."  *Traverse* p. 82.  Norman's statements do not have the exculpatory value that Jones claims they do and do not undermine confidence in the outcome of the trial.

#### 2.  Demetrius Williams

Jones also asserts that Demetrius Williams "knew Petitioner and would not confuse him with someone else."  *Traverse* p. 83.  However, in his statement, Williams did not state that he knew Jones, and Jones offers no evidence of such.  Moreover, it is just as likely that due to the fact that the hotel employed many persons, Williams did not know Jones.

Perhaps more importantly, another document in the prosecutor's files severely undercuts the claim that Williams would have provided exculpatory information for Jones.  On 5/13/95, Williams was interviewed by authorities.  He stated, in regard to Jones's claim that he (Jones) was working the "comp breakfast" shortly before the killing, "Butch helped out in Comp. Breakfast for about 5 min. – no longer" and he "does not know why Butch would say he was in comp. breakfast when he wasn't." *Prosecutor's File*, p. 1666.  Williams's statements do not have the exculpatory value that

Jones claims they do and do not undermine confidence in the outcome of the trial.

### 3. Robyn Williams

As to the statement from Robyn Williams, the fact that she saw another person at or near the time of the victim's death is hardly exculpatory, as the killing occurred in a hotel where there were many guests. Even assuming that the statement was not turned over to the defense, it does not undermine confidence in the outcome of the trial.

### 4. Polygraph Results

As to the fact that hotel employees had been subjected to polygraph examinations, even assuming that this information was not turned over, it does not undermine confidence in the outcome of the trial. Jones's trial counsel may consider this information to be *Brady* material, but of course it is not for defense counsel to analyze the merits of the claim. What defense counsel fails to note is that polygraph results are inadmissible at an Ohio trial. *See State* v. *Levert* 58 Ohio St. 2d 213 (1979) (the trial court can not admit the results of a polygraph test into evidence simply at an accused's request). As such, the failure to turn them over does not constitute a *Brady* violation. *See Wood v. Bartholomew*, 516 U.S. 1, 6, (1995) (the prosecution's failure to reveal the results of polygraph tests did not constitute a *Brady* violation because such evidence was not admissible under state law).

### 5. Compilation

The compilation was merely a summary generated from the interviews with the hotel employees. The defense was free to generate its own summary, because as the trial prosecutor made clear, there was a meeting set up where the defense counsel "could go out to the hotel . . . and then talk to anybody they wanted, and look at any records the

hotel had." *Piepmeir deposition*, p. 49, lines 8-14. Defense counsel agreed that such a meeting took place. *Adams deposition*, pp. 69-70. The state did not suppress this information.

### D. Hepatitis

As Respondent asserted in her Return, this sub-claim is defaulted because it was never presented to the state courts. *Return*, p. 84. A petitioner's failure to raise a claim in state court is a procedural default, and there can be no requirement of a "plain statement" of default by the state courts because the bypass deprives the state courts of the opportunity. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, (1991) ("This rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims. *See Harris v. Reed*, 489 U.S. 255, 269-270 (1989) (O'Connor, J., concurring); *Teague v. Lane*, 489 U.S. 288, 297-298 (1989)").

Jones tries to excuse his default on the basis that the coroner's report was "turned over only in this proceeding." *Traverse*, p. 76. Yet, prior to any discovery occurring in this case, the *Petition* was filed on 11/26/01. And in the Petition, Jones raises the same claim of error as to the withholding of the coroner's report. *Petition*, p. 44. So, in fact, Jones has not demonstrated cause for failing to raise the matter earlier.[5]

---

[5] In his Petition, Jones asserts that he did not come into possession of the documents until the conclusion of state court litigation. Even assuming this to be true (though, Jones offers no evidence in support), Jones does not explain why he did not seek to file a successive post-conviction petition in state court. His failure of action lends further support for the position that his claim should now be held procedurally defaulted.

