RECEIVED
FEB 23 2007
JAMES BONINI, CLERK
DAYTON, OHIO

ELWOOD H. JONES
A339-441  D-5-27
878 COITVILLE-HUBBARD RD.
YOUNGSTOWN, OH 44505-4635

MR. GARY W. CRIM
-ATTORNEY AT LAW-
943 MANHATTEN AVE.
DAYTON, OH 45406-5141

FEBRUARY 20, 2007

MR. MICHAEL L. MONTA
-ATTORNEY AT LAW-
3625 OLD SLAEM RD.
DAYTON, OH 45415-1427

Case No. *C-1-01-564*

COVER LETTER

DEAR MR. CRIM, MR. MONTA:

    I AM RESUBMITTING MY LETTER OF JANUARY 30, 2007, TO THE BOTH OF YOU FOR SOME TYPE OF WRITTEN RESPONSE FROM EITHER ONE OF YOU TO THE QUESTIONS AND CONCERNS I ADDRESSED IN THE SAID LETTER OF JANUARY 30, 2007, AS OF THIS DATE, FEBRUARY 22, 2007.

    I AM ALSO REQUESTING THAT DETECTIVE PETE ALDRUCCI BE ADDED TO THE LIST OF WITNESSES TO BE CALLED DURING THE EVIDENTIARY HEARING. **THE PURPOSE OF DET. ALDERUCCI TESTIMONY WILL BE RELATED TO THE THREE (3) PAGE INVESTIGATION REPORT HE WROTE ON SEPTEMBER 3, 1994, BATES STAMPED NOS. #000139, #000110, #000399.**

    ON PAGE 2, OF DET. ALDERUCCI DETAILS OF INVESTIGATION OF THE HOMICIDE OF MS. NATHAN. WITHIN THE FOURTH PARAGRAPH DET. ALDERUCCI STATED ACCORDING TO THE **TWO SONS** OF THE **VICTIM**, WHO JUST **ARRIVED** FROM **NEW YORK** AND **NEW JERSEY**, STATE THAT SHE ALWAYS WORE A GOLD NECKLACE AND THEY DESCRIBED THE ITEMS WITHIN THAT NECKLACE SHE WAS WEARING --- THE CORONER'S OFFICE STATES THAT SHE WAS NOT WEARING ANY NECKLACE, ALTHOUGH SHE WAS WEARING TWO (2) RINGS.

    WHAT I WANT TO DO WITH DET. ALDERUCCI THREE PAGE INVESTIGATION REPORT HE WROTE ON SEPTEMBER 3, 1994, IS TO SHOW THE COURT --- ACCORDING TO DET. ALDERUCCI'S STATEMENT WITHIN THE FOURTH PARAGRAPH ON PAGE TWO, MS. NATHAN'S SON'S GAVE A **STATEMENT DESCRIBING** THEIR MOTHER'S NECKLACE, SEPTEMBER 3, 1994 [YET **NO-WHERE IN BLUE ASH POLICE DEPARTMENT FILES** OR **THE HAMILTON COUNTY PROSECUTOR'S OFFICE FILES** OR **THE HAMILTON COUNTY SHERIFF'S OFFICE FILES** TURNED OVER **CAN BE FOUND A COPY OF THE SAID INTERVIEW OF MS. NATHAN'S SONS ON SEPTEMBER 3, 1994, DESCRIBING THEIR MOTHER'S NECKLACE TO BLUE ASH POLICE AUTHORITIES, IN DETAILS SUCH AS COLOR AND STYLE** OF THIS ALLEGED STOLEN PENDANT.]

PAGE 2
MR. CRIM, MR. MONTA
FEB. 20, 2007

    I AM GOING TO BRING THIS LETTER TO AN END FOR NOW AND WAIT ON YOUR RESPONSE TO MY LETTER OF TODAY AND JANUARY 30, 2007.

                                   SINCERELY,

                                   ELWOOD H. JONES JR.

