IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON, OHIO

ELWOOD H. JONES

    Petitioner

v.

MARGARET BAGLEY, Warden,

    Respondent.

Case No. 1:01-cv-564

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

**Elwood H. Jones's Memorandum in Opposition to
First Motion for Discovery, titled Motion for
Appropriate Relief (Dkt. 94)**

*Introduction*

This is a response to the Warden's discovery motion. The Warden has not formally requested the opportunity to conduct discovery outside of the Court's deadlines. The Warden has asked for "appropriate" documents from the defense trial and appellate files. Complying with the Warden's broad discovery requires considerable time and effort of Petitioner's counsel. Petitioner also concerns about discovery. There are still documents which the Government has failed to produce.

The Warden's motion goes far beyond the normal discovery rules in terms of breadth and imprecision. It has long been held that, "there is no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions . . . of [the Fed. Rules of Civil Procedure."[1] This principal continues to be applied under present law.[2] In *Bracy* the Court left open to each court the ability to fashion discovery orders as law and justice require. Upon a showing of good

---

[1] Harris v. Nelson, 394 U.S. 286, 295 (1969).
[2] Bracy v. Gramley, 520 U.S. 899 (1977).

cause discovery orders may issue.[3] Good cause and the interests of justice are the only allowable basis for such orders. Nowhere is there authority to go beyond what is allowed under Rule 26 of the Federal Rules of Civil Procedure or to exceed the breadth of a waiver based on a claim of ineffective assistance of counsel as it is defined by that claim. Here the Warden has asked us to go through the files and provide anything that they think is "appropriate." This is far beyond anything covered in the Rules of Civil Procedure.

**A. Discovery history.**

This case has been pending since 2001. Under HAB. R. 6, the Petitioner sought discovery five years ago.[4] The Court granted the motion.[5] The Warden did not seek any discovery in 2002, 2003, or 2004. In July 2005, this Court set a scheduling order. "Warden shall file her motion for discovery not later than the date on which she files her memorandum in response to Petitioner's motion for discovery." Still the Warden made no request. On September 21, 2005, the Warden filed her response but did not filed nothing more. Petitioner took the deposition of the two trial-prosecutors[6] and the two trial-lawyers.[7] When given an opportunity to examine defense counsel, the Warden did not inquire about files and information gathered during the trial preparation. Instead the Warden's cross-examination primarily on the pendant with Sands and Adams[8] and somewhat on the Embassy Suites employees with Adams.[9]

---

[3] RULE 6 OF THE RULES GOVERNING § 2254 CASES.
[4] Dkt. 20.
[5] Dkt. 24.
[6] Mark Piepmeier and Seth Tieger (February 1, 2006).
[7] Julius F. Sanks (March 7, 2006) and Cathy Adams (March 14, 2006).
[8] Sanks deposition, pp. 45-53; Adams deposition, pp. 62-68.
[9] Adams deposition, pp. 69-72

Nothing further happened until this Court ordered a hearing. During February, there were informal discussions about discovery.

**B. Problems.**

Counsel for the parties discussed two issues: the origins of the Exhibits 2A and 2B, used in the depositions taken by present counsel, and access to the defense trial and appellate files. The two exhibits were used in the depositions and are the documents detailing the victim's positive Hepatitis B status.

**1. Problems of Exhibits 2A and 2B**

Petitioner's counsel were under the impression that Exs. 2A and 2B, a copy of a report from the MRL laboratory on the victim in his complaints about his earlier counsel in this case, were produced by the Warden in the course of this litigation. Since the discussion initiated by the Warden's counsel, Petitioner's counsel have discussed the matter with Petitioner and the trail-investigator, Joseph Determan. Mr. Determan remained interested in the case long after the convcition. The most likely scenario is that the exhibit was obtained by Mr. Determan and forwarded directly to Petitioner. While Mr. Determan has no direct memory of getting the document from the Coroner's office, he concedes that he could have gotten directly from the Coroner and sent it to Mr. Jones without discussing the matter which any of the attorneys. Exs. 2A and 2B first appeared when Mr. Jones presented them in support of his complaints against his earlier counsel in this case.[10]

Exs 2A and 2B were first used in the deposition of the lead prosecutor in February 2006.[11] The documents without the Bates stamps was not in the files

---

[10] Exhibit G, Dkt. 53.
[11] Piepmeier Deposition, pp. 38-42

of the Blue Ash Police Department, the Hamilton County Prosecutor, or the Hamilton County Coroner, files produced by the Warden after the filing of this action. The Warden's counsel inquired about the origins of this document.

