**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**ELWOOD H. JONES**

              Petitioner,             Case No. 01-CV-564

              v.                 JUDGE ROSE

**MARGARET A. BAGLEY, Warden**     MAGISTRATE JUDGE MERZ

            Respondent.

---

**RESPONDENT'S POST-EVIDENTIARY HEARING BRIEF**

---

      Respondent Margaret A. Bagley, Warden, respectfully submits the following post evidentiary hearing brief to aid the Court in its consideration of matters and issues raised at the hearing.

Respectfully submitted,

MARC DANN
Ohio Attorney General

s/Sarah A. Hadacek
**SARAH A. HADACEK* (0080621)**
    *Lead and Trial Counsel*
Assistant Attorney General
**STEPHEN E. MAHER (0032279)**
Assistant Attorney General
Capital Crimes Unit
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; Fax (614) 728-8600
Emails:  shadacek@ag.state.oh.us
        smaher@ag.state.oh.us

## I.    OVERVIEW

On October 16, 2006, Jones motioned the Court for an evidentiary hearing.  *See* Motion for Hearing (R. 85).   Respondent filed her response in opposition to Jones's motion on November 6, 2006.  *See* Response in Opposition (R. 86).   On December 8, 2006, the Court granted Jones's motion.  *See* Decision and Order (R. 88).  The Court's order limited the scope of the evidentiary hearing to "the evidence described in the Motion."  *See* Decision and Order (R. 88, p. 9).   On July 10, 2007, a telephone status conference was held.   During the status conference, upon the parties' joint request, the evidentiary hearing was reset from July 16, 2007 to September 24, 2007.   During the same status conference, Jones's attorneys stated those persons that they intended to subpoena as witnesses at the evidentiary hearing.   This list included persons not described in Jones's motion for an evidentiary hearing.  As such, on July 20, 2007, Respondent filed a motion to exclude certain witnesses from testifying at the evidentiary hearing. *See* Motion to Exclude Witnesses from Testifying at Evidentiary Hearing (R. 112).   On August 5, 2007, Jones responded to Respondent's motion (R. 120), and on August 8, 2007, the Court filed its decision and order on the motion.  *See* Decision and Order (R. 123).   Specifically, the Court amended its decision and order on Jones's motion for an evidentiary hearing (R. 88) to allow Jones to call the following persons at the hearing: Sergeant James Schaffer of the Blue Ash Police Department, and Hamilton County Assistant Prosecuting Attorneys, Mark Piepmeir, Esq. and Seth Tieger, Esq.

On September 24, 2007 and September 25, 2007, an evidentiary hearing was held.  Over the course of the two-day hearing, Jones's attorneys presented a total of three (3) witnesses; namely, Jones's expert at trial, Dr. Joseph Solomkin, and Jones's two trial attorneys, Julius

Sanks, Esq. and Catherine Adams, Esq.[1]  At the hearing, Jones's attorneys covered the following claims and "issues" with these witnesses: 1. the Pendant *Brady* "Issue," 2. the Eikenella Ineffective Assistance Of Counsel Claim, 3. the Hepatitis *Brady* Claim, 4. the Potential Witnesses *Brady* "Issue," 5. the Complaints Of Guests About Intruders *Brad*y "Issue," and 6. the Briefcase (State's Trial Exhibit 71) Ineffective Assistance of Counsel Claim.[2]  On November 14, 2007, Jones filed a Post-Hearing Traverse.[3]  *See* Amended Traverse (R. 144).  Respondent now addresses, herein, the matters and issues raised at the hearing.

The claims and "issues" which Jones presented at the evidentiary hearing were meritless upon arrival.  The testimony which Jones's witnesses offered at the hearing confirms that these claims lack merit.  Ultimately, the testimony of the above-mentioned witnesses did not add anything of value to these claims and/or "issues" which Jones has argued throughout the course of his federal habeas proceedings.  For instance, much of the testimony offered by Jones's one trial counsel, Julius Sanks, directly contradicted and discredited the testimony of Dr. Solomkin, Jones's expert at trial.  In addition, much of the testimony that Sanks offered on direct examination did not support any of, and was in fact harmful to, Jones's claims.  Further, much of

---

[1] Respondent notes that Jones's attorneys did not call Sergeant James Schaffer, Mark Piepmeir, Esq. or Seth Tieger, Esq. as witnesses at the evidentiary hearing, in spite of the fact that the Court amended its decision and order (R. 123) to allow them to do so.  Presumably, Jones's attorneys thought that calling these persons at the hearing would not add anything of value to Jones's claim.

