IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON, OHIO

ELWOOD H. JONES

    Petitioner

v.

MARGARET BAGLEY, Warden,

    Respondent.

Case No. 1:01-cv-564

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

**Elwood H. Jones's Reply Memorandum in
Support of Post-Hearing Traverse (Dkt. 144)**

*I.*

The Government now asserts that Jones must return to the state courts because the information that has been suppressed by the Government has not been presented to the state courts.

Jones first asked for information favorable to him almost a year after the government's agents went to New York and found out that various family members had differing stories concerning the pendant.[1] On December 8, 1995, citing *Brady,* the Government represented the following:

> It is the intention of the State to fully and liberally comply with all appropriate rules and cases. The Defendant shall receive all information to which is lawfully entitled. [2]

---

[1] Demand for Discovery, October 8, 1995, Doc. 5, I App. 30; Defendant's Request for Disclosure of Favorable Evidence Pursuant to Rule 16(B)(1)(f) of the Ohio Rules of Criminal Procedure, October 8, Doc. 6, I App. 31; Motion to Compel Disclosure of all Evidence Favorable to the Defendant and/or Discrediting to the Plaintiff, October 10, 1995, Doc. X, 14, I App. 42.
[2] State's Response to Defendant's Demand for Disclosure of Favorable Evidence, December 8, 1995, Doc. 35, I App. 141.

In April 1996, the defense requested an order requiring the Blue Ash Police Department to turn over the information to the prosecutor.[3] In response the Government reiterated its intention to fully and liberally comply with its obligation to provide the required information:

> The matters raised by the Motion are covered by Rules 12 and 16 of the Ohio Rules of Criminal Procedure. It is the intention of the State to fully and liberally comply with these rules. The Defendant shall receive all information to which he is lawfully entitled.[4]

Despite these representations, the Government failed to provide during the trial or during the post-conviction proceedings the information about contradictory statements of family members about the pendant, the complaints of other hotel guests, and the written statements and interviews of Demetrius H. Williams and Ryan Norman.

Jones raised the matter of *Brady* material in the post-conviction proceeding.[5] Jones sought documents and depositions during the post-conviction process, including documents from the police department and deposition of the Nathans.[6] The Government's response was not to present the information about the contradictory statements of family members about the pendant, the complaints of other hotel guests, and the written statements and interviews of Demetrius H. Williams and Ryan Norman. Instead, the Government asserted

---

[3] Motion to Compel Law Enforcement Officials to Turn Over and Advise Prosecuting Attorney of All Information Acquired During the Course of Investigation, April 10, 1996, Doc. 76, I App. 283.

[4] State's Response to Defendant's Motion to Compel Law Enforcement Officials to Turn Over and Advise Prosecuting Attorney of All Information Acquired During the Course of Investigation, April 17, 1996, Doc. 88, I App. 337.

[5] Thirtieth and Thirty-first Grounds for relief, XII App. 198-200, and Exhibit L, IX App. 5-32; Exhibit YY, XII App. 257-80; and Thirty-Fifth Ground for relief, XII App. 254-56, and the Exhibit YY, XII App. 257-80.

[6] Petitioner's First Motion for Leave of Court to Conduct Discovery, or, in the Alternative, an Order Requiring Disclosure of Specific Items Enumerated Herein, April 12, 1998, Doc. XXX, XII App. 1.

that discovery was unavailable. In addressing the merits of the claims, the Government did not address any of its failure and merely asserted that it was a matter of trial tactics.[7]

The Government has continued this pattern of refusing to present information and opposing discovery. In 2002 Jones asked this Court for discovery of *Brady* information based in part on Prosecutor Piepmeier's documented record of withholding evidence.[8] The Government response was to continue to refuse discovery.[9]

The information that we added to the petition was not made available in a timely manner in the state courts because of the actions of the Government's agents. Nonetheless the Government seeks to take advantage of its own actions, and require Petitioner to return to state court. Because exhaustion is a comity-based doctrine that "serves to minimize friction between our federal and state systems of justice by allowing the state an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights."[10]

The United States Supreme Court has held that a petitioner establishes cause for procedural default under these circumstances:

> In summary, petitioner has established cause for failing to raise a Brady claim prior to federal habeas because (a) the prosecution withheld exculpatory evidence; (b) petitioner reasonably relied on the prosecution's open file policy as fulfilling the prosecution's duty to disclose such evidence; and (c) the Commonwealth confirmed petitioner's reliance on the open file policy by asserting during state habeas proceedings that petitioner had already received "everything known to the government." We need not decide in this

