ELWOOD H. JONES JR.
A339-441  D-5-27
878 COITSVILLE-HUBBARD RD.
YOUNGSTOWN, OH 44505-4635

MR. JAMES BONINI  　　　　　　　　　　FEBRUARY 11, 2008
CLERK OF COURTS
UNITED STATES DISTRICT COURT  　　　CASE NO.:1:01-CV-564
200 WEST SECOND STREET  　　　　　　DISTRICT JUDGE:
DAYTON, OH 45402  　　　　　　　　　　THOMAS M. ROSE
　　　　　　　　　　　　　　　　　　　CHIEF MAGISTRATE JUDGE:
　　　　　　　　　　　　　　　　　　　MICHAEL R. MERZ

-COVER LETTER-

DEAR MR. BONINI:

   I AM REQUESTING THAT THIS ENCLOSED LETTER ADDRESSED TO ATTORNEYS GARY W. CRIM AND MICHAEL L. MONTA, DATED FEBRUARY 3, 2008, BE MADE PART OF THE CASE FILE BEFORE THE COURT IN CASE NO. #1:01-CV-564.

   THANK YOU FOR YOUR TIME IN THIS MATTER.

　　　　　　　　　　　　　　　　　　　SINCERELY,

　　　　　　　　　　　　　　　　　　　_/s/ Elwood H. Jones Jr._
　　　　　　　　　　　　　　　　　　　ELWOOD H. JONES JR.

CC:

```
                                         ELWOOD H. JONES, JR.
                                         A339-441  D-5-27
                                         878 COITSVILLE-HUBBARD RD.
                                         YOUNGSTOWN, OH 44505-4635
```

MR. GRAY W. CRIM                         FEBRUARY 3, 2008
-ATTORNEY AT LAW-
943 MANHATTEN AVE.
DAYTON, OH 45406-5141


MR. MICHAEL L. MONTA
-ATTORNEY AT LAW-
3625 OLD SALEM ROAD
DAYTON, OH 45415-1427


DEAR MR. CRIM:

AFTER BRIEFLY SPEAKING TO YOU ON THE PHONE SATURDAY, FEBRUARY 2, 2008, I HAVE DECIDED TO FIRST ADDRESS MY CONCERNS WITH RESPECT TO DEMETRIUS WILLIAMS AND NORMAN RYAN'S STATEMENTS ON SEPTEMBER 3, 1994, AND THE NOTES OF DET. LADD FROM THE INTERVIEWS OF DEMETRIUS WILLIAMS AND NORMAN RYAN ON SEPTEMBER 3, 1994. THEY BOTH GAVE A FULL DESCRIPTION OF A "DARK COMPLEXION BLACK MAN AND A WHITE GUY WITH GREY HAIR LEAVING MS. NATHAN'S ROOM -- UPON WHICH THEY HEARD THE SCREAMS OF MS. SCHUB." MOREOVER, "ONE OF THE GUYS (I.E. THE DARK COMPLEXION BLACK GUY HAD A BROWN SHIRT; THICK; WITH A STOMACH) CARRYING A WALKIE-TALKIE, LEAVING MS. NATHAN'S ROOM GOING RIGHT."

NOW OUTSIDE OF THE REASONS WHY THESE "TWO" STATEMENTS WERE IMPORTANT TO MY DEFENSE DURING MY TRIAL AND SHOULD HAVE BEEN TURNED OVER TO SUPPORT THE ALTERNATE SUSPECT THEORY.

MR. CRIM, YOU NEED TO POINT OUT TO THE COURT THE SECOND ELEMENT OF THE TWO INDIVIDUAL'S STATEMENT OF DEMETRIUS WILLIAMS AND NORMAN RYAN WERE IMPORTANT TO MR. JONES' DEFENSE AND OFFER ANOTHER REASON WHY THESE POTENTIAL WITNESS STATEMENTS SHOULD HAVE BEEN TURNED OVER DURING THE TRIAL. HAMILTON COUNTY PROSECUTORS MARK PIEPMEIR AND SETH TIEGER HAD PART OF THEIR CASE FILES IN THIS CASE INFORMATION OF AN INDIVIDUAL LEAVING MS. NATHAN'S ROOM CARRYING A WALKIE-TALKIE IN HIS HAND.

NOW ACCORDING TO CATHERINE ADAMS' TESTIMONY DURING THE EVIDENTIARY HEARING ON SEPTEMBER 25, 2007, WHEN ASKED THE QUESTION, WAS THERE SOME TYPE OF ISSUE RELATING TO A WALKIE-TALKIE IN THIS CASE, CATHARINE ADAMS TESTIFIED AS FOLLOWS:

    Q. IN DEFENDING THIS CASE YOU WERE LOOKING FOR POTENTIAL SUSPECTS AND WAS THERE AN ISSUE WITH A WALKIE-TALKIE TOO?

    A. THERE WAS.

PAGE 2
MR. CRIM
FEB. 3, 2008

Q. WHAT WAS THAT?

A. ONE OF THE REASONS THAT THE PROSECUTOR GAVE US FOR NOT HAVING BROUGHT CHARGES EARLIER WAS THAT THEY WERE WAITING FOR RESULTS FROM THE F.B.I. IN WASHINGTON. THEY HAD DONE SOME SORT OF SPECIAL PHOTOGRAPHY BECAUSE THERE WAS AN IMPRINT ON SOME PHOTOGRAPH BECAUSE THERE WAS AN IMPRINT ON SOME PORTION OF THE VICTIM'S BODY THAT I CAN'T REMEMBER NOW, BUT THAT IMPRINT, THEY BELIEVE, MATCHED A WALKIE-TALKIE AND THEY WANTED THAT INFORMATION BACK. THE REASON THE WALKIE-TALKIE WAS SIGNIFICANT IS THAT ONLY CERTAIN PEOPLE WITHIN THE HOTEL CARRIED WALKIE-TALKIES.

Q. AND WAS ELWOOD ONE OF THOSE?

A. HE WAS.

Q. BUT THERE WAS NO MATCH BETWEEN ANY WALKIE-TALKIE HE HAD AND THIS SO CALLED IMPRINT?

A. NO, THIS WAS A GENERIC, THIS WASN'T A WALKIE-TALKIE MATCH.

A. SUSPICIOUS DARK SKINNED GUY WITH BROWN SHIRT AND A WHITE GUY WERE COMING OUT OF THE ROOM SEPARATE WHEN THEY CAME OUT. MALE BLACK, WENT RIGHT, WHITE MALE, LEFT, BLACK HAD WALKIE-TALKIE.

Q. GOING BACK TO WHAT WE SAID OR TALKED ABOUT BEFORE AND THE REPORT ABOUT AN IMPRINT OF A WALKIE-TALKIE OR AT LEAST ALLEGED TO BE WOULD THIS HAVE BEEN SIGNIFICANT INFORMATION?

A. YES.

Q. WITHOUT HAVING THIS INFORMATION IS THERE ANY WAY YOU WOULD HAVE KNOWN ANYTHING ABOUT A BLACK MALE OR WHITE MALE COMING OUT OF THE ROOM WITH WALKIE-TALKIES?

A. NO THERE ISN'T.

Q. CONSIDER IT BRADY?

A. YES.

PAGES 222; 223; 253; 254; 255.

MR CRIM, THE THIRD ELEMENT OF THESE TWO INDIVIDUAL'S STATEMENTS OF DEMETRIUS WILLIAMS AND NORMAN RYAN, WITHHELD DURING MY TRIAL DEPRIVED ME THE RIGHT TO CONFRONT AND CHALLENGE THE EXPERT'S OPINION OF STOKES AND OLIVER DURING THE VIDEO DEPOSITION, BY ASKING WERE THEY GIVEN INFORMATION CONCERNING A BLACK MALE COMING OUT OF THE ROOM WITH A WALKIE-TALKIE IN HIS HAND.

PAGE 3
MR. CRIM
FEB. 3, 2008


THE INFORMATION I HAVE ADDRESSED IN THIS LETTER WITH RESPECT TO THE STATEMENTS AND THE WALKIE-TALKIE IS WHAT I AM ASKING YOU RE-ADDRESS AND ADD IN A MOTION TO THE COURT YOU SPOKE OF.

MR. CRIM, NOW INSTEAD OF ME CALLING YOU THIS COMING TUESDAY OR WEDNESDAY AFTERNOON FEBRUARY 5 OR 6, 2008, GO AHEAD AND REVIEW THIS LETTER AND DISCUSS IT WITH MR. MONTA, THEN SET UP A PHONE CONFERENCE FOR ONE DAY NEXT WEEK AND THE THREE OF US CAN DISCUSS THE MATTER. I AM ALSO ATTACHING A COPY OF A SEARCH WARRANT, OFFICER STOKES ASKED THE COURT FOR ON SEPTEMBER 15, 1994, FOR THE EMBASSY SUITES HOTEL TO TURN OVER TWO PORTABLE WALKIE-TALKIE RADIOS, THAT WERE ASSIGNED TO HOTEL PERSONNEL WORKING BANQUETS AT THE EMBASSY SUITES HOTEL ON OR ABOUT SEPTEMBER 3, 1994, SUCH BELIEF IS SUPPORTED BY THE FOLLOWING FACTS, SECTION, #3; #10; #12; #15; THE AFFIANT STATES WITHIN THE SEARCH WARRANT.

THANK YOU FOR YOUR TIME IN THIS MATTER AT HAND. I WILL BE LOOKING FORWARD TO YOUR RESPONSE IN THE COMING WEEKS.


                                          SINCERELY,

                                       *[signature: Elwood H. Jones Jr.]*
                                       ELWOOD H. JONES, JR.


CC: