ELWOOD H. JONES, JR.
A339-441  D-5-27
878 COITSVILLE-HUBBARD RD.
YOUNGSTOWN, OH 44505-4635


MR. JAMES BONINI                          APRIL 20, 2008
CLERK OF COURT RM #712
UNITED STATES DISTRICT COURT              RE: CASE NO. 1:01-CV-564
200 WEST SECOND STREET
DAYTON, OH 45402


--- COVER LETTER ---


DEAR MR. BONINI:

I AM REQUESTING THAT THE ENCLOSED COPY OF THE LETTER ADDRESSED TO
ATTORNEYS GARY W. CRIM AND MICHAEL L. MONTA, DATED APRIL 20,
2008, BE MADE PART OF THE CASE FILE OF ELWOOD H. JONES, JR. V.
MARGARET BAGLEY, WARDEN, IN THE UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF OHIO, CASE NO. 1:01-CV-564.

THANK YOU FOR YOUR TIME IN THIS MATTER.


                                    SINCERELY,

                                    ELWOOD H. JONES, JR.


CC: FILE
    MR. GARY W. CRIM
    MR. MICHAEL L. MONTA

ELWOOD H. JONES, JR.
A339-441  D-5-27
878 COITSVILLE-HUBBARD RD.
YOUNGSTOWN, OH 44505-4635

MR. GARY W. CRIM                          APRIL 20, 2008
-ATTORNEY AT LAW-
943 MANHATTEN AVE.
DAYTON, OH 45406-5141


MR. MICHAEL L. MONTA
-ATTORNEY AT LAW-
3625 OLD SALEM ROAD
DAYTON, OH 45415-1427


DEAR MR. CRIM:

ON FEBRUARY 2, 2008, AFTER BRIEFLY SPEAKING TO YOU ON THE PHONE,
I ADDRESSED A LETTER TO YOU AND MR. MONTA ON FEBRUARY 3, 2008,
POINTING OUT MY CONCERNS WITH RESPECT TO DEMETRIUS WILLIAMS AND
NORMAN RYAN'S STATEMENTS ON SEPTEMBER 3, 1994, AND THE NOTES OF
DET. LADD FROM THE INTERVIEWS OF DEMETRIUS WILLIAMS AND NORMAN
RYAN ON SEPTEMBER 3, 1994.  THEY BOTH GAVE A FULL DESCRIPTION OF
A "DARK COMPLEXION BLACK MAN AND A WHITE GUY WITH GREY HAIR
LEAVING MS. NATHAN'S ROOM -- UPON WHICH THEY HEARD THE SCREAMS OF
MS. SCHUB, "ONE OF THE GUYS (I.E. THE DARK COMPLEXION BLACK MAN
HAD A BROWN SHIRT; THICK; WITH A STOMACH) CARRYING A
WALKIE-TALKIE, LEAVING MS. NATHAN'S ROOM GOING RIGHT," TO BE
INCLUDED IN A LETTER FORM MOTIONS TO CHIEF MAGISTRATE JUDGE MERZ.
YOU MENTIONED YOU COULD DO AFTER SPEAKING TO MR. MONTA ABOUT
ASKING THE COURT FOR PERMISSION TO CORRECT THE RECORD IN THE CASE
OF ELWOOD H. JONES V. MARGARET BAGLEY, WARDEN, IN THE UNITED
STATES DISTRICT COURT, SOUTHERN DISTRICT OF OHIO, CASE NO.
1:01CV-00564.  "TO CLARIFY FOR THE COURT ANOTHER IMPORTANT ASPECT
OF THE CASE RELATING TO DEMETRIUS WILLIAMS AND NORMAN RYAN'S
STATEMENTS ON SEPTEMBER 3, 1994.  THEY BOTH GAVE TO DET. JOHN
LADD OF THE BLUE ASH POLICE DEPT.  YOU FAILED TO ADDRESS IN YOUR
EARLY PETITION ON BEHALF OF THE PETITIONER MR. JONES.

MR. CRIM, I HAVE BEEN MORE THAN PATIENCE WAITING ON SOME TYPE OF
RESPONSE TO MY LETTER OF FEBRUARY 3, 2008 AS TO A CLEAR DIRECTION
YOU AND MR. MONTA HAVE AGREED ON TO PRESENT THE ABOVE DISCUSSED
MATTER TO THE COURT AS PART OF THE BRADY ISSUE, IN THIS CASE.

WHAT SEEMS TO BE THE PROBLEM WITH EITHER ONE OF YOU GETTING BACK
WITH ME BY NOW?

PAGE 2
MR. CRIM, MR. MONTA
APRIL 20, 2008


MR. CRIM,

1. THE PROSECUTION'S CIRCUMSTANTIAL CHAIN OF INFERENCE FIRST
   DEPENDS ON THE INFERENCE THAT I HAD A WALKIE-TALKIE LIKE
   THE REPLICATE ONE USED BY THE EXPERT TESTIMONY OF WILLIAM
   STOKES AND DR. WILLIAM OLIVER, THAT I ATTACKED THE
   DECEDENT WITH IT, AND THAT AS A RESULT OF THE ATTACK, THE
   BRUISES LEFT ON THE BODY ARE SIMILAR IN PATTERN OF THE
   WALKIE-TALKIE;

2. HAD THE PROSECUTION DISCLOSED THE INFORMATION GIVEN TO
   DETECTIVE LADD SURROUNDING THE TIME-LINE OF MS. NATHAN'S
   MURDER, THAT TWO MEN WERE OBSERVED LEAVING THE VICTIM'S
   ROOM ONE CARRYING A WALKIE-TALKIE, I WOULD HAVE BEEN ABLE
   TO CHALLENGE THE OPINION RENDERED BY THE STATE'S
   SO-CALLED EXPERTS. NEITHER WITNESS, STOKES OR OLIVER,
   COULD CONCLUDE TO REASONABLE DEGREE OF CERTAINTY THAT MS.
   NATHAN'S WOUNDS WERE MADE BY THE WALKIE-TALKIE;

3. THE PROBABILITY OF THE WALKIE-TALKIE SEEN IN THE HAND OF
   THE ALTERNATE SUSPECTS OBSERVED LEAVING THE VICTIM'S ROOM
   HOLDS GREATER FACTUAL BASIS FOR IT BEING THE MURDER
   WEAPON BASED ON EYE-WITNESS OBSERVATION. THE OPINION BY
   THE STATE'S SO-CALLED EXPERTS IS BASED UPON
   "POSSIBILITIES" AND NOT SCIENTIFIC CERTAINTIES, BETWEEN
   THE BRUISE PATTERN AND WALKIE-TALKIE;

4. GIVEN THE INFORMATION CONTAINED WITHIN THE STATEMENTS OF
   NORMAN RYAN AND DEMETRIUS WILLIAMS, AND HAND WRITTEN
   NOTES OF DETECTIVE LADD FROM THE INTERVIEWS WITH THE TWO
   EMPLOYEES OF SEPTEMBER 3, 1994, WHETHER OR NOT THEY WERE
   EXCULPATORY, THEY WERE MOST DEFINITELY IMPEACHING AND AS
   SUCH, DEPRIVED OF SAID DOCUMENTS NOT ONLY VIOLATED MY
   CONSTITUTIONAL RIGHT TO DUE PROCESS, BUT THEY VERY
   DEPRIVATION OF THIS IMPEACHING EVIDENCE (SUCH AS)
   VIOLATED MY CONSTITUTIONAL RIGHT TO CONFRONTATION AS
   WELL;

5. ACCORDING TO CATHERINE ADAMS' TESTIMONY DURING THE
   EVIDENTIARY HEARING ON SEPTEMBER 25, 2007, WHEN ASKED THE
   QUESTION, WAS THERE SOME TYPE OF ISSUE RELATING TO A
   WALKIE-TALKIE IN THIS CASE, CATHARINE ADAMS TESTIFED AS
   FOLLOWS:

   Q. IN DEFENDING THIS CASE YOU WERE LOOKING FOR POTENTIAL
   SUSPECTS AND WAS THERE AN ISSUE WITH A WALKIE-TALKIE TOO?

   A. THERE WAS.

PAGE 3
MR. CRIM, MR. MONTA
APRIL 20, 2008


Q. WHAT WAS THAT?

A. ONE OF THE REASONS THAT THE PROSECUTOR GAVE US FOR NOT HAVING BROUGHT CHARGES EARLIER WAS THAT THEY WERE WAITING FOR RESULTS FROM THE F.B.I. IN WASHINGTON.  THEY HAD DONE SOME SORT OF SPECIAL PHOTOGRAPHY BECAUSE THERE WAS AN IMPRINT ON SOME OF THE PHOTOGRAPH, BECAUSE THERE WAS AN IMPRINT ON SOME PORTION OF THE VICTIM'S BODY THAT I CAN'T REMEMBER NOW, BUT THAT IMPRINT, THEY BELIEVE, MATCHED A WALKIE-TALKIE AND THEY WANTED THAT INFORMATION BACK.  THE REASON A WALKIE-TALKIE WAS SIGNIFICANT IS THAT ONLY CERTAIN PEOPLE WITHIN THE HOTEL CARRIED WALKIE-TALKIES.

Q. AND WAS ELWOOD ONE OF THOSE?

A. HE WAS.

Q. BUT THERE WAS NO MATCH BETWEEN ANY WALKIE-TALKIE HE HAD AND THIS SO CALLED IMPRINT?

A. NO, THIS WAS A GENERIC, THIS WASN'T A WALKIE-TALKIE MATCH.

A. SUSPICIOUS DARK SKINNED GUY WITH BROWN SHIRT AND A WHITE GUY WERE COMING OUT OF THE ROOM SEPARATE WHEN THEY CAME OUT.  MALE, BLACK, WENT RIGHT; WHITE MALE, LEFT, BLACK HAD WALKIE-TALKIE.

Q. GOING BACK TO WHAT WE SAID OR TALKED ABOUT BEFORE AND THE REPORT ABOUT AN IMPRINT OF A WALKIE-TALKIE OR AT LEAST ALLEGED TO BE WOULD THIS HAVE BEEN SIGNIFICANT INFORMATION?

A. YES.

Q. WITHOUT HAVING THIS INFORMATION IS THERE ANY WAY YOU WOULD HAVE KNOWN ANYTHING ABOUT A BLACK MALE OR WHITE MALE COMING OUT OF THE ROOM WITH WALKIE-TALKIE?

A. NO THERE ISN'T.

Q. CONSIDER IT BRADY?

A. YES.


PAGES 222; 223; 253; 254; 255.

PAGE 4
MR. CRIM, MR. MONTA
APRIL 20, 2008


MR. CRIM, I DON'T UNDERSTAND WHAT'S SO HARD FOR YOURSELF AND MR.
MONTA TO UNDERSTAND THESE TWO STATEMENTS OF DEMETRIUS AND NORMAN
RYAN, WITHHELD DURING MY TRIAL DEPRIVED ME OF THE RIGHT TO
CONFRONT AND CHALLENGE THE EXPERT OPINIONS OF STOKES AND OLIVER
AS WELL AS DURING THEIR VIDEO DEPOSITION.  BY ASKING WERE THEY
GIVEN INFORMATION CONCERNING A BLACK MALE COMING OUT OF THE
VICTIM'S ROOM WITH A WALKIE-TALKIE IN HIS HAND.  IN MAKING THAT
ARGUMENT TO THE COURT WITH THE WITHHELD EVIDENCE FOUND IN
HAMILTON COUNTY PROSECUTORS MARK PIEPMEIR AND SETH TIEGER'S CASE
FILES IN THIS CASE, INFORMATION OF AN INDIVIDUAL LEAVING MS.
NATHAN'S ROOM CARRYING A WALKIE-TALKIE IN HIS HAND, AND MS.
ADAMS' TESTIMONY DURING THE EVIDENTIARY HEARING ON SEPTEMBER 25,
2007.  I HAVE CLEARLY POINTED OUT TO THE BOTH OF YOU TO
RE-ADDRESS AND ADD IN A MOTION TO THE COURT.

NOW IF YOU AND MR. MONTA STILL DON'T UNDERSTAND THIS SIMPLE AND
CLEAR REQUEST I AM ASKING FOR THE BOTH OF YOU TO CLARIFY TO THE
COURT IN THE ABOVE MATTER PLEASE JUST SAY SO AND I WILL ASK THE
COURT TO ACCEPT THIS LETTER.  I HAVE ADDRESSED TO THE BOTH OF YOU
ON APRIL 20, 2008, AS TO THE ELEMENT OF THESE TWO INDIVIDUAL'S
STATEMENTS WITHHELD DEPRIVED ME THE RIGHT TO CONFRONT AND
CHALLENGE THE EXPERT OPINION OF STOKES AND OLIVER DURING THE
VIDEO DEPOSITION.  THAT MY ATTORNEYS DON'T UNDERSTAND WHAT I AM
ASKING OF THEM OR HAVE THE TIME TO TRY AND UNDERSTAND WHAT I AM
ASKING THEM TO BRING TO THE COURT'S ATTENTION.

THANK YOU FOR YOUR TIME IN THIS MATTER AT HAND.  I WILL BE
LOOKING FORWARD TO YOUR RESPONSE IN THE COMING WEEKS.


SINCERELY,

ELWOOD H. JONES, JR.


CC: FILE
    JAMES BONINI, CLERK OF COURT