As to the merits of the sub-claim, the report from the Microbiology Reference Laboratory (MRL), does not list a patient name – so it is unclear that the sample was taken from Jones.  However, even assuming that the sample was Jones's, it is not exculpatory.  The murder occurred on 9/3/94 and the specimen was taken on 9/15/94. The report clearly states that hepatitis "becomes detectable after the incubation state of the virus which generally lasts 4-12 weeks after initial exposure." *Petitioner's Exhibit 2-A.*  If the hepatitis was transferred from the victim to Jones on 9/3/94, the fact that Jones didn't yet test positive for hepatitis twelve days later does not prove Jones's innocence, since the incubation period had not yet ended (to allow for detection of the hepatitis).

Of course, this assumes that the hepatitis would or should have transferred from the victim to Jones.  Jones offers no qualified affirmative evidence on this point.  At best, trial attorney Sanks stated in his deposition that "Hepatitis is, to my knowledge, is fairly virulent.  It can be transferred through bodily fluids and blood being – blood and saliva both being bodily fluids, I would have checked into that more, checked it out more." *Sanks Deposition.*, pp. 30-31.  Sanks is not an expert on this issue, and his lay opinion should not be sufficient to prove Jones's claim meritorious.

As outlined in the aforementioned facts, Jones's claim does not give rise to anything more than conjecture which is of no persuasive value.  Therefore, Jones's motion for an evidentiary hearing regarding claim C of his petition, in sub claim one of his motion should be denied.

## IV.    Claim 1, Parts A and B, Does Not Yield any Indicia of Persuasive Evidence Required for an Evidentiary Hearing

Jones presented parts A and B are bifurcated from part C in Jones's motion for an evidentiary hearing.  Jones raised these claims to the state courts during post-conviction

appeal in claim eight.  He alleged these claims in his petition in claim three.  The first

district court of Appeals rejected Jones' claim for lacking merit.

> In his eighth claim for relief, Jones argues that his convictions should be vacated because the prosecutor concealed exculpatory evidence.  In a similar vein, in his thirtieth and thirty-fifth claims, he argues that his trial counsel were rendered ineffective because the prosecutor withheld exculpatory evidence.  (We believe the fundament of these last two claims concerns whether the prosecutor withheld exculpatory evidence and review the claims as such.)

> In the eighth and thirteenth claims, Jones argues that the prosecutor withheld Blue Ash Police Department property tags that contained evidence of irregularities that were favorable to him.  For example, there were gaps in the sequentially numbered tags where multiple items were collected on a given date; the tag relating to a purse appeared to be wrongly dated; some of the dates on the tags appeared to have been altered; one of the tags stated "Photo evidence-negative results from FBI shoe print exam"; there were no tags for Jones's car keys; a property tag referred to a bloody handkerchief taken from Jones, but there was no evidence of forensic tests having been done on the handkerchief; and although the tag for the handkerchief was dated September 12, 1994, the tag number corresponded sequentially to items taken from Jones's car on September 14, and not to items taken from him on September 12.

> In his thirty-fifth claim, Jones's contends that the prosecutor failed to disclose copies of the Blue Ash Police Department's yearly reports of criminal activity from the department's hotel/motel interdiction unit.  According to Jones, the evidence could have further advanced Jones's claim of innocence by demonstrating the following: (1) that the Embassy Suites Hotel routinely hired criminals; (2) that the hotel's guests were routinely crime victims; (3) that the hotel rooms were routinely used by "unsavory characters," and (4) that several thefts had occurred at the hotel after Jones was no longer present, including an incident in which someone tried to enter a guest's room with a key.

> In support of the first two claims, Jones provided to the court below copies of the property tags, an affidavit of S. Adele Shank, an attorney experienced in representing capital defendants, and the affidavit of Catherine Adams, one of Jones's trial counsel. Adams's affidavit stated that neither trial counsel had reviewed the property tags. In support of his thirty-fifth claim, Jones presented the 1994 yearly report. The trial court ignored Jones's claim that the state had withheld exculpatory material in violation of *Brady v. Maryland,* and erroneously concluded that Jones's eighth and thirtieth claims concerned chain-of-custody issues that were barred by *res judicata*. It found that his thirty-fifth claim merely second-guessed trial counsel's strategy.

The suppression by the state of evidence favorable to a defendant is a violation of the defendant's due-process rights if the evidence is material to guilt. n16 The withheld evidence may be exculpatory or impeaching, but it must be "material" to be the subject of a *Brady* violation. To be material to guilt, the withheld evidence must be such that there is a reasonable probability that had it been disclosed, the result of the proceeding would have been different. To determine the materiality of evidence, "the question is not whether a defendant would more likely than not have received a different verdict with the evidence, but whether in its absence, he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Thus, a "reasonable probability" of a different result exists where the state's suppression of evidence "undermines confidence in the outcome of the trial." As this court has explained, "This standard of materiality applies regardless of whether the evidence is specifically, generally, or not at all requested by the defense."

To prevail on the alleged *Brady* violation, Jones had to demonstrate that the prosecutor withheld material evidence favorable to him. While the property tags were of marginal impeachment value, we cannot conclude that the withholding of them undermined the confidence in Jones's trial. We also conclude that the 1994 hotel/motel interdiction unit's report was neither exculpatory nor material. Thus, the evidence Jones proffered either was not cogent or failed to demonstrate substantive grounds for relief.

*State v. Jones*, 2000 Ohio App. LEXIS 6197 *11-14 (1st Dist.) [footnotes omitted]; Apx. Vol. XIII, pgs. 409-411.

Jones must provide enough persuasive evidence to warrant an evidentiary hearing as it pertains to parts A and B. As more fully set forth in Respondent's Return and Reply to Jones's Traverse, the appellate record from the first district clearly counsels against granting such a claim as Jones failed to demonstrate substantive grounds for relief.

**V.    Jones's Ineffective Assistance of Counsel Claim as it Relates to his Brady Claim is Procedurally Defaulted and Barred from Evidentiary Hearing Under Section 2254(e)(2)(A)(ii) for Want of Due Diligence**

Jones alleges that his trial counsel were ineffective for failing to discover exculpatory and impeachment evidence. R. 15, Petition, pgs. 37-45. Jones raised this argument in his petition under claim three and as his ninth, thirty-first, and thirty-fifth claims in his post-conviction petition    Specifically, Jones argues that defense counsel

failed to discover discrepancies in the property tags and acquire information about other crimes at the Embassy Suites. R. 15, Petition, pgs. 37-44. As determined by the Ohio courts and detailed above, none of the evidence was *Brady* material. Thus, Jones cannot demonstrate an ineffective assistance of counsel claim based on a meritless *Brady* claim.

Jones's claim still lacks merit even assuming that defense counsel could have independently discovered this evidence. None of the evidence exculpated Jones as the murderer. There was overwhelming evidence of Jones' guilt, especially since Ms. Nathan's unique pendant was found in his car. Therefore, impeaching the State's case by pointing out discrepancies in the property tags and presenting evidence of other crimes that occurred at the same hotel does not create a reasonable probability of a different trial. Jones' claim does not establish ineffective assistance of counsel and as such should not be considered persuasive by this Court to warrant an evidentiary hearing.

**VI.    Claim Three is Not Appropriate for an Evidentiary Hearing because it Either is Procedurally Defaulted and Lacks any Indicia of Substantive Support required to Persuade this Court that a Evidentiary Hearing is Necessary.**

    **A.    Investigating Exculpatory and Impeachment Evidence**

        **1.    Alternative Theory Suspect - Investigation of Theory that Bill McCall was a Possible Suspect**

This claim was raised in Jones's fifth ground for relief in his habeas petition as well as his twentieth claim for relief in his post-conviction appeal. Jones concedes that the trial court found the claim barred by *res judicata* because it could have been raised on direct appeal. The court of appeals found that "the majority of the examples raised in this claim are subject to the bar of *res judicata*." *Jones*, 2000 Ohio App. LEXIS 6197, at * 38. This Court should uphold the procedural bar applied by the Ohio state courts because these matters could have been raised on direct appeal due to the fact that they were based

on a matter of record. *See e.g. Petition*, pp. 57-58 and *Traverse* p. 104 (argument based on events that occurred at trial, *citing* Tr. p. 1684); *Petition* pp. 58-59 and *Traverse* pp. 107-108 (argument based on events that occurred at trial, *citing* Tr. pp. 871, 1006, 1042, 1056, 1071, 1112, 1151, 1321, 1361, 1407).

In upholding the procedural bar implemented by the Ohio state courts this court should not grant an evidentiary hearing on this claim. *See Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982) (The United States Supreme Court held that Ohio's post-conviction statute does not allow petitioners to raise claims that could have been litigated before judgment or on direct appeal – such issues raised in post conviction are procedural defaulted on habeas corpus). The Sixth Circuit has recognized that the "*Perry* rule" is an independent and adequate group upon which to procedurally bar consideration of habeas claims. *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000); *Mapes*, 171 F.3d at 421.

In the event that this court does not find that this claim is procedurally defaulted, this claim should not be considered appropriate for an evidentiary hearing. This court should following the holding of the first district in the post conviction phase which determined that the evidence did not provide substantive grounds for relief due to failure by Jones to persuade the court that an evidentiary hearing was necessary. *Jones*, 2000 Ohio App. LEXIS 6197 at *38. *See Williams v. Coyle*, 260 F.3d 684, 698 (6th Cir. 2001), citing *McDonald v. Johnson*, 139 F.3d  1056, 1060 (5th Cir. 1998)(even if petitioner clears hurdle of 2254(e)(2), he must still pursued the district court that an evidentiary hearing is necessary); *Cardwell v. Green*, 152 F.3d 331, 337 (4th Cir. 1998); *Baja v.*

*Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000); *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000).

For the aforementioned reasons an evidentiary hearing regarding investigation of exculpatory and impeachment evidence should be denied.

### B.    Investigating a Pair of Shoes Tied to Jones

Jones raised the claim that defense counsel was ineffective for improperly stipulating that Jones owned the brown shoes (found in Metcalf's apartment) as his fifth claim for relief in his petition for habeas and his sixteenth claim in his post conviction hearing. As noted above, Jones must provide enough substantive evidence to persuade this court that an evidentiary hearing is necessary. *See Williams v. Coyle*, 260 F.3d 684, 698 (6th Cir. 2001), citing *McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998)(even if petitioner clears hurdle of 2254(e)(2), he must still pursued the district court that an evidentiary hearing is necessary); *Cardwell v. Green*, 152 F.3d 331, 337 (4th Cir. 1998); *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000); *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000).

To support his argument in post conviction, Jones offered his own self-serving affidavit that he told counsel that the shoes did not belong to him. Jones' Post-conviction Exhibit K, Apx. Vol. IX, pgs. 2-4. After addressing the merits of the claim, the First District Court of Appeals denied relief. *Jones*, 2000 Ohio App. LEXIS 6197, at *34-35, Apx. Vol. XIII, pg. 423.

Jones' argument is premised on a misstatement of the facts. Defense counsel did not stipulate to Jones' ownership of the shoes. Instead, the stipulation stated that the shoes were taken from Jones as a result of the execution of a search warrant and that tests

revealed no blood or blood products. Tr. Vol. XIX, pg. 1724. Thus, Jones' counsel only stipulated to admissibility, while attacking the weight of the evidence.

Defense counsel vigorously challenged the State's theory that Jones wore these shoes, which left bruises on Ms. Nathan's body. The prosecution witnesses testified that bruises on Ms. Nathan's body corresponded with the shoes, but not to the exclusion of all other shoes. Tr. Vol. XIII, pg. 896. Jones' common law wife, Yvonne Kinard, testified that she did not recognize the State's Exhibit 70 as a pair of shoes belonging to Jones and that Jones owned black, not brown shoes. Tr. Vol. XVII, pg. 1654.

In light of the overwhelming evidence of his guilt, Jones's factual misinterpretation holds no persuasive value, and as such provides no basis on which this court can grant an evidentiary hearing.

### C.    Handling Expert Testimony

Jones addressed this claim in his fourth and fifth claims for relief in his petition for habeas as well as his seventh ground for relief in his post conviction petition. Jones raises this claim in two separate sub-claims in his motion for evidentiary hearing, sub-claim two and sub-claim three. The Warden relies on her argument as posited in sections II. A. and II. A. 1. of this motion in opposition. Therefore, this claim should not be afforded an evidentiary hearing.

### D.    Review Prior Statements of Prosecution Witnesses

Jones addressed this claim in his fifth claim for relief in his petition and his twentieth claim for relief in post conviction. Jones argues that his counsel's failure to review prior statements of witnesses immediately following their direct examination deprived him of his right of confrontation. Both the trial court and court of appeals found that this "on the record" claim was barred by res judicata. *See* Findings of Facts and

Conclusions of Law, pg. 3, Apx. Vol. XII, pg. 373 and *Jones*, 2000 Ohio App. LEXIS 6197 at *38; Apx. Vol. XIII, pgs. 425-426.   As such, this claim is barred as procedurally defaulted.   Moreover, as noted through out this motion in opposition, claims that are procedurally defaulted are not appropriate for further evidentiary review in a hearing.   *See*, *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982) (The United States Supreme Court held that Ohio's post-conviction statute does not allow petitioners to raise claims that could have been litigated before judgment or on direct appeal – such issues raised in post conviction are procedural defaulted on habeas corpus).   The Sixth Circuit has recognized that the "*Perry* rule" is an independent and adequate group upon which to procedurally bar consideration of habeas claims.   *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001); *Byrd* v. *Collins*, 209 F.3d 486, 521 (6th Cir. 2000); *Mapes v. Coyle*, 171 F.3d 408 at 421.

Even if it were not procedurally defaulted, the claim lacks merit and should not be afforded an evidentiary hearing.   Not making a request under Ohio R. Crim. P. 16(B)(1)(g) for every witness was a reasonable defense strategy.   Defense counsel confronted the prosecution witnesses with vigorous cross-examination.   Jones was not prejudiced by defense counsel's strategy.   Furthermore, Jones does not allege that the witness statements contained any prior inconsistent statements.   Even if counsel had used this rule, inaction does not yield any indicia of evidence that would provide a basis for an evidentiary hearing as required by *Williams v. Coyle*.

## VII.    CONCLUSION

For the foregoing reasons, Respondent respectfully requests this Court to deny Jones's motion for an evidentiary hearing.

Respectfully submitted,

**JIM PETRO**
Attorney General

s/ Matthew C. Hellman_____
MATTHEW C. HELLMAN* (0071628)
        *Trial Counsel
Deputy Attorney General
HEATHER L. GOSSELIN (0072467)
Senior Deputy Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, OH 43215
(614) 728-7055; Fax (614) 728-8600
Emails:  mhellman@ag.state.oh.us
                hgosselin@ag.state.oh.us

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that a true an accurate copy of the foregoing *Motion in Opposition*

*to Jones's Motion for an Evidentiary Hearing* was delivered to counsel for petitioner this

<u>6th</u> day of November 2006, via the court's electronic filing system.

David Bodiker, Esq.                          Gary W. Crim
Ohio Public Defender's Office          Attorney at Law
8 East Long Street, 11th Floor         943 Manhatten Avenue
Columbus, Ohio 43215                   Dayton, Ohio 45406
Email:  bodiker@opd.state.oh.us     Email:  gwcrim@ameritech.ent

Michael L. Monta, Esq.
Monta & Monta
3625 Old Salem Road
Dayton, Ohio 45415
Email Zbeard7@aol.com

                                                           s/ Matthew C. Hellman_____
                                                           MATTHEW C. HELLMAN* (0071628)