CC: COURT
    FILE

ELWOOD H. JONES JR.
A339-441  D-5-27
878 COITSVILLE-HUBBARD RD.
YOUNGSTOWN, OH 44505-4635

MR. GARY W. CRIM
-ATTORNEY AT LAW-
943 MANHATTEN AVE.
DAYTON OH 45406-5141

JANUARY 30, 2007

MR. MICHAEL L. MONTA
-ATTORNEY AT LAW-
3625 OLD SALEM RD.
DAYTON, OH 45415-1427

DEAR MR. CRIM,

   I HIGHLY APPRECIATE YOU ACCEPTING MY **PHONE CALL ON JANUARY 25, 2007 AT 12:02 P.M.** AND EXPLAINING TO ME **THAT** YOU HAVE BEEN SOMEWHAT "**MONOPOLIZED**" WITH OTHER MATTERS THAT YOU HAVEN'T READ MY RECENT **LETTERS OF DECEMBER 20, 2006 AND JANUARY 4, 2007.** TO SPEAK ON THE **ISSUES** I HAVE PUT FORWARD FOR **SOME TYPE** OF RESPONSE FROM EITHER **YOURSELF** OR **MR. MONTA** AT THIS TIME.

   MR. CRIM, I HIGHLY RESPECT YOUR **CANDOR** IN THE MATTER ABOVE. NOW IF I UNDERSTAND YOU **CORRECTLY** ON THE PHONE **YOU AND MR. MONTA ARE PLANNING ON REQUESTING A DATE FOR THE HEARING TO START IN MY CASE AROUND THE END OF MARCH OR THE BEGINNING OF APRIL?** SOON AS THE BOTH OF YOU CAN **CLEAR** YOUR **WORK CALENDAR** OF OTHER MATTERS TO SET A DATE FOR THE HEARING TO START IN MY CASE, PLEASE LET ME KNOW.  **I WOULD LIKE TO INFORM MY FAMILY AND FRIENDS** SO THEY CAN ARRANGE THEIR WORK SCHEDULES IF NECESSARY, SO THEY CAN BE IN THE **COURTROOM TO OFFER MORAL SUPPORT** TO ME DURING THE HEARING.

   MR. CRIM, AS I SPOKE OF IN OUR BRIEF PHONE CONVERSATION ON JANUARY 25, 2007, WITH RESPECT TO MY MOST RECENT LETTER ADDRESS TO YOURSELF AND MR. MONTA:

   1. MY CONCERN RIGHT NOW IS TO SIT DOWN WITH YOU AND MR. MONTA BEFORE THE HEARING OR THOUGH THE U.S. MAIL SERVICE AND NOT BY THE PHONE SERVICE TO DISCUSS THE DIRECTION YOU AND MR. MONTA PLAN ON PRESENTING MY CASE TO THE COURT, AND GO OVER THE LIST OF WITNESSES AND EXPERT WITNESSES YOU WILL BE CALLING TO TESTIFY. NOW WHY THAT IS SO IMPORTANT TO ME AT THIS TIME TO DISCUSS THE DIRECTION YOU PLAN ON TAKING CASE?

   I AM REQUESTING THAT YOU MAKE NOTICES TO THE COURT ASKING THAT HAMILTON COUNTY PROSECUTOR'S OFFICE MAKE AVAILABLE, COPIES OF THE SAID FAMILY PHOTOS OF MS. NATHAN WEARING THE ALLEGED GOLD PENDANT USED IN THIS CASE.

PAGE 2
MR. CRIM, MR. MONTA
JAN. 30, 2007

    A. COPIES OF THE ALLEGED GOLD PENDANT "SUPPOSEDLY FOUND IN THE TOOL BOX IN THE TRUNK OF MY CAR BY BLUE ASH OFFICER BRAY ON SEPTEMBER 14, 1994.

    B. COPIES OF ANY AND ALL FAMILY PHOTOS OF MS. NATHAN WEARING THE ALLEGED GOLD PENDANT IN QUESTION AND AS PRESENTED TO THE JURY AS MS. NATHAN'S PENDANT.

    C. COPIES OF ANY AND ALL FAMILY PHOTOS AND PHOTOS SHOWING MS. NATHAN WEARING THE ALLEGED GOLD PENDANT THAT HAS BEEN ALTERED TO HELP CONVINCE JURORS THAT **HAMILTON COUNTY PROSECUTOR'S OFFICE HAD THAT SAME PENDANT, BLUE ASH OFFICER BRAY REFERRED TO IN A LETTER TO HAMILTON COUNTY PROSECUTOR PIEPMEIR, FOUND WITHIN THE PROSECUTOR'S FILE, BATES STAMPED #0000894 AND #0000895, WHICH READS IN PART** TO HAMILTON COUNTY PROSECUTOR PIEPMEIR:

MR. PIEPMEYER,

    SINCE I LAST MET WITH YOU WE HAVE CONTINUED OUR EFFORTS TO ASSIST YOU IN PRESENTING PROOF OF ELWOOD "BUTCH" JONES ROLE IN THE MURDER OF RHODA NATHAN.
    I HOPE TO HAVE OPPORTUNITY TO MEET WITH YOU AGAIN PERSONALLY TO SHARE THE RESULTS OF OUR EFFORT. THIS IS UNLIKELY, AS I AM LEAVING TOWN TOMORROW AND WILL BE GONE THOUGH MON. 10/16/95. I'M TOLD BY SGT. SCHAFFER THAT YOU WILL LIKELY BE GRANTED DISCOVERY ON MON. 10/16/95.
    THE PROBLEM YOU MUST CLARIFY WITH TH COURT IS ACCRPTING THE INCORRECT PLACEMENT OF THE PHOTO SCALE/RULE BY THE PATHOLOGIST, AND DEMONSTRATINF HOW GREAT OF AN ERROR THAT CAN CAUSE. THE RULE WAS SO FAR OUT OF PLACE THAT THE F.B.I. TECHNICIAN COULD NOT USE IT TO OBTAIN AN ACCURATE RECTIFICATION OF THE BRUISE. THEY EVENTUALLY RECTIFIED THE IMAGE BY MEASURING THE ACTUAL FEATURES OF THE RADIO. USING THIS AS THE KNOWN, THE IMAGE WAS EASILY BROUGHT INTO ACCURATE DIMENSION. (MY CONCERN IS <u>THAT THE DEFENSE MAY ARGUE THAT WE ALTERED THE PHOTO.</u>)
    AS YOU CAN SEE IN THE ENLARGED RECTIFIED IMAGE, WHAT WAS ORIGINALLY A 6" RULE IS NOW APPROX. 9" WHEN THE BRUISE IS CORRECTED.
    **ROB PARIS PHOTOGRAPHY WAS ENLISTED TO CREATE AN ENLARGEMENT OF RHODA NATHAN WEARING THE NECKLACE/PENDANT, WHEREIN THE ACTUAL RECOVERED PENADANT COULD BY OVERLAYED ON THE PHOTO AT ACTUAL SIZE.** I THOUGHT THAT THIS MIGHT HELP CONVINCE JURORS THAT WE DO HAVE THE VERY **NECKLACE**. AGAIN, ANY SLIGHT VARIATIONS WILL ALSO BE DUE TO PERSPECTIVE DISTORTION. (OBSERVE THE ANGLE FROM WHICH THIS ORIGIONAL PHOTO WAS TAKEN OF MS. NATHAN.)

PAGE 3
MR. CRIM, MR. MONTA
JAN. 30, 2007

   MARK, THIS CASE HAS BEEN A TREMENDOUS LEARNING EXPERIENCE FOR ME. IF I HADN'T BEEN AN AMATEUR PHOTOGRAPHER WITH A SOLID WORKING KNOWLEDGE OF THE SCIENCE, I WOULD HAVE NOT KNOWN OR UNDERSTOOD ALL OF THIS. YOU MAY WELL BE MORE KNOWLEDGEABLE THAN ME IN THIS AREA! AT ANY RATE, WE KNOW THAT THE F.B.I. HAS PEOPLE WITH THE CREDENTIALS TO EXPLAIN THIS TO THE COURT.
   I HOPE THIS EXPLINATION OF THE RESULTS OF THE WASHINGTON D.C. EFFORT HELPS. I WILL BE AVAILABLE AFTER MON. 10/16 IF YOU WISH TO DISCUSS ANY OF THIS FURTHER. (745-8563)
   **ALSO, THE PHOTOS YOU HAVE ARE NOW INCLUDED AS ARTICLES OF ORIGINAL EVIDENCE. CHAIN OF CUSTODY LABELS ON BOX."**

D. NOW WHAT I PLAN ON DOING WITH COPIES OF THESE ALLEGED FAMILY PHOTOS OF MS. NATHAN WEARING THE PENDANT IN QUESTION:

 1. UPON HAMILTON COUNTY PROSEUTOR'S OFFICE MAKING AVAILABLE COPIES OF ALL PHOTOS USED IN THIS CASE SHOWING MS. NATHAN WEARING THE ALLEGED GOLD PENDANT IN QUESTION DURING THE SAID HEARING [IS TO SHOW THE COURT MS. NATHAN'S SON AND DAUGHTER-IN-LAW NEVER IDENTIFED HIS MOTHER'S PENDANT FROM THE FAMILY PHOTOS AS THE ONE IN QUESTION SUPPOSEDLY FOUND IN THE TOOLBOX OF MY CAR BY OFFICE BRAY ON SEPTEMBER 14, 1994. **INSTEAD VAL NATHAN'S IDENTIFIED A SIMILAR PENDANT IN STYLE FROM A SMALL SNAPSHOT PHOTOS.**

 2. MR CRIM, I NEED COPIES OF THE PHOTOS USED DURING MY TRIAL IN MAKING THE CASE TO THE COURT **HAMILTON COUNTY PROSECUTORS MISLEAD THE COURT** AND THE **JURY** IN THIS **CASE** CONCERNING THE **PENDANT IN QUESTION.**

 **1. I AM REQUESTING THAT YOU AND MR. MONTA FILE A MOTION TO THE COURT FOR AN INDEPENDANT LAB COME IN AND TEST MY BLOOD FOR HEPATITIS B. (I AM 100 PERCENT POSITIVE THE TEST RESULTS WILL COME BACK NEGATIVE BECAUSE I HAD NOTHING TO DO WITH MS. NATHAN'S MURDER.)**

 **2. HAVE MR. DORING GO BACK TO THE HAMILTON COUNTY CORONER'S LAB AND RE-INTERVIEW TECHNICIANS BILL DEAN, MIKE TRIMPE, JOAN DAWSON BURKE, CONCERNING THE TEST RESULTS #ID NO. 252, ON SEPTEMBER 15, 2004, ELWOOD JONES JR. GAVE BLOOD AND IT WAS SENT TO "MICROBIOLOGY REFERENCE LAB" 3645 CENTRAL PARKWAY, CINCINNATI, OHIO 45223 - TO BE TESTED FOR HEPATITUS "B". THE TEST RESULTS UNDER ID NO. 252 FOR ELWOOD H. JONES JR. CAME BACK 'NEGATIVE' FOR HEPATITUS "B", THE QUESTION SHOULD BE... WHO ORDERED THIS TEST DONE? AND WAS A COPY OF THE TEST RESULTS TURNED OVER TO THE HAMILTON COUNTY PROSECUTOR'S OFFICE AS PART OF THE CASE FILE IN THIS CASE?**

PAGE 4
MR. CRIM, MR. MONTA
JAN. 30, 2007

    3. HAVE MR. DORING GO BACK AND RE-INTERVIEW POTENTIAL WITNESSES AND GET **AFFIDAVITS** TO SUPPORT MY CLAIMS OF **DETECTIVE JOHN LADD** OF THE BLUE ASH POLICE DEPARTMENT AS TO WHAT HE DID WITH THE **INFORMATION GENERATED** FROM INTERVIEWING **DEMETRIUE WILLIAMS** AND **NORMAN RYAN DESCRIBING A "DARK COMPLEXION BLACK GUY" AND A WHITE GUY WITH GRAY HAIR."** LEAVING MS. NATHAN'S ROOM, WHERE UPON SCREAMS WERE HEARD, **ONE** OF THE GUYS HAS A WALKIE-TALKIE IN HIS HAND THAT MORNING LEAVING MS. NATHAN'S ROOM, AND DID HE SHARE THIS **INFORMATION WITH THE HAMILTON COUNTY PROSECUTOR'S OFFICE** AS A PART OF HIS "CASE FILES" DURING THE INVESTIGATION OF THE MURDER OF MS. NATHAN THAT OCCURED ON 9/3/94, BETWEEN 7:30 A.M. AND 8:00 A.M. AT THE EMBASSY SUITES HOTEL.

    4. I AM REQUESTING THAT YOU HAVE MR. DORING ALSO GET AN **AFFIDAVIT** FROM **MR. L. STRIGARI** AND **MR. J. DETERMAN** CONCERNING THEIR MEETING WITH **TWO FORMER BLUE ASH OFFICERS, DAVE HOFFMAN** AND **JOE SCHURE,** WHO CONTACTED JOSEPH L. DETERMAN, CHIEF INVESTIGATOR FOR THE HAMILTOM COUNTY PUBLIC DEFENDER'S OFFICE, AND TOLD HIM THEY HAVE SOME INFORMATION CONCERNING ELWOOD H. JONES JR.'S CASE THAT MAYBE HELPFUL AND A MEETING WAS SET UP FOR THE FORMER BLUE ASH OFFICERS TO COME INTO THE OFFICE OF JUNE 14, 2001, THE TWO FORMER BLUE ASH OFFICERS, DAVE HOFFMAN AND JOE SCHURE STATED TO MR. STRIGARI AND MR. DETERMAN WHILE IN THE LOCKER ROOM CHANGING THEIR CLOTHES, A CONVERSATION AROSE FROM ANOTHER OFFICER "CONCERNING THE SEARCH AND FINDING OF THE PENDANT," STATING OFFICER STOKES SEARCHED JONE'S CAR <u>PRIOR</u> TO GETTING A WARRANT. HE FOUND THE PENDANT AND THEN DRAFTED THE SEARCH WARRANT. AFTER BACKING AWAY FROM FINDING THE <u>PENDANT</u> FOR ANOTHER OFFICER TO FIND.

    5. NOW IF THE ABOVE AFFIDAVITS CANNOT BE DONE FOR SOME REASON OR ANOTHER, THEN I AM REQUESTING THE **FOLLOWING PEOPLE NAMED** BE **ADDED** TO THE LIST OF **WITNESSES** TO APPEAR BEFORE THE **COURT** ON MY BEHALF ARE **THRU-SATTELITE T.V.: #1. MR. LOUIS STRIGARI, #2. MR. JOSEPH R. DETERMAN, #3. DAVE HOFFMAN AND JOE SCHURE.**

    AS I BRING THIS LETTER TO AN END, THANK YOU FOR YOUR TIME AND YOUR CONCERN AND I AM LOOKING FORWARD TO HEAR BACK FROM EITHER ONE YOU OR MR. MONTA SOON CONCERNING THE MATTER I HAVE DISCUSSED WITHIN THIS LETTER.

                                                              SINCERELY,

                                                              */s/ Elwood H. Jones*

                                                 MR. ELWOOD H. JONES, JR.

| Det. Pete Alderucci | HAMILTON COUNTY SHERIFF<br>INVESTIGATION REPORT | 24 Hr. Report |

| Rhoda Nathan | Embassy Suites, Reed-Hartman Hwy |
|---|---|
| Offense No.    Complainant | *Address |
| Blue Ash Homicide Investigation | Sep. 3, 1994; 1130 hrs |
| Type of Offense or Investigation | Date of Offense or Incident |

—Details Of Investigation—

The female victim has already been removed to the hospital on my arrival. Dr. Cleveland responded to the scene, and he is requesting a Homicide Unit from the Sheriff's Department, and he also requested that I bring the Omnichrome forensic light for some type of work to be done there. I am at the Embassy Suites in Blue Ash, Room 237. I was called here by Det. Wesseler at the request of Blue Ash and Dr. Cleveland. I arrived here at approximately 12:30. Also on the scene are Dets. Burdick and Bray from Blue Ash P. D.

What we have is one of the suites, which consists of a livingroom, as you walk in, which is also a bedroom. As you enter the room, there is a TV to the right and a triangular table. Beyond that, over to the left, is a couch that opens into a bed. Next to that in the left corner of the room is a chair. Between the couch and the chair is a small rectangular table with a telephone on it. Also, in this front room is a bar area. Going toward the back you have the bathroom to the right, and then straight back is another bedroom with closet space and a TV in there and sliding glass doors that lead out onto a porch. The sliding glass doors are locked from the inside. Back in the livingroom about seven feet in, just beyond the front of the TV, are blood stains on the floor. There was also a human tooth lying on the floor. The occupants of this room are a man and woman, couple, and then another female, who we believe is 67 years old. She is the deceased victim. The body was taken by the squad to the hospital where she was pronounce dead.

The victim was found by the other occupants of this room, who had left at approximately 7:30 a.m. and returned at 8 o'clock to find her. She was found lying on her back, naked, spread eagle, with blood all over her face, lying by the TV with her feet towards the door. Dr. Cleveland came to the scene after the victim was worked on by hospital personnel who were with their group. These people were all from the New York area. They are here for a bar mitzvah of a family member. She was worked on by the squad people. We understand that she has multiple fractures of her jaw, where the bones actually came through the mouth, and a tooth was also knocked out. We also have blood on the top sheet of the hide-a-bed. This is being collected at this time by Dets. Burdick and Bray. We have blood stains on the TV screen, on the walls, all of which have been photographed and cataloged by Blue Ash detectives. There are blood stain shoe prints on the white tile floor in the bathroom. We believe, at this time, that they are from some of the hospital people who were attending to the victim. There is a pair of black panties and a flowered nightgown on the toilet seat. The lid is down, and they are on top of the lid. There are white hotel towels on the tank of the toilet. In the bathroom, there are a lot of toiletry articles on the sink.

Det. Burdick has photographed the entire room. I have taken some Polaroid one-to-one photographs of the footprints on the floor of the bathroom and also of the tooth that was lying on the floor. This has been collected by me and placed in a brown manila envelope. I have gone around the room with the Omnichrome forensic light looking for any other trace evidence. There is no evidence of semen stains anyplace on the bed or on the floor. One other blood stain found is on the boxsprings of the hide-a-bed. There are some smeared blood stains as you look at the bed from the foot end, at the left foot end of the bed. These will also be photographed by Det. Burdick, and these stains will be collected by me and submitted to the Coroner's Lab.

000139

Page 2

I will be collecting all the blood stains to see if they belong to the victim. One other blood stain found is on the curtain, the right corner of the curtain, about 3 feet up, just about level with the doorknob, right by the door leading out into the hallway of the Embassy Suites. I have recorded the collected blood stains from various locations. They start with #6 because of other articles of evidence labeled #1 through #5, collected by Dets. Bray and Burdick.

#6 blood sample is from the mattress support pad. All of these are collected by me with the initials "PJA" and today's date, 9/3/94, and the time collected on each envelope.

#7 is from the TV screen in the livingroom.

#8 is from the large triangular table in the livingroom.

#9 is from the north wall underneath the table, 3" from the floor.

#10 is from the north wall 4 1/2" from the floor.

#11 is the large stain on the carpet in front of the TV in the livingroom.

#12 is from a pink box of candy mints. It resembles a Chinese carryout type box. There appears to be a blood stain on the corner of that box. We are taking the whole box.

#13 was collected by me, and it consists of a piece of the curtain. I cut out a square with a suspected blood stain on it. This was right by the door handle of the door leading into the livingroom of the suite.

The time is now 1512 hours. I have just lifted several palm prints and a fingerprint off the large triangular table in the livingroom, most of it on the front right leading edge of the table.

The time is now 1550, and I have finished dusting what we believe is everything that needs to be dusted for prints. The only major prints we discovered were on the large triangular table. I've also dusted the bathroom floor for foot prints. We have not come up with any new ones or anything significant. The door frame leading into the bathroom has also been dusted.

The things we've noted that are puzzling to us if this is a homicide with robbery as a motive, we see several ladies' purses and wallets in both rooms of this suite, and none of them appear to have been gone through or ransacked in any way. We have found large quantities of money in some of the purses as well as jewelry lying around. There does not appear to be any ransacking in either of the rooms, whatsoever. We have also found several blood stains on a brown blanket, which at one time was on the hide-a-bed in the livingroom of the suite. This will be submitted to the Coroner's Lab.

The time is now 1740. We have been on the phone with the Coroner, and we have an apparent homicide. The Coroner stated the victim suffered at least ten broken ribs, a fractured skull and jaw and other injuries, as if she were beaten. We are enhancing our fingerprint work. We are processing all doors and frames, every surface we can find and print. So far, we have not come up with anything new.

According to the two sons of the victim, who just arrived from New York and New Jersey, state that she always wore a gold necklace, and they described the items that were on the necklace, and the Coroner's Office states that she was not wearing this necklace now although she is wearing two rings. We will be staying on the scene, and this room will be secured after we leave until further notice.

000110

**Page 3**

The time is 1812 hours, and we are leaving the Embassy Suites. The room has been sealed, and there will be an officer staying there around the clock. We are going to Blue Ash PD to interview the two people who were staying in the room with the victim. They are back from the bar mitzvah and waiting for us at the PD.

000399