The importance of Exs. 2A and 2B to the defense involves not only their content but their very existence; these are documents that have not been turned over, documents relating to Mr. Jones's case in the possession of those that prepared the case for trial which have not been turned over previously as ordered. In addition there is at least one other area of concern about missing documents; Mr. Jones continues to have concerns about the initial September 3, 1994 interviews of the victim's sons, interviews conducted just after they arrived in Cincinnati. The records of these first interviews have not turned over.[12]

Assuming that the Court grants the motion to reopen discovery, we anticipate a motion to require the Warden to search for these two documents, plus any other documents meeting the *Brady* criteria. The Petitioner was entitled to these files at trial and has been seeking these files ever since. This is not a new discovery motion but an obligation of continuing discovery on the part of the Warden.

2. **Access to Defense files**

The second issue is access to the defendant's trial and appellate file. Although the Warden asserts that these files were delivered to present defense counsel, they were delivered as much as a decade ago to the Assistant Public Defender working on the case. The Warden has shown no interest in securing information from Petitioner about his trial file until after the decision to hold a hearing. Until recently, it has been the Warden's position that discovery and

---

[12] Dkt. 93.

hearings are unnecessary. Discovery is usually covered by HAB. R. 6. This requires a motion and approval of the specific discovery sought.

The Warden has asserted that we received the defense trial files from the trial attorneys. This is incorrect. We received the copies of the files when we obtained Mr. Owen's files shortly after being appointed. We later received the original files from the Ohio Public Defender's Office. From the conversations with prior counsel, we believe that the trial files were received by the Public Defender during the initial investigation for the state post-conviction proceedings. The particular attorney who did the leg work on the state post-conviction proceeding. left the Public Defender's Office around 2000. The defense trial files were not used in any subsequent proceedings either in this Court or in the state court post-conviction proceedings. They consist of approximately 3,500 pages of information. We believe that they remain in essentially the same condition as when they were turned over to the Public Defender Office, and have not indexed or systematically analyzed them.

The Warden has asked us to both frame his discovery request and then comply with what we think that the Warden wants or is entitled to. The Civil Rules do not provide for such discovery at this stage. Once the scope of the discovery request has been clarified, it will take several days to review these records, make an index, and determine which documents should be turned over to the Warden. We have not budgeted this time into our work to prepare for the hearing. Mr. Monta still has the six-week trial prosecuted by the Attorney General on various counts of Engaging in a Pattern of Corrupt Activity, Money Laundering and Complicity to violate OHIO REV. CODE § 2915.09 and

Theft. Furthermore, because we are replacement counsel, we have limited funds to proceed.

At best, the Court should give the Warden the opportunity to file a more definitive discovery request before proceeding further.

### *Conclusion*

Thus, this Court should deny the motion and reinforce the duty to comply with the earlier discovery. If the Court does grant the motion to reopen discovery, then the matter should be set for a pretrial conference on scheduling discovery motions pursuant to HAB. R. 6, and extend the time for complying with the Court's recent order in this matter.

Respectfully Submitted,

*s/Michael L. Monta*
MICHAEL L. MONTA (0032777)
Trial Counsel
3625 Old Salem Road
Dayton, Ohio 45415-1427
(937) 890-6921

*s/Gary W. Crim*
GARY W. CRIM (0020252)
943 Manhattan Avenue
Dayton, Ohio 45406-5141
(937) 276-5770

Attorneys for Elwood H. Jones

**Certificate of Service**

I, Gary W. Crim, counsel for Elwood H. Jones, certify that on March 21, 2007, I served a copy of this Motion for Evidentiary Hearing on Counsel for the Warden, Matthew C Hellman and Heather L. Gosselin, by emailing it to mhellman@ag.state.oh.us; hgosselin@ag.state.oh.us.

*s/Gary W. Crim*
GARY W. CRIM