[2] Respondent notes that she will refer to several of Jones's claims as *Brady* "issues," rather than *Brady* claims.  As will be fully explained *infra*, Jones has not exhausted these particular *Brady* claims in the State courts nor has he raised them in his Petition (R. 15).  As such, these claims are technically *Brady* "issues."  Respondent further notes that, while Jones raised the Hepatitis *Brady* Claim in his Petition (R. 15), he has not presented it to the State courts.  Thus, it too has not been exhausted by Jones in the State courts.

[3] Respondent submits that the bulk of Jones's Post-Hearing Traverse (R. 144) is a verbatim recitation of the allegations he raised in his Petition (R.15) and/or his Amended and Corrected Traverse (R. 79).  Thus, Respondent does not re-address these allegations, herein, but rather relies upon the arguments raised in her Return of Writ (R. 16), and/or her Sur-Reply (R. 82).  The additional argument which Jones raises in his Post-Hearing Traverse (R. 144) directly pertains to the matters and issues raised at the evidentiary hearing.  **As such, Respondent collectively addresses, herein, the additional argument which Jones raises in his Post-Hearing Traverse (R. 144), along with the matters and issues raised at the hearing.**

the testimony offered by Jones's other trial counsel, Catherine Adams, on direct examination, was cumulative of Sanks's testimony. Moreover, certain testimony offered by Adams on cross-examination was disingenuous in light of the fact that she stated that she would have called the victim's son at trial even though this would have subjected him to cross-examination by the State on the pendant. *See* Evidentiary Hearing Transcript, September 25, 2007, p. 284, lines 16-25; p. 285, lines 1-3. Over all, Jones continues to fail to present any evidence which is sufficient to show that his claims and "issues" have merit. There is sufficient evidence in the existing record to prove that Jones's present claims and "issues" are meritless.

## II.     THE *BRADY* CLAIMS AND "ISSUES" PRESENTED BY JONES AT THE EVIDENTIARY HEARING

At the evidentiary hearing, Jones's attorneys covered the following *Brady* claims and "issues" with Jones's witnesses: 1. the Pendant *Brady* "Issue," 2. the Hepatitis *Brady* Claim, 3. the Potential Witnesses *Brady* "Issue," and 4. the Complaints Of Guests About Intruders *Brady* "Issue." As will be fully explained *infra*, Jones fails to present any evidence which is sufficient to show that these *Brady* claims and "issues" have merit. In fact, much of the testimony offered by Jones's witnesses at the hearing is actually harmful to Jones's claims. There is sufficient evidence in the existing record to prove that Jones's *Brady* claims and "issues" are meritless.

### 1.     Jones Fails To Present Any Evidence Which Is Sufficient To Show That His Pendant *Brady* "Issue" Has Merit.

At the evidentiary hearing, Jones offered the testimony of his two trial attorneys, Julius Sanks, Esq. and Catherine Adams, Esq., to support his argument that certain inconsistent descriptions of the pendant and a statement that it had not been "custom crafted" which are contained in the files of the Blue Ash Police Department are *Brady* material. As will be fully

explained *infra*, this testimony offered by Jones's witnesses, coupled with the evidence in the existing record, is not sufficient to show that Jones's Pendant *Brandy* "issue" has any merit.

A.    **Jones has not exhausted his Pendant *Brady* "Issue" in the State courts nor has he raised it in his Petition (R. 15).**

Initially, Respondent notes that Jones has not presented his Pendant *Brady* "Issue" to the State courts. As such, Jones has not exhausted this *Brady* "issue." This Court may not grant a petition based on an unexhausted claim. 28 U.S.C. § 28 U.S.C. 2254(b)(1)(A). Further, State corrective process is available to Jones to exhaust this particular claim in the State courts, i.e., in the form of a successive post-conviction petition or a motion for new trial. 28 U.S.C. § 2254(b)(1)(B). Even though this Court may not *grant* a petition based on an unexhausted claim, it is welcome to *deny* a petition based on an unexhausted claim which lacks merit. 28 U.S.C. § 2254(b)(2). And, as will be explained *infra*, Jones's Pendant *Brady* "Issue" lacks merit. Also worth noting is the fact that Jones did not raise his Pendant *Brady* "Issue" in his Petition (R. 15).[4] Further, even if Jones's Petition (R. 15) was amended to add this claim, it would be time barred under the one-year statue of limitations. Therefore, this *Brady* "issue" is not properly before the Court for adjudication.

B.    **Jones fails to show that either the inconsistent descriptions of the pendant or Ira Nathan's statement that the pendant had not been "custom crafted" are *Brady* material.**

At the evidentiary hearing, Jones's two trial attorneys, Julius Sanks, Esq. and Catherine Adams, Esq. both stated that, in regards to the pendant, they considered the following to be

---

[4] Respondent notes that on November 13, 2007, Jones filed a Motion to Amend Petition to add this *Brady* "issue." *See* Motion to Amend Petition (R. 142). As Jones has not exhausted this issue in the State courts, Respondent filed her Opposition to Motion to Amend Petition on November 14, 2007. *See* Opposition to Motion to Amend Petition on Grounds of Exhaustion (R. 145).

*Brady* material: 1. certain inconsistent descriptions of the pendant contained in the files of the Blue Ash Police Department, and 2. a statement by Ira Nathan that the pendant had not been "custom crafted" contained in the files of the Blue Ash Police Department. However, Jones fails to present evidence which is sufficient to show that the inconsistent descriptions of the pendant and Ira Nathan's statement that the pendant had not been "custom crafted" are in fact *Brady* material.

First and foremost, Jones's trial attorneys knew or should have known about the inconsistent descriptions of the pendant, prior to trial. At the evidentiary hearing, both of Jones's trial attorneys agreed that they knew about the following inconsistent description of the pendant: the discrepancy in the descriptions of the pendant in the search warrant affidavit and in the search warrant return. *See* Evidentiary Hearing Transcript, September 25, 2007, pp. 82-83, 189-190. Attorney Adams conceded that she did not follow up with the Blue Ash Police Department on this discrepancy. *See* Evidentiary Hearing Transcript, September 25, 2007, p. 281, lines 1-6. Further, Attorney Adams stated that, prior to trial, the prosecution told her that they received a description of the pendant from the victim's family, the Nathans. *See* Evidentiary Hearing Transcript, September 25, 2007, p. 196, lines 11-17. In light of the fact that, prior to trial, Adams 1. knew of an inconsistent description of the pendant, and 2. was told that the Nathan family gave the prosecution a description of it, she was well equipped to look into the matter on her own. In fact, Attorney Adams said that she contacted the Nathan family, prior to trial. *See* Evidentiary Hearing Transcript, September 25, 2007, p. 205, lines 2-12.

Moreover, Jones fails to show that either the inconsistent descriptions of the pendant or Ira Nathan's statement that the pendant had not been "custom crafted" exculpate him as the perpetrator of the murder of Rhoda Nathan.  In light of the basic evidence presented at trial in regards to the pendant, any inconsistent description of the pendant and/or any statement that the pendant had not been not custom-made simply would not have exculpated Jones as the perpetrator of the murder of Rhoda Nathan.  The basic evidence presented at trial in regards to the pendant is as follows: 1. the unique look of the pendant; 2. evidence that the pendant was found in Jones's toolbox; and 3. the pendant was identified at trial as belonging to the victim, Rhoda Nathan, by two witnesses and by a photograph of Rhoda wearing the pendant. Those documents, which were allegedly not turned over to Jones's trial counsel during discovery, do not change the evidence presented at trial.

 If anything, the inconsistent descriptions of the pendant are an indication that the pendant is difficult to describe.  Indeed, Jones's own trial attorneys had difficulties describing the pendant at the evidentiary hearing.  *See* Evidentiary Hearing Transcript, September 25, 2007, pp. 104, 195-196.  Attorney Sanks even conceded that descriptions are different than identifications. *See* Evidentiary Hearing Transcript, September 25, 2007, p. 166, lines 6-13.  Further, a single statement by Ira Nathan that the pendant had not been "custom crafted," does not mean that the pendant was actually mass-produced.  Jones can only speculate otherwise.  Moreover, even assuming that the pendant had not been "custom crafted," this fact does not change its unique appearance.  Indeed, at the hearing, Attorney Sanks conceded that the pendant looks "unusual." *See* Evidentiary Hearing Transcript, September 25, 2007, p. 73, lines 2-7.  As such, the inconsistent descriptions of the pendant and Ira Nathan's statement that the pendant had not been

"custom crafted" certainly do not exculpate Jones as the perpetrator of the murder of Rhoda Nathan.

Therefore, Jones fails to show that the inconsistent descriptions of the pendant and Ira Nathan's statement that the pendant had not been "custom crafted" are *Brady* material.

> **C.    Even if the inconsistent descriptions of the pendant and/or Ira Nathan's statement that the pendant had not been "custom crafted" can be considered *Brady* material, Jones fails to show that they would have been material to the outcome of the trial.**

Jones also fails to present evidence which is sufficient to show that the inconsistent descriptions of the pendant and/or Ira Nathan's statement that the pendant had not been "custom crafted" would have been material to the outcome of his trial.  Simply put, Jones fails to show that, had his trial attorneys known about the inconsistent descriptions of the pendant and/or Ira Nathan's statement that the pendent had not been "custom crafted," the outcome of his trial would have been different.  In order to demonstrate that this alleged *Brady* material would have been material to the outcome of his trial, Jones must clear the following three (3) major hurdles: 1. the trial court's subpoena power was limited in regards to the victim's family members; 2. Jones's trial attorneys could <u>not</u> have called the Blue Ash Police Department reporting officers (R/Os) who detailed the documents which contain the inconsistent descriptions of the pendant and Ira Nathan's statement that the pendant had not been "custom crafted;" and 3. Jones would <u>not</u> have benefited from his trial attorneys calling the victim, Rhoda Nathan's, son, Valentine Nathan, at trial.  Jones completely fails to address these matters in his Post-Hearing Traverse (R. 144), and thus, he is presumably unable to demonstrate that he is able to clear the above-mentioned hurdles.  More importantly, the evidence in the existing record, coupled with the

testimony offered by Jones's witnesses at the evidentiary hearing, is sufficient to show that Jones is in fact unable to overcome them.

First, the subpoena power of the trial court in the instant case was limited in regards to the Nathan family. Specifically, the trial court could not have subpoenaed any of the Nathan family members or Rhoda Nathan's friend, Elaine Shub, as they were all living outside the State of Ohio at the time of trial. As such, these persons would have had to come to court voluntarily. And, while Elke Nathan and Elaine Shub did come to court voluntarily to testify for the State, it is unlikely that the other Nathan family members would have done the same for the defense. Jones can only speculate otherwise.

Second, Jones's trial attorneys could <u>not</u> have called the Blue Ash Police Department reporting officers (R/Os) who detailed the documents which contain the inconsistent descriptions of the pendant and Ira Nathan's statement that the pendant had not been "custom crafted." Many of these documents contain hearsay and/or double hearsay, and do not fall under any hearsay exceptions. As such, these documents would not be admissible at trial, nor would the R/Os have been allowed to testify as to their contents.

Third, Jones would <u>not</u> have benefited from his trial attorneys calling the victim, Rhoda Nathan's, son, Valentine Nathan, at trial. Had Jones's trial counsel actually done so, Valentine would have been subject to cross-examination by the State on the pendant. And, had the State cross-examined Valentine on the pendant, he would have undoubtedly identified it as belonging to his mother, Rhoda Nathan. Hence, calling Valentine Nathan as a witness would have been a critical mistake by the defense. In fact, had Jones's trial counsel actually called Valentine as a witness, Jones's appellate counsel would have likely argued on appeal that Jones's trial counsels' performance was deficient in this respect. Indeed, at the evidentiary hearing, Attorney Sanks

could only speculate as to whether he would have called Valentine Nathan at trial. *See* Evidentiary Hearing Transcript for September 25, 2007, p. 167, lines 11-17. Sanks agreed that he would not have called Valentine at trial if Valentine could say that his mother's pendant was one of a kind, prior to trial. *See* Evidentiary Hearing Transcript for September 25, 2007, p. 171, lines 6-9. Further, given the above-mentioned consequences of calling Valentine Nathan as a witness, Attorney Adams's statement at the evidentiary hearing that she would have actually called him as a witness is disingenuous. *See* Evidentiary Hearing Transcript, September 25, 2007, p. 284, lines 16-25; p. 285, lines 1-3.

Finally, Respondent notes that, in Jones's Post-Hearing Traverse, he quotes portions of the Evidentiary Hearing Transcript in regards to these matters. *See* Amended Traverse (R. 144, pp. 22-25, 85-87). These block quotes from the hearing do not add anything of value to Jones's Pendant *Brady* "Issue." Respondent respectfully refers the Court to Attachments A and B to Respondent's Post-Evidentiary Hearing Brief – indexes of the Evidentiary Hearing Transcript for Julius Sanks, Esq. and Catherine Adams, Esq.

Therefore, Jones fails to show that the inconsistent descriptions of the pendant and/or Ira Nathan's statement that the pendant had not been "custom crafted" would have been material to the outcome of his trial.

### 2. Jones Fails To Present Any Evidence Which Is Sufficient To Show That His Hepatitis *Brady* Claim Has Merit.

At the evidentiary hearing, Jones offered the testimony of his expert at trial, Dr. Joseph Solomkin, and his trial attorney, Julius Sanks, Esq., to support his argument that certain reports contained in the Coroner's file, which indicate that the victim, Rhoda Nathan, tested positive for hepatitis, and that Jones tested negative for hepatitis, to be *Brady* material. As will be fully

explained *infra*, this testimony offered by Jones's witnesses, coupled with the evidence in the existing record, is not sufficient to show that Jones's Hepatitis *Brady* Claim has any merit.

### A.    Jones has not exhausted his Hepatitis *Brady* Claim in the State courts.

Initially, Respondent notes that, while Jones raised his Hepatitis *Brady* Claim in his Petition (R. 15), he has not presented it to the State courts. As such, Jones has not exhausted this *Brady* claim. This Court may not grant a petition based on an unexhausted claim. 28 U.S.C. § 28 U.S.C. 2254(b)(1)(A). Further, State corrective process is available to Jones to exhaust this particular claim in the State courts, i.e., in the form of a successive post-conviction petition or a motion for new trial. 28 U.S.C. § 2254(b)(1)(B). Even though this Court may not *grant* a petition based on an unexhausted claim, it is welcome to *deny* a petition based on an unexhausted claim which lacks merit. 28 U.S.C. § 2254(b)(2). And, as will be explained *infra*, Jones's Hepatitis *Brady* Claim lacks merit. As a result, while Respondent does not waive the exhaustion requirement, she submits that this Court may deny Jones's Petition (R. 15) notwithstanding the unexhausted Hepatitis *Brady* Claim.

### B.    Jones fails to show that the reports which indicate that the victim, Rhoda Nathan, tested positive for hepatitis, and that Jones tested negative for hepatitis are *Brady* material.

At the evidentiary hearing, Jones's trial attorney, Julius Sanks, Esq. stated that he considered reports contained in the Coroner's file, which indicate that the victim, Rhoda Nathan, tested positive for hepatitis, and that Jones tested negative for hepatitis, to be *Brady* material. However, Jones fails to present evidence which is sufficient to show that these reports are in fact *Brady* material.

First and foremost, Jones's expert at trial, Dr. Joseph Solomkin, knew or should have known about all matters of infectious disease testing, including hepatitis, prior to trial. For instance, the Coroner's report shows that the victim, Rhoda Nathan, tested positive for hepatitis. *See* CD titled *Documents submitted pursuant to Petitioner's Motion to Expand the Record, Dkt. 126, granted September 14, 2007*, Expansion Documents, CoronerFile.pdf, p. 132; *see also* Elwood H. Jones's Hearing Exhibits, Exhibit 2B. As the Coroner was a witness for the State and testified at trial (Tr. Vol. XVI, pp. 1379-1417), Dr. Solomkin had access to the Coroner's report prior to trial. As a result, Dr. Solomkin knew or should have known that Rhoda Nathan tested positive for hepatitis. At the evidentiary hearing, Jones's attorneys presented no evidence that Dr. Solomkin made additional inquiries on the Coroner's Report. Thus, Respondent is left to assume that Dr. Solomkin thought that such a line of inquiry would not be fruitful to the defense.

Moreover, Dr. Solomkin stated at the evidentiary hearing that, prior to trial, he knew that the purpose of his deposition had do to with the issue of whether the Eikenella bacteria that was found in Jones's hand was conclusive evidence that Jones's injury was a human bite wound. *See* Evidentiary Hearing Transcript, September 24, 2007, p. 11, lines 21-25; p. 12, lines 1-7. As such, Dr. Solomkin knew about the State's "fight-bite" theory, prior to trial. And, as an expert in infectious diseases, Dr. Solomkin knew or should have known that a bite wound is a significant exposure to infectious agents. As a result, Dr. Solomkin also knew or should have known that routine testing is done for significant exposures. At the evidentiary hearing, Jones's attorneys presented no evidence that Dr. Solomkin made additional inquiries on Jones's potential exposure to infectious agents other than and/or in addition to Eikenella. Thus, Respondent is left to assume that Dr. Solomkin thought that such a line of inquiry would not be fruitful to the defense.

Therefore, Jones fails to show that the reports which indicate that the victim, Rhoda Nathan, tested positive for hepatitis, and that Jones tested negative for hepatitis are *Brady* material.

> **C.** **Even if the reports which indicate that the victim, Rhoda Nathan, tested positive for Hepatitis, and that Jones tested negative for Hepatitis can be considered *Brady* material, Jones fails to show that they would have been material to the outcome of the trial.**

Jones also fails to present evidence which is sufficient to show that the reports which indicate that the victim, Rhoda Nathan, tested positive for hepatitis, and that Jones tested negative for hepatitis would have been material to the outcome of his trial. Simply put, Jones fails to show that, had his trial attorneys known about these reports, the outcome of his trial would have been different. In order to demonstrate that this alleged *Brady* material would have been material to the outcome of his trial, Jones must clear the following two (2) major hurdles: 1. Jones's trial attorneys could not have legitimately refuted the State's "fight-bite" theory by arguing that, if Jones contracted Eikenella from the victim, Rhoda Nathan, he would have also contracted hepatitis from her; and 2. the jury did not focus on the medical evidence presented at trial. The evidence in the existing record, coupled with the testimony offered by Jones's witnesses at the evidentiary hearing, is sufficient to show that Jones is in fact unable to clear these hurdles.

First, Jones's trial attorneys could not have legitimately refuted the State's "fight-bite" theory by arguing that, if Jones contracted Eikenella from the victim, Rhoda Nathan, he would have also contracted hepatitis from her. Essentially, Jones cannot show that hepatitis would have transferred from Rhoda Nathan to him. A person does not contract every infectious agent that he

or she is exposed to, including hepatitis. As such, Jones's trial attorneys could not have properly argued otherwise. However, Jones's trial attorneys did in fact properly refute the State's "fight-bite" theory by exposing and emphasizing the State's missing piece of evidence in regards to the Eikenella issue. Specifically, Attorney Adams legitimately pointed out to the jury during her guilt-phase closing argument that it is not known whether Rhoda Nathan had Eikenella because she was never tested for it. *See* Trial Transcript Vol. XIX, p. 1777. Thus, Jones's trial attorneys effectively refuted the State's "fight-bite" theory regardless of the fact that they did not argue that, if Jones contracted Eikenella from Rhoda, he would have also contracted hepatitis from her.

Second, in light of the fact that Jones's trial attorneys legitimately pointed out to the jury that it is not known whether Rhoda Nathan had Eikenella because she was never tested for it, the jury clearly did not focus on the medical evidence presented at trial. Rather, the jury presumably focused on the State's other key piece of evidence, the pendant, when it chose to not acquit Jones and find him guilty. Thus, the jury certainly would not have been persuaded by the argument that, if Jones contracted Eikenella from Rhoda, he would have also contracted hepatitis from her, when it was not persuaded by the fact that it is not known whether Rhoda had Eikenella because she was never tested for it.

Finally, Respondent notes that, in Jones's Post-Hearing Traverse, he quotes portions of the Evidentiary Hearing Transcript in regards to these matters. *See* Amended Traverse (R. 144, pp. 25-26). These block quotes from the hearing do not add anything of value to Jones's Hepatitis *Brady* Claim. Respondent respectfully refers the Court to Attachments A and C to Respondent's Post-Evidentiary Hearing Brief - indexes of the Evidentiary Hearing Transcripts for Julius Sanks, Esq. and Dr. Joseph Solomkin.

- 14 -

Therefore, Jones fails to show that the reports which indicate that the victim, Rhoda Nathan, tested positive for hepatitis, and that Jones tested negative for hepatitis would have been material to the outcome of his trial.

### 3.    The Balance Of Jones's Other *Brady* "Issues" Fail For Many Reasons.

In addition to Jones's Pendant *Brady* "Issue," and his Hepatitis *Brady* Claim, Jones's attorneys covered the following other *Brady* "issues" with Jones's witnesses at the evidentiary hearing: 1. the Potential Witnesses *Brady* "Issue," and 2. the Complaints Of Guests About Intruders *Brad*y "Issue."   Specifically, at the evidentiary hearing, Jones's two trial attorneys, Julius Sanks, Esq. and Catherine Adams, Esq., both stated that they considered the following to be *Brady* material: 1. certain documents contained in the Blue Ash Police Department's file which allegedly indicate potential witnesses for the defense; and 2. written complaints of guests and other documents contained in the Blue Ash Police Department's file which allegedly indicate intruders at the hotel around the time of the victim, Rhoda Nathan's, death.   These other *Brady* "issues" fail for many reasons.

Initially, Respondent notes that Jones has not presented either his Potential Witnesses *Brady* "Issue" or his Complaints Of Guests About Intruders *Brady* "Issue" to the State courts. As such, Jones has not exhausted these *Brady* "issues."   This Court may not grant a petition based on an unexhausted claim. 28 U.S.C. § 28 U.S.C. 2254(b)(1)(A).  Further, State corrective process is available to Jones to exhaust these particular *Brady* "issues" in the State courts, i.e., in the form of a successive post-conviction petition or a motion for new trial. 28 U.S.C. § 2254(b)(1)(B). And, as will be explained *infra*, Jones's Potential Witnesses *Brady* "Issue" and his Complaints Of Guests About Intruders *Brady* "Issue" both lack merit.  Also worth noting is

the fact that Jones did not raise either of these claims in his Petition (R. 15).[5]  Further, even if Jones's Petition (R. 15) was amended to add his Potential Witnesses *Brady* "Issue" or his Complaints Of Guests About Intruders *Brady* "Issue", they would both be time barred under the one-year statue of limitations.  Therefore, these *Brady* "issues" are not properly before the Court for adjudication.

At any rate, the above-mentioned *Brady* "issues" are meritless.  Ultimately, Jones fails to present any evidence which is sufficient to show that the documents which the prosecution allegedly did not turn over to Jones's trial counsel during discovery are *Brady* material <u>and</u> would have been material to the outcome of his trial.  In regards to Jones's Potential Witnesses *Brady* "Issue," Jones's trial attorneys knew or should have known about these alleged potential witnesses for the defense.  In addition, the documents which allegedly indicate potential witnesses for the defense do not have the exculpatory value that Jones claims they do, nor do they undermine confidence in the outcome of the trial.  In regards to Jones's Complaints Of Guests About Intruders *Brady* "Issue," the complaints of guests and other documents which allegedly indicate intruders at the hotel around the time of Rhoda's death do not even point to "a gang operating in the hotel" (Post-Hearing Traverse, R. 144, p. 90), let alone undermine confidence in the outcome of the trial.

Therefore, Jones fails to show that the other documents which the prosecution allegedly did not turn over to Jones's trial counsel are *Brady* material <u>and</u> would have been material to the outcome of his trial.

---

[5] Respondent notes that on November 13, 2007, Jones filed a Motion to Amend Petition to add this *Brady* "issue." *See* Motion to Amend Petition (R. 142).  As Jones has not exhausted this issue in the State courts, Respondent filed her Opposition to Motion to Amend Petition on November 14, 2007.  *See* Opposition to Motion to Amend Petition on Grounds of Exhaustion (R. 145).

III.    **THE INEFFECTIVE ASSISTENCE OF COUNSEL CLAIMS PRESENTED BY JONES AT THE EVIDENTIARY HEARING**

At the evidentiary hearing, Jones's attorneys covered the following ineffective assistance of counsel claims with Jones's witnesses: 1. the Eikenella Ineffective Assistance Of Counsel Claim, and 2. the Briefcase (State's Trial Exhibit 71) Ineffective Assistance Of Counsel Claim. As will be fully explained *infra*, Jones fails to present any evidence which is sufficient to show that these ineffective assistance of counsel claims have merit. In fact, much of the testimony offered by Jones's witnesses at the hearing is actually harmful to Jones's claims. There is sufficient evidence in the existing record to prove that Jones's ineffective assistance of counsel claims are meritless.

1.    **Jones Fails To Present Sufficient Evidence To Show That His Eikenella Ineffective Assistance of Counsel Claim Has Merit.**

At the evidentiary hearing, Jones offered the testimony of his two trial attorneys, Julius Sanks, Esq. and Catherine Adams, Esq., and his expert at trial, Dr. Joseph Solomkin, to support his argument that his trial attorneys were ineffective for failing to adequately prepare Dr. Solomkin on the Eikenella issue. As will be fully explained *infra*, this testimony offered by Jones's witnesses, coupled with the evidence in the existing record, is not sufficient to show that this ineffective assistance of counsel claim has any merit.

Ultimately, the testimony offered by Jones's witnesses at the evidentiary hearing revealed that Jones's trial attorneys were certainly effective in their handling of the Eikenella issue. Indeed, Attorney Sanks testified to the following at the evidentiary hearing in regards to the Eikenella issue and his preparation of Dr. Solomkin: 1. he recognized his own limitations in regards to the Eikenella issue (Evidentiary Hearing Transcript, September 25, 2007, p. 145, lines

17-23); 2. he contacted the University of Cincinnati's Medical School and was referred to Dr. Joseph Solomkin, a touted expert in the area of infectious diseases (*Id*., p. 146, lines 4-22); 3. he contacted Dr. Solomkin and asked that he educate him on the subject of Eikenella infections (*Id*., p. 146, lines 23-25; p. 147, lines 1-12); 4. he successfully motioned the trial court for the employment of Dr. Solomkin (*Id*., p. 147, lines 13-25; p. 148, lines 1-14); and 5. he took Dr. Solomkin's deposition and presented him with intra-operative and operative reports on Jones's hand surgery (*Id*., pp. 150-156). Clearly, Jones's trial attorneys prepared Dr. Solomkin the best they could, given the circumstances.

Moreover, a look at Attorney Adams's closing argument during the guilt phase of the trial reveals that the defense understood the Eikenella issue and argued it effectively to the jury.[6] For instance, during her guilt-phase closing argument, Adams told the jury two possibilities on how Jones got the Eikenella infection: 1. food particles, or 2. cutting his hand. *See* Trial Transcript Vol. XIX, pp. 1776-1777. Adams also pointed out to the jury that it is not known whether the victim, Rhoda Nathan, had Eikenella because she was never tested for it. *See* Trial Transcript Vol. XIX, p. 1777. In addition, Adams effectively refuted the State's witness, Dr. McDonough's, "fight bite" theory on how Jones got the Eikenella infection. *See* Trial Transcript Vol. XIX, pp. 1777-1778. Further, Adams highlighted for the jury Jones's expert, Dr. Solomkin's, impressive credentials in the area of infectious diseases. *See* Trial Transcript Vol. XIX, p. 1778. Thus, Jones fails to show that his trial attorneys were deficient <u>and</u> that he was prejudiced by their alleged failure to adequately prepare Dr. Solomkin for his deposition.

Finally, Respondent notes that, in Jones's Post-Hearing Traverse, he quotes a portion of the Evidentiary Hearing Transcript in regards to these matters. *See* Amended Traverse (R. 144,

---

[6] Respondent notes that Attorney Adams read the portion of her guilt-phase closing argument which relates to the Eikenelle issue into the record at the evidentiary hearing. *See* Evidentiary Hearing Transcript, September 25, 2007, pp. 269-271.

pp. 37-39, 41, 97).  These block quotes from the hearing do not add anything of value to Jones's Eikenella Ineffective Assistance Of Counsel Claim.  Respondent respectfully refers the Court to Attachments A, B and C to Respondent's Post-Evidentiary Hearing Brief - indexes of the Evidentiary Hearing Transcripts for Julius Sanks, Esq., Catherine Adams, Esq, and Dr. Joseph Solomkin.

Therefore, Jones fails to demonstrate a *Strickland* violation.

**2.     Jones Fails to Present Sufficient Evidence To Show That His Briefcase (State's Exhibit 71) Ineffective Assistance of Counsel Claim Has Merit.**

At the evidentiary hearing, Jones offered the testimony of his two trial attorneys, Julius Sanks, Esq. and Catherine Adams, Esq., to support his argument that his trial counsel were ineffective for failing to inspect the contents of State's Trial Exhibit 71, Jones's briefcase, which was found in the trunk of Jones's car and includes items which indicate his prior criminal convictions.  As will be fully explained *infra*, this testimony offered by Jones's witnesses, coupled with the evidence in the existing record, is not sufficient to show that this ineffective assistance of counsel claim has any merit.

Initially, Respondent notes that Jones can only speculate whether the jury actually opened Jones's briefcase (State's Trial Exhibit 71) during its deliberations.  Even assuming that the jury actually opened Jones's briefcase, Jones can only speculate as to whether the jury actually reviewed the contents of the suitcase, and discovered those items which document Jones's prior criminal convictions.  Jones only offers the double-hearsay affidavit of a criminal investigator employed by the Ohio Public Defender's Office to suggest otherwise.  *See* Amended Traverse (R. 144, pp. 53-54).  Further, even assuming that the jury actually reviewed the suitcase's

contents, and discovered those items which document Jones's prior criminal convictions, this would not have been the first time that the jury heard about Jones's criminal past.

Indeed, the prosecution referenced Jones's criminal past as early as its opening statement during the guilt-phase of trial. *See* Trial Transcript Vol. XIII, pp. 825-826. Jones's one trial attorney, Catherine Adams, Esq., even referenced Jones's criminal record during the cross examination of Sergeant Bob Lilley. *See* Trial Transcript Vol. XV, p. 1362. As such, the jury was clearly aware of the fact that Jones had a criminal past prior to deliberating Jones's guilt or innocence. Thus, Jones fails to show that his trial attorneys were deficient <u>and</u> that he was prejudiced by their failure to inspect the contents of his briefcase (State's Trial Exhibit 71), discover those items which document his prior convictions, and object to its admission into evidence.

Therefore, Jones fails to demonstrate a *Strickland* violation.

## IV.    CONCLUSION

For the foregoing reasons, including those set forth in her Return of Writ (R. 16) and her Sur-Reply (R. 82), Respondent submits that Jones continues to fail to present any evidence which is sufficient to show that his claims and "issues" have merit. There is sufficient evidence in the existing record to prove that Jones's present claims and "issues" are meritless. Therefore, Respondent respectfully requests that this Court dismiss Jones's Petition for a Writ of Habeas Corpus (R. 15).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing *Respondent's Post-Evidentiary Hearing Brief* was delivered via the court's electronic filing system this <u>7th</u> day of December 2007 to counsel for petitioner.

David Bodiker, Esq.
Ohio Public Defender's Office
8 East Long Street, 11th Floor
Columbus, Ohio 43215
(614) 466-5394
Email: bodiker@opd.state.oh.us

Michael L. Monta, Esq.
Monta & Monta
3625 Old Salem Road
Dayton, Ohio 45415
(937) 890-6921
Email: Zbeard7@aol.com

Gary W. Crim, Esq.
943 Manhattan Avenue
Dayton, Ohio 45406-5141
(937) 276-5770
Email: gwcrim@ameritech.net

s/Sarah A. Hadacek
**SARAH A. HADACEK (0080621)**