---

[7] Motion to Dismiss Postconviction Petition, June 10, 1999, Doc. XXX, XII App. 132; Plaintiff-Respondent's Motion to Dismiss the Amended and Second Amended Petitioner, etc., July 29, 1999, Doc XXX, XII App. 333,
[8] Petitioner Elwood Jones' First Motion for Leave to Conduct Discovery, Dkt. 20, March 1, 2002.
[9] Respondent's Memorandum in Opposition to Petitioner's First Motion for Leave to Conduct Discovery, Dkt. 21, March 20, 2002.
[10] *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981) (per curiam ).

case whether any one or two of these factors would be sufficient to constitute cause, since the combination of all three surely suffices.[11]

The United States Supreme Court has reiterated this position:

> Corresponding to the second Brady component (evidence suppressed by the State), a petitioner shows "cause" when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third Brady component (prejudice), prejudice within the compass of the "cause and prejudice" requirement exists when the suppressed evidence is "material" for Brady purposes.[12]

Thus, this Court should reject the Government's assertion about exhaustion because the reason that the information was absent from the state court proceedings was because the Government incorrectly denied the evidence's existence.

## II.

The Government argues that both the pendant and the hepatitis do not warrant relief as *Brady* material.

The Government asserts that the information suppressed about the pendant would not have helped Jones' defense. During the final argument on the first phase of the trial, the prosecutors almost taunted the defense, saying:

> What about the pendant? What was said to you about the pendant? Nothing. You know why? Because they can't explain the pendant. They can't explain it at all.[13]

The explanation for the pendant was hidden by the government.

The Government asserts that Petitioner should have investigated the discrepancies at trial.[14] Again, the Government was the reason that this did not occur. The defense lawyers relied on what they were told by the prosecutors. Dur-

---

[11] *Strickler v. Greene*, 527 U.S. 263, 289 (1999), footnotes omitted.
[12] *Banks v. Dretke*, 540 U.S. 668, 691 (2004).
[13] Tr. 1813.
[14] Dkt. 147, p. 6.

ing cross examination by Government's counsel Catherine Adams testified as follows:

> Q. You assumed that the description of the affidavit was what, in the search warrant affidavit, not the return, was what Rhoda's son had described?
> A. I can't tell you now whether we were told that the affidavit or the return was the correct description, but we were told by the prosecutors that one of them was. I don't remember how they put it but are, essentially a mistake and it had nothing to do with the family making the mistake. It was like their, typographical mistake, I don't know what the word is I'm looking for, clerical mistake, may be the best way to put it.
> I can't tell you sitting here now which one of those. They told us it was a mistake. I assume from looking at the pendant that it was the affidavit that they said was a mistake but I can't swear to that now.
> Q. Did you assume that the description in the return was what Rhoda's son had identified?
> A. I don't remember anymore. I really can't tell you.
> Q. But you didn't look further into the inconsistency?
> A. No. I made the mistake of believing the prosecutors when they told us that. I believed when they said it was a mistake, that's what it was.
> Q. So hypothetically if you had known about the inconsistencies you would have conducted interviews prior to cross-examining Nathan or Elaine Shub or calling Valentine Nathan?
> A. We would have done a lot of things differently if we would known there was an inconsistency.[15]

The Government speculates that the Nathans would not have cooperated. Other out-of-Ohio witnesses cooperated through the use of depositions. The Government has presented no evidence that the Nathans would have not have been willing to testify. The Government also speculates that calling Valentine Nathan would have been a critical mistake.

The information about the pendant would have allowed the defense to have addressed the taunt with the following: the pendant found in the tool chest was not the pendant that the Government claimed.

---

[15] Hearing Tr. 280-81. See also Adams deposition pp. 64-66.

The Government asserts that the Dr. Solomkin should have known about the hepatitis; however Jones' trial counsel never presented that information to him during the trial. He only had the surgical records from Jones' hand surgery.[16]

Thus, this Court should grant relief because the Government suppressed evidence on the two most troubling aspects of the case, the pendant and the Eikenella. The Government repeated refused to present this information when the matter was in state court so there is no reason to return this matter to state court to present the evidence suppressed.

### III.

The Government also asserts that Jones' trial counsel were constitutionally sufficient when they failed to adequately present the Eikenella evidence and when they failed to check the briefcase for detailed information on his criminal record. We would also note that the hepatitis information is another example of the failure to properly prepare the case.

The Government argues that because the attorneys understood the Eikenella well enough to argue it that they had no duty to present evidence. Arguments of counsel do not replace evidence. The jurors were cautioned before opening statements:

> What the attorneys say is not evidence, and it's not to be considered by you as evidence. It simply gives them the opportunity to tell you what they think the evidence in the case will show. Even though it is not evidence.[17]

Just before the closing arguments, the Judge reiterated this:

---

[16] Hearing Tr. 53.
[17] Tr. 813.

> What the attorneys say during closing arguments is not evidence. I've told you the same thing about opening statements. It is not evidence and you may not consider what is said during closing arguments as evidence.[18]

Thus that the attorneys were able to argue the matter does not substitute for the failure to evidence rebutting the assertion at the core of the Government's case that because Eikenella was present, the wound was a fight bite. In fact the Government emphasized this in its argument:

> But you know and I know this case is a lot stronger than just those individual characteristics. We know there's two other factors that take this case out of the realm of mathematical possibility and into absolute certainty. Doctor McDonough is the first. Doctor McDonough is the defendant's own doctor. He's not some paid expert that was brought in here to give an opinion. He's his doctor. He's the guy that operated on him. He's the surgeon.
> And what did he tell you? Remember when he talked about reasonable medical certainty? That's the term that Doctor Gerber used in his testimony. Well, one other person and only one other person in this case used the term reasonable medical certainty. And that was Doctor McDonough and he used that term in saying that he was convinced to a reasonable medical certainty that the cut on Elwood Jones' left knuckle was from contact with a human mouth.[19]

The last thing that the jurors heard from the Government in rebuttal before deliberating on the liability phase was a reference by the Government to the Eikenella:

> And when his hand popped like a balloon during that surgery, her voice was silent, but it set in motion the events that led us here. And what that did is a trail of evidence leading directly right here to that hand, the hand of a killer.[20]

The jurors did not have Solomkin's testimony about the relative difficulty of infecting one with hepatitis as opposed to Eikenella infection. Solomkin knew the general area of McDonough's testimony but not that he was going to base his opinion that the wound was a fight bite on the presence of Eikenella.[21] The

---

[18] Tr. 1721.
[19] Tr. 1745-46.
[20] Tr. 1824.
[21] Hearing Tr. p. 57-58.

jurors did not have Solomkin's testimony that McDonough's opinions were not based on reasonable medical certainty:

> Therefore, it is not possible to say with a reasonable degree of medical certainty that any given possibility is in fact the source of the infection; or, conversely, that any alternative infectious source can be eliminated to a reasonable degree of medical certainty.[22]

The Government attempts to blame Solomkin for the failings and absolve Mr. Sanks because the testimony was not adequately presented. It is the responsibility of counsel to provide experts with the sufficient information to make a decision.[23] They did not properly prepare Solomkin by making available all of the relevant documents and did not make arrangements to have him hear the direct testimony so the McDonough's medically inaccurate testimony could have been properly rebutted. We would note that at no time has the Government attempted to present any testimony from McDonough or any other expert contradicting Solomkin's testimony and affidavit.

The Government asserts that the presence of the specifics of Jones's various convictions in the jury room were not the result of inadequate counsel. In support of this, the Government argues that we have not proven that the jurors actually looked at the evidence. The jurors were instructed to carefully consider all of the evidence.[24]

Thus, Jones is entitled to relief because his trial counsel failed to properly prepare to confront Dr. McDonough and when they permitted the various details of his prior convictions.

---

[22] Post-Conviction Exhibit G
[23] *Ritchey v. Mitchell*, 395 F.3d 660, 685-86 (6th Cir. 2005).
[24] Tr. 1833.

## *Conclusion*

For the reasons stated in the Post-Hearing Traverse and above, this Court should grant Petitioner a Writ of Habeas Corpus.

Respectfully Submitted,

*s/Michael L. Monta*
MICHAEL L. MONTA (0032777)
Trial Counsel
3625 Old Salem Road
Dayton, Ohio 45415-1427
(937) 890-6921

*s/Gary W. Crim*
GARY W. CRIM (0020252)
943 Manhattan Avenue
Dayton, Ohio 45406-5141
(937) 276-5770

Attorneys for Elwood H. Jones

**Certificate of Service**

I, Gary W. Crim, counsel for Elwood H. Jones, certify that on January 15, 2008, I served a copy of this Reply Memorandum in Support of Post-Hearing Traverse (Dkt. 144)on Counsel for the Warden, Sarah A. Hadacek and Stephen E. Maher, by emailing it to shadacek@ag.state.oh.us; smaher@ag.state.oh.us.

*s/Gary W. Crim*
GARY W